**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. _____**

JACK D. HERNANDEZ d/b/a OCEAN VIBES
MUSIC PUBLISHING, and DICK ALFREDO
CABALLERO RODRIGUEZ a/k/a ALFR3D BEATS,

                         Plaintiffs,

     -against-

UMG RECORDINGS, INC. d/b/a UNIVERSAL
MUSIC GROUP d/b/a UNIVERSAL MUSIC LATINO,
CAROLINA GIRALDO NAVARRO a/k/a KAROL G,
EDWIN VASQUEZ VEGA a/k/a MALDY, MARVIN
HAWKINS RODRIGUEZ a/k/a DJ MAFF, JULIO
MANUEL GONZALEZ TAVAREZ a/k/a LENNY
TAVEREZ, and JUSTIN QUILES,

                         Defendants.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs Jack D. Hernandez d/b/a Ocean Vibes Music Publishing ("Ocean Vibes") and

Dick Alfredo Caballero Rodriguez a/k/a Alfr3d Beats ("Alfr3d," and together with Ocean Vibes,

"Plaintiffs"), by and through their undersigned counsel, as and for their Complaint against UMG

Recordings, Inc. d/b/a Universal Music Group d/b/a/ Universal Music Latino ("UMG"), Carolina

Giraldo Navarro a/k/a Karol G ("Karol G"), Edwin Vasquez Vega a/k/a Maldy ("Maldy"), Marvin

Hawkins Rodriguez a/k/a DJ Maff ("DJ Maff"), Julio Manuel Gonzalez Tavárez a/k/a Lenny

Tavárez ("Tavárez"), and Justin Quiles ("Quiles," and together with UMG, Karol G, Maldy, DJ

Maff, and Tavárez, "Defendants"), hereby allege as follows:

## PRELIMINARY STATEMENT

1.      Karol G is a world-famous singer, songwriter, performer, and producer.  One of her numerous hit songs, *Gatúbela*, officially released on August 25, 2022, debuted and peaked at number 4 on the U.S. Billboard Hot Latin Songs chart, number 23 on the Billboard Global 200 chart, and number 37 on the U.S. Billboard Hot 100 Chart.  The song also reached number 1 on the Billboard Colombia chart, as well as the Billboard U.S. Latin Rhythm Airplay chart.  It was nominated for "Best Reggaeton Performance" at the 2023 Latin Grammy Awards, and it won both "Urban Collaboration of the Year" at the 2024 Los Nuestro Awards and "Award Winning Song" at the 2024 BMI Latin Awards.

2.      By all accounts, *Gatúbela* has been an enormous commercial success and has generated (and continues to generate) millions of dollars in revenue and profits for Defendants.  In For example, the "official" music video for *Gatúbela* has garnered more than *half a billion* views on YouTube (571,499,176, as of March 10, 2025, and counting) since it was published on August 25, 2022.  The song became a certified "13x Platinum" record, according to the Recording Industry Association of America, as of March 22, 2023.  Moreover, between August 10, 2023, and July 23, 2024, Karol G regularly performed the song during her arena-stadium *Mañana Será Bonito Tour*, which was reportedly the highest-grossing Latin touring act of 2023, taking in $153.3 million in revenue and selling 925,000 tickets over 20 shows.

3.      However, by every method of analysis, *Gatúbela* is a forgery – copied from Alfr3d, who created, produced, and published his original song entitled *Punto G* (also referred to herein as the "Work"), more than six weeks earlier.

4.      Significantly, DJ Maff previewed the release of *Gatúbela* in an Instagram post on August 22, 2022, including a clip of the music video for the song and writing, in relevant part,

"GATÚBELA @karolg agradecido contigo Gg, la rompiste . . . ." (translated: "GATÚBELA @karolg grateful to you Gg, you smashed it . . . ."). Upon hearing *Gatúbela* for the first time, Alfr3d immediately recognized and commented that the melody was stolen, and DJ Maff shockingly admitted this was true, responding "no le digas a nadie" (translated: "don't tell anybody"), accompanied by a laughing emjoi:



5.      As part of his attempt to cover up his admitted theft and misappropriation, DJ Maff would later delete both Alfr3d's comment and his own response from Instagram.

6.      Regardless, a comparison of the two songs is all that is necessary to demonstrate that *Gatúbela* was copied from the Work.

7.      A highly regarded musicology expert has carefully compared *Gatúbela* and the Work and found, without limitation, that: both the main synthesizer riff and vocal chorus melody of *Gatúbela* are extremely similar to the synth melody of the Work; such similarities would not have occurred by chance alone; and such similarities cannot be explained away by prior art.

8.      Indeed, according to the expert musicologist, the level of similarity between *Gatúbela* and the Work is "one we almost never see."

9.      Numerous non-expert listeners have separately drawn the conclusion that Defendants copied *Punto* in their creation of *Gatúbela.*

10.     For these reasons and others, as set forth in greater detail below, Defendants have unlawfully exploited the Work, and they have – with *actual* knowledge and *fraudulent* intent – infringed upon, and continue to infringe upon, Plaintiffs' copyrights for the Work, causing serious and significant damage to Plaintiffs.

## PARTIES

11.     Ocean Vibes is sole proprietorship owned and operated by Jack D. Hernandez, who registered the fictious name "Ocean Vibes Music Publishing" with the State of Florida, Division of Corporations, on October 6, 2023 and is domiciled and residing in Loxahatchee, Florida.

12.     Alfr3d is an individual composer, sound engineer, and producer, who is domiciled and residing in El Salvador.

13.     Plaintiffs became owners of the statutory copyrights for the Work when they registered the original sound recording of the Work with the U.S. Copyright Office on November 29, 2023 [U.S. Copyright Office Registration No. SR0000982470] and when they registered the composition of the Work with the U.S. Copyright Office on August 3, 2024 [U.S. Copyright Office Registration No. PA0002487058].

14.     Plaintiffs' copyright protection for the Work dates back to at least July 12, 2022, when Alfr3d first published the Work.

15.     Upon information and belief, UMG is a corporation organized and existing under the laws of the State of California with a principal place of business located in Santa Monica, California, which does business as, *inter alia*, "Universal Music Group" and "Universal Music Latino."  UMG is listed as "Copyright Claimant" for the sound recording of *Gatúbela* registered with the U.S. Copyright Office on August 25, 2022 [U.S. Copyright Office Registration No. SR0000947602].

4

16.     Upon information and belief, Karol G is an individual domiciled and residing in Pinecrest, Florida, and is one of the songwriters, performers, and producers of the music, lyrics, and sound recording for *Gatúbela*.

17.     Upon information and belief, Maldy is an individual domiciled and residing in Dorado, Puerto Rico, and is one of the songwriters and performers of the music, lyrics, and sound recording for *Gatúbela*.

18.     Upon information and belief, DJ Maff is an individual domiciled and residing in Medellín, Colombia, and is one of the songwriters and producers of the music, lyrics, and sound recording for *Gatúbela*.

19.     Upon information and belief, Tavárez is an individual domiciled and residing in Doral, Florida, and is one of the songwriters and producers of the music, lyrics, and sound recording for *Gatúbela*.

20.     Upon information and belief, Quiles is an individual domiciled and residing in Miami, Florida, and is one of the composers and producers of the music, lyrics, and sound recording for *Gatúbela*.

## JURISDICTION & VENUE

21.     This Court has original federal question jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) based upon Plaintiffs' claims under the federal Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq*. (the "Copyright Act").

22.     This Court has supplemental jurisdiction over any and all state law claims alleged herein pursuant to 28 U.S.C. § 1367(a) in that such claims are so related to claims within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

23.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claims asserted occurred in the Southern District of Florida.   In addition to the harm caused to Ocean Vibes, located in Loxahatchee, Florida (Palm Beach County), the infringing song *Gatúbela* was recorded and produced, in whole or in part, in Miami, Florida (Dade County) and was performed by Karol G at least twice at Hard Rock Stadium in Miami Gardens, Florida (Dade County) during concerts held on August 25, 2023 and August 26, 2023.  Moreover, without limitation, Defendants have directed their activities and marketing of *Gatúbela* to residents in this judicial district, enabled residents of this judicial district to purchase, download, and stream the infringing work, and otherwise engaged in purposeful and continuing business activities in this judicial district. Defendants are, at a minimum, constructively aware of their continuous and substantial commercial interactions with residents in this judicial district and, upon information and belief, have generated substantial revenue from the exploitation of *Gatúbela* in this judicial district.

## FACTUAL BACKGROUND

**A.     Defendants' Access to the Work**

24.     Alfr3d created and produced the Work in his home country of El Salvador and first published the Work on July 12, 2022.

25.     Since July 12, 2022, Plaintiffs have repeatedly marketed, made available, and otherwise used the Work, in whole or in part, on social media, online, and elsewhere.

26.     Since July 12, 2022, the Work has remained continuously accessible to the public on YouTube: https://youtu.be/706OnufqgnU?si=02vOlfLNUAOHS1i6.

27.     On numerous occasions, Alfr3d has shared the link to the YouTube publication of the Work via Instagram and Facebook.

28.     During some of the relevant time period, the Work was also available for streaming and download in other web-based locations, including, but not limited to: www.alfr3dmusic.com (via beatstars); and https://player.beatstars.com/?storeId=117132&search_keyword=puntog.

29.     In accordance with common custom and practice amongst aspiring music producers, Alfr3d identified and labeled the Work on YouTube as a "Reggaeton Beat – Carol G x Feid type beat | Instrumental de reggaeton" for the specific purpose of making it easy to find for anybody interested in the reggaeton style of music, including, without limitation, other musical artists and producers.

30.     Alfr3d's YouTube post for the Work further states, "Este beat es FREE para uso NO monetizado, sin fines de lucro. Si deseas subir a las diferentes plataformas digitales, debes comprar una licencia, si no, la cancion será bajada. CRÉDITOS EN TÍTULO/DESCRIPCIÓN (Prod. By Alfr3d)" (translated: "This beat is FREE for non-monetized, non-profit use.  If you would like to upload it to different digital platforms, *you must* purchase a license, if not, the song will be taken down.  CREDITS IN TITLE/DESCRIPTION (Prod. By Alfr3d).") (emphasis added).

11.     Alfr3d has over 14,900 subscribers on YouTube, and, as of September 27, 2024, the YouTube version of the Work had 3,367 views.

12.     Upon information and belief, DJ Maff was a subscriber of Alfr3d's YouTube channel at the time the Work was first published on July 12, 2022.

13.     On July 12, 2022, *i.e.*, the same day Alfr3d first published the Work on YouTube, one or more YouTube users in Colombia (the country of origin for both Karol G and DJ Maff) viewed the Work for a total of 1.29 hours (over 77 minutes or approximately 24 times the total length of the song).

14.     On July 16, 2022, one or more YouTube users in Colombia (the country of origin for both Karol G and DJ Maff) viewed the Work for a total of 0.87 hours (over 52 minutes or approximately 16 times the total length of the song).

15.     Upon information and belief, Defendants did not begin (or at least never finished) writing, recording, and/or producing *Gatúbela* until after hearing the Work.

16.     Upon information and belief, between July 12, 2022 and July 21, 2022, DJ Maff "fell in love with the beat" from the Work and sent it to Karol G, along with certain other beats for consideration, with Karol G ultimately selected the Work to serve as the musical foundation for *Gatúbela*.

17.     Karol G, DJ Maff, and/or their associates did not reach out to Maldy for the first time about his involvement in *Gatúbela* until on or about July 21, 2022.

18.     On or about July 21, 2022, Karol G, DJ Maff, and/or their associates gave Maldy a copy of the *Gatúbela* lyrics with his verse already written, and Maldy went to the studio in Miami the very next day to record his verse with Quiles.

19.     Only four or five days later, on or about July 25, 2022 or July 26, 2022, Maldy flew to Barcelona for the *Gatúbela* video shoot with Karol G and DJ Maff.

20.     On August 22, 2022, DJ Maff posted about the release of *Gatúbela* on Instagram, including a clip of the music video for the song, and writing, in relevant part, "GATÚBELA @karolg agradecido contigo Gg, la rompiste . . ." (translated: "GATÚBELA @karolg grateful to you Gg, you smashed it").

21.     On or about September 2, 2022, Alfr3d commented on DJ Maff's August 22, 2022 post, writing, "Rompiendo con melodias ajenas" (translated: "smashing it with *other people's melodies*") (emphasis added).

22.     On or about September 2, 2022, approximately 14 minutes after Alfr3d's original comment, DJ Maff responded, "no le digas a nadie" (translated: "*don't tell anyone*") (emphasis added) with a laughing emoji.

23.     Tellingly, DJ Maff deleted both Alfr3d's original comment and his own response from Instagram on or about September 5, 2022 – *i.e.*, three days after the initial interaction.

24.     Later on September 2, 2022, Alfr3d direct messaged DJ Maff on Instagram with a mere salutation: "Saludos" (translated: "Greetings").

25.     DJ Maff responded to Alfr3d's direct message on September 5, 2022 (*i.e.*, the same date he deleted the posts described above), writing, "G mis respetos, ten en cuenta que la música es la misma por siempre, los mismos círculos que se combian en diferentes variaciones etc, conincidencias pueden suceder, te dejo claro la mía la hice hace más de 9 meses" (translated: "G my respects, keep in mind that music is the same forever, the same circles that combine in different variations etc, coincidences can happen, I'll make it clear to you that I made mine more than 9 months ago").

26.     DJ Maff's defensive response to Alfr3d's simple salutation makes it apparent that DJ Maff knew Alfr3d had created the Work and believed *Gatúbela* was copied from the Work.

27.     There would have been no reason for DJ Maff to write to Alfr3d about "coincidences" in music and the purported timing of his own work on *Gatúbela* if he was not aware of the Work and the similarities between the two songs.

28.     Putting aside DJ Maff's written admissions of guilt, Defendants – like the rest of the general public – had access to the Work prior to the creation and/or final completion and publication of *Gatúbela* by virtue of its publication by Alfr3d.

29.     By virtue of its publication by Alfr3d, the Work was widely disseminated prior to the creation and/or final completion and publication of *Gatúbela.*

30.     Upon information and belief, DJ Maff has attempted to cover up his theft and misappropriation of the Work by deleting Alfr3d's Instagram comment and DJ Maff's own response to that comment, as described above.

31.     Upon information and belief, DJ Maff has attempted to cover up his theft and misappropriation of the Work by altering files related to the creation of *Gatúbela.*

32.     Although only a little over six weeks elapsed between the first publication of the Work on July 12, 2022 and DJ Maff's Instagram post previewing *Gatúbela* on August 22, 2022, based on the facts set forth herein, it is likely that one or more of Defendants – most likely, starting with DJ Maff – accessed and listened to the Work before beginning to write, record, and/or produce (or, at least, before finishing) *Gatúbela.*

**B.     Defendants' Infringement**

33.     The Work was created, performed, produced, and otherwise made widely available by Alfr3d before Defendants began to write, record, and/or produce (or, at least, before they finished) *Gatúbela.*

34.     In fact, while Alfr3d posted the Work on YouTube on July 12, 2022, the first known preview of *Gatúbela* was published on August 22, 2022 and records of the U.S. Copyright Office confirm that *Gatúbela* was not officially published until August 25, 2022.

35.     The similarities between the Work and *Gatúbela*, as described herein, are so strikingly similar that they cannot be purely coincidental.

36.     *Gatúbela* is substantially similar to the Work in critical respects that are not just incidental but rather go the core of each work.

37.     An expert musicologist has compared the two works and found, without limitation, as follows:

a.     The main compositional element of the Work is a 4-bar phrase presented by a synthesizer, which constitutes approximately forty-six percent (46%) of the song's total runtime ("Phrase A").

b.     *Gatúbela* features a synthesizer riff heavily modeled after Phrase A in the Work, as evidenced by seventy-seven percent (77%) rhythmic similarity and seventy-three percent (73%) pitch similarity.

c.     The *Gatúbela* synthesizer riff constitutes approximately fifty-three percent (53%) of the song's total runtime.

d.     The chorus vocal melody of *Gatúbela* is also heavily modeled after Phrase A in the Work, as evidenced by sixty-four percent (64%) rhythmic similarity and twenty-six percent (26%) pitch similarity.

e.     The *Gatúbela* chorus material constitutes approximately thirty-six percent (36%) of the song's total runtime and the vast majority of the melodic vocal material (given that the verses are spoken/chanted and not sung).

f.     Phrase A in the Work contains a distinctive configuration of pitches and rhythms that does not appear to be a mere musical building block, which can be explained away by prior art.

g.     *Gatúbela* also uses a synthesizer timbre that is extremely similar to the one used in the Work, characterized by a tinny, thin timbre with a fast attack – somewhere between a guitar synth and a piano synth.

> h.   The similarities between *Gatúbela* and the Work would not have occurred by chance alone.

38.   Without prompting, numerous non-expert listeners have also independently drawn the conclusion that Defendants copied the Work from Alfr3d in their creation of *Gatúbela*, including, without limitation, by making the following comments on Alfr3d's YouTube posting for the Work:

> a.   @vikalfred, "Karol G ya uso tu beat" (translated: "Karol G already used your beat").
>
> b.   @zUNTOUCHABLE, "También noté que este beat salió antes de GATUBELA . . . increíble) (translated: "I also noticed this beat came out before GATUBELA . . . incredible").
>
> c.   @victorcastro8179, "Este beat es el original de Gatúbela jajaja . . .") (translated: "This is the beat of the original Gatubela hahaha").

39.   Even if certain elements of the Work might be unprotectible standing alone, as a whole and based upon the combination and organization of any unprotectible elements, the Work is entitled to copyright protection and has been misappropriated by Defendants.

40.   Plaintiffs are – and, at all relevant times, have been – owners of the copyrights with respect to the Work.

41.   Defendants do not and never did hold any licensing rights with respect to the Work and never acquired any other rights in or to it.

42.   The similarities between *Gatúbela* and the Work, as described above, are such that it is simply not reasonable to believe that *Gatúbela* could have been created without having heard the Work first.

43.     Based on all of the foregoing, it is apparent that Defendants copied, interpolated, or otherwise used material, unique, and distinct portions of the Work, as previously published, in the creation of *Gatúbela*, making a derivative work, without license or other consent by Plaintiffs.

44.     On or about September 27, 2024, Plaintiffs, through their counsel, notified Defendants of the infringement by letter addressed to UMG and copying, *inter alia*, the booking and management agents for Karol G, Maldy, DJ Maff, and Tavárez (the "Pre-Suit Notice and Demand").

45.     By and through the Pre-Suit Notice and Demand, Plaintiffs demanded the following relief: (i) an accounting of all direct and indirect royalties, revenues, and/or other economic benefits generated by the creation and subsequent commercial exploitation of *Gatúbela*; (ii) payment to Plaintiffs of no less than fifty percent (50%) of all direct and indirect royalties, revenues, and/or other economic benefits generated by the creation and subsequent commercial exploitation of *Gatúbela* to date; (iii) an agreement to pay Plaintiffs no less than fifty percent (50%) of all direct and indirect royalties, revenues, and/or other economic benefits generated by the creation and subsequent commercial exploitation of *Gatúbela* in the future; and (4) formal recognition and acknowledgement of Alfr3d as a co-author of *Gatúbela*.

46.     Although attorneys for Karol G responded to the Pre-Suit Notice and Demand, none of the other Defendants responded.

47.     Collectively, Defendants have failed to provide the relief requested in the Pre-Suit Notice and Demand and have continued to commercially exploit *Gatúbela* unlawfully by using the melodic, harmonic, rhythmic, and lyrical compositions copied from the Work without permission.

48.     Despite the Pre-Suit Notice and Demand, each of Defendants has continued to infringe Plaintiffs' copyrighted Work.

49.     The infringement by Defendants is willful, as evidenced by their continuing infringement of the Work after the Pre-Suit Notice and Demand was provided to them.

50.     Defendants have knowingly and intentionally infringed upon Plaintiffs' rights.

51.     Defendants' collective knowledge and intent are established by, among other things, the facts set forth herein and by the fact that Defendants, to this day, have neither sought, nor obtained, a license from Plaintiffs.

**AS AND FOR A FIRST CAUSE OF ACTION**
**(Copyright Infringement – 17 U.S.C. § 101, *et seq.*)**

52.     Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs 1 through 51 as though fully set forth herein.

53.     Plaintiffs are owners of all copyrights with respect to the Work.

54.     Since the onset of Plaintiffs' copyright protection on July 12, 2022 and Plaintiffs' subsequent procurement of the statutory copyrights, Defendants' reproduction, distribution, public performances, and other commercial exploitation of *Gatúbela* has been regular, routine, and continuous.

55.     Defendants have not compensated Plaintiffs for using the Work even though they received money and other substantial benefits from doing so during the period from August 22, 2022, to the present.

56.     During the relevant time period, Defendants, and each of them, engaged in the unauthorized reproduction, distribution, public performance, streaming, broadcasting, licensing, display, use, and/or other commercial exploitation of *Gatúbela*, which infringes Plaintiffs' exclusive rights to the Work under the Copyright Act.

57.     During the relevant time period, Defendants, and each of them, made copies of *Gatúbela* and sold, reproduced, distributed, publicly performed, streamed, broadcasted, licensed, displayed, used, and/or otherwise commercial exploited *Gatúbela* without Plaintiffs' consent.

58.     Defendants never received permission, authorization, consent, or even a license from Plaintiffs to interpolate, sample, use, or copy the Work, in whole or in part.

59.     All of the elements of the Work, and the creative selection and combination of those elements, are original.

60.     During the relevant time period, Defendants, and each of them, with knowledge of the infringement at issue, took material steps to copy the Work to create and subsequently use and monetize *Gatúbela*.  In doing so, Defendants contributed to one another's infringement by assisting in the obtainment and copying of material portions of the Work.

61.     During the relevant time period, Defendants, and each of them, financially benefited from the known infringement at issue and had the ability to supervise, oversee, and control the infringing conduct that gave rise to the creation and subsequent use and monetization of *Gatúbela*.

62.     During the relevant time period, Defendants further infringed upon the Plaintiffs' copyrights when they issued and/or authorized others to issue licenses to third parties for the use, publication, and exploitation of *Gatúbela* or established royalty splits with co-Defendants not entitled to illegal revenues generated by *Gatúbela*.  These license and agreements were issued without any consent, authority, or approval from Plaintiffs.

63.     Defendants' conduct in infringing upon the Work has, at all times, been knowing and willful and with disregard to Plaintiffs' rights.

64.     It is particularly clear that Defendants' conduct since the date of the Pre-Suit Notice and Demand sent on September 27, 2024, constitutes knowing and willful infringement of Plaintiffs' copyrights.

65.     As a direct and/or proximate cause of Defendants' wrongful conduct during the relevant time period, Plaintiffs have been and continue to be harmed, and they have suffered and continue to suffer actual damages in the form of, *inter alia*, lost licenses, revenues, royalties, and profits, lost goodwill, and a diminution in the value of the Work in an amount to be determined at trial, but, in no event, less than $6,000,000.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Vicarious/Contributory Copyright Infringement)

66.     Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs 1 through 51 as though fully set forth herein.

67.     The reproduction, distribution, and creation of derivative works from *Gatúbela* constitutes the direct infringement of the Work and Plaintiffs' copyrights.

68.     To the extent any of the Defendants were not personally and directly involved in the infringing conduct, all such Defendants are nonetheless liable to Plaintiffs for vicarious or contributory copyright infringement because, during the relevant time period:

a.   All such Defendants had actual or constructive knowledge of the infringing conduct and materially contributed to that infringing conduct by encouragement and assistance.

b.   All such Defendants had the right and ability to supervise the activities of those engaged in the infringement, including, without limitation, through recording contracts, composition service contracts, distribution

16

contracts, publishing contracts, license agreements, and/or other relevant agreements.

c. All such Defendants failed to exercise their right and/or ability to remedy, stop, or limit the infringing conduct, and, instead, induced, caused, or materially contributed to the infringing conduct.

d. All such Defendants derived an obvious and direct financial benefit from the infringement and exploitation of Plaintiffs' copyrighted work, including without limitation, through revenue sharing and/or royalty payments.

69.     The acts of infringement, as described herein, were and continue to be willful, in disregard of, and with indifference to, the rights of Plaintiffs.

70.     It is particularly clear that all Defendants knew or should have known of the infringing activity at least since the date of the Pre-Suit Notice and Demand sent on September 27, 2024.

71.     As a result of Defendants' acts or omissions as set forth herein, Plaintiffs have suffered and continue to suffer substantial damages to their business including, without limitation, diversion of trade, loss of profits, injury to goodwill and reputation, and the dilution of the value of their rights, none of which may be fully ascertained at this time.

72.     Defendants have also unlawfully profited from their infringement, constituting actual damages in an amount to be determined at trial.

73.     Accordingly, to the extent any of the Defendants were not personally and directly involved in infringing conduct, all such Defendants are nevertheless liable to Plaintiffs for vicarious or contributory copyright infringement in an amount to be determined at trial, but, in no

event, less than $6,000,000.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Declaratory Judgment)

74.     Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs 1 through 51 as though fully set forth herein.

75.     Plaintiffs are the authors and copyright owners for the Work and, given the nature and extent of Defendants' infringement, Plaintiffs are entitled to no less than fifty percent (50%) of the publishing and other revenues derived from *Gatúbela*.

76.     An actual, substantial, and continuing controversy exists between Plaintiffs and Defendants given the acts and omissions set forth above, including, without limitation, Defendants' continuing failure and refusal to recognize Plaintiffs' entitlement to no less than fifty percent (50%) of the publishing and other revenues derived from *Gatúbela.*

77.     Plaintiffs face a definite threat of future injury as Defendants continue their infringement with respect to the Work in violation of Plaintiffs' legal interests and without compensating Plaintiffs appropriately.

78.     Plaintiffs and Defendants have adverse legal interests, and there is sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

79.     Plaintiffs are entitled to a judicial declaration of their rights and other legal relations pursuant to, *inter alia*, 28 U.S.C. § 2201(a).

**WHEREFORE**, Plaintiffs respectfully request that judgment be entered against Defendants, jointly and severally, as follows:

a.  On the First Cause of Action, awarding Plaintiffs injunctive relief and/or damages in an amount to be determined at trial;

b.  On the Second Cause of Action, awarding Plaintiffs injunctive relief and/or damages in an amount to be determined at trial;

c.  On the Third Cause of Action, declaring that, given the nature and extent of Defendants' infringement with respect to the Work, Plaintiffs are entitled to no less than fifty percent (50%) of the publishing and other revenues derived from *Gatúbela*;

d.  Awarding Plaintiffs an accounting, punitive damages, pre-judgment and post-judgment interest, attorneys' fees, costs, expenses, and disbursements; and

e.  Awarding Plaintiffs such other and further relief as the Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs, under Rule 38 of the Federal Rules of Civil Procedure, request a trial by jury of any issues so triable by right.

Dated: West Palm Beach, FL
       March 12, 2025

McLAUGHLIN & STERN PLLC

By:     /s/ Neil B. Solomon
        Neil B. Solomon, Esq.

525 Okeechobee Blvd., Suite 1700
West Palm Beach, FL 33401
Tel.: (561) 659-4020
nsolomon@mclaughlinstern.com

McLAUGHLIN & STERN, LLP
Chester R. Ostrowski, Esq.*
Charles F. Kellett, Esq.*
260 Madison Avenue
New York, NY 10016
Tel.: (212) 448-1100
costrowski@mclaughlinstern.com
ckellett@mclaughlinstern.com
* *Pro Hac Vice* Admission Anticipated

*Attorneys for Plaintiffs Jack D. Hernandez d/b/a Ocean Vibes Music Publishing and Dick Alfredo Caballero Rodriguez a/k/a Alfr3d Beats*