# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### No.: 9:25-cv-80338-Dimitrouleas/Reinhart

JACK D. HERNANDEZ d/b/a OCEAN VIBES
MUSIC PUBLISHING, and DICK ALFREDO
CABALLERO RODRIGUEZ a/k/a ALFR3D
BEATS,

   Plaintiffs,

v.

UMG RECORDINGS, INC. d/b/a UNIVERSAL
MUSIC GROUP d/b/a UNIVERSAL MUSIC
LATINO, CAROLINA GIRALDO NAVARRO
a/k/a KAROL G, EDWIN VASQUEZ VEGA a/k/a
MALDY, MARVIN HAWKINS RODRIGUEZ
a/k/a DJ MAFF, JULIO MANUEL GONZALEZ
TAVAREZ a/k/a LENNY TAVAREZ, and JUSTIN
QUILES,

   Defendants.



FILED BY _____ D.C.

FEB 17 2026

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI



## PLAINTIFFS' EXHIBIT LIST AND EXHIBITS IN SUPPORT OF AMENDED RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## I. PLAINTIFFS' OWNERSHIP, PRIORITY & PUBLICATION EVIDENCE

**P-0001**
U.S. Copyright Registration – *Punto G* (Musical Composition)

**P-0002**
Foreign Copyright Registration(s) – *Punto G*

**P-0003**
BMI Songview Records listing Plaintiffs as songwriters and publishers of *Punto G*

**P-0004**
YouTube publication of *Punto G* showing public release date of July 12, 2022

**P-0005**
YouTube analytics and marketing materials for *Punto G* (including "Karol G x Feid type beat" description and geographic viewership data)

**P-0006**
Pre-suit notice and settlement correspondence to Defendants

**P-0007**
Supplemental ownership and registration documentation for *Punto G*

**P-0008**
Chain-of-title documentation for *Punto G*

**P-0009**
Additional evidence of Plaintiffs' priority and original authorship

## II. ACCESS & COMMUNICATIONS EVIDENCE

**P-0010**
Evidence of continued exploitation of *Gatúbela* after notice

**P-0011**
Additional post-notice exploitation evidence

**P-0012**
Direct communications between Plaintiff Alfr3d Beats and Defendant DJ Maff

## III. EXPERT DISCLOSURES (PLAINTIFFS)

**P-0013**
Expert musicology report of Dr. Ethan Lustig, Ph.D., identifying similarities between *Punto G* and *Gatúbela*

## IV. DEFENDANTS' COPYRIGHT REGISTRATIONS (INCONSISTENT FILINGS)

**P-0014**
U.S. Copyright Registration for *Gatúbela* – Version 1

**P-0015**
U.S. Copyright Registration for *Gatúbela* – Version 2

**P-0016**
U.S. Copyright Registration for *Gatúbela* – Version 3

**P-0017**
U.S. Copyright Registration for *Gatúbela* – Version 4

**P-0018**
U.S. Copyright Registration for *Gatúbela* – Version 5

*(Collectively reflecting inconsistent and contradictory representations regarding authorship, ownership, publishers, creation dates, completion dates, and chain of title across multiple sworn federal filings.)*

## V. DISCOVERY – PLAINTIFFS' WRITTEN DISCOVERY

**P-0020**
Plaintiffs' First Set of Interrogatories to Defendants

**P-0021**
Defendants' Responses to Plaintiffs' First Set of Interrogatories

**P-0022**
Plaintiffs' First Requests for Production to Defendants

**P-0023**
Defendants' Responses and Objections to Plaintiffs' Requests for Production

**P-0024**
Plaintiffs' Requests for Admission (if applicable)

**P-0025**
Defendants' Responses to Requests for Admission (if applicable)

## VI. DISCOVERY – DEFENDANTS' WRITTEN DISCOVERY

**P-0026**
Defendants' Interrogatories to Plaintiffs

**P-0027**
Plaintiffs' Responses to Defendants' Interrogatories

**P-0028**
Defendants' Requests for Production to Plaintiffs

**P-0029**
Plaintiffs' Responses to Defendants' Requests for Production

## VII. DECLARATIONS & AFFIDAVITS (DEFENDANTS)

**D-0001**
Declaration of Marvin Hawkins Rodríguez a/k/a DJ Maff (D.E. 61)

**D-0002**
Declaration of Carolina Giraldo Navarro a/k/a Karol G (D.E. 64)

**D-0003**
Declaration of Edwin Vásquez Vega a/k/a Maldy (D.E. 63)

**D-0004**
Declaration of Julio Manuel González Tavárez a/k/a Lenny Tavárez (D.E. 67)

**D-0005**
Declaration of Justin Quiles (D.E. 62) (undated)

## VIII. WHATSAPP COMMUNICATIONS & TRANSLATIONS (DEFENDANTS)

**D-0010**
WhatsApp communications between DJ Maff and Daniel Echavarría Oviedo ("Ovy")
(Exhibit 3 to DJ Maff Declaration, D.E. 61-3)

**D-0011**
Certified English translations of WhatsApp communications (D.E. 68)

## IX. AUDIO FILES & POST-DISCOVERY MATERIALS (DEFENDANTS)

**D-0020**
Post-discovery audio files allegedly dated July 6, 2022 (D.E. 71)

**D-0021**
Supplemental audio submissions filed after the close of discovery (D.E. 79)

## X. EXPERT MATERIALS (DEFENDANTS)

**D-0030**
Defendants' expert musicology report (D.E. 66)

## XI. COURT FILINGS, ORDERS & PROCEDURAL RECORD

**C-0001**
Defendants' Motion for Summary Judgment (D.E. 69)

**C-0002**
Plaintiffs' Opposition to Defendants' Motion for Summary Judgment

**C-0003**
Plaintiffs' Statement of Material Facts

**C-0004**
Order denying Plaintiffs' motion to strike or exclude WhatsApp communications (Jan. 15, 2026)

**C-0005**
Orders denying extension or reopening of discovery (D.E. 55, 58, 75, 80)

**C-0006**
Court's Omnibus Order governing summary judgment practice (D.E. 103)

## XII. SUPPLEMENTAL IMPEACHMENT EXHIBITS

*(Public Interview & Social Media Materials)*

**P-0XX -** Lodged with the Clerk due to file size
Video interview of Defendant Marvin Hawkins Rodríguez a/k/a DJ Maff, published by Canal Teleislas on Facebook on September 14, 2022 (offered solely for impeachment purposes) -

**P-0XA**
Original Spanish-language transcript of the September 14, 2022 Canal Teleislas Facebook interview of Defendant DJ Maff (offered solely for impeachment and accuracy)

**P-0XB**
Certified English translation of the September 14, 2022 Canal Teleislas Facebook interview of Defendant DJ Maff, corresponding to Exhibit P-0XA (offered solely for impeachment and accuracy)

**Instagram Comments and Direct Messages (Impeachment / Credibility)**

**P-0XY**

 Verbatim Spanish-language transcript of Instagram comments and direct messages exchanged between Plaintiff Dick Alfredo Caballero Rodriguez a/k/a Alfr3d Beats and Defendant Marvin Hawkins Rodríguez a/k/a DJ Maff (September 2022)

**P-0XZ**

 Certified English translation and translator's declaration for the Instagram comments and direct messages corresponding to Exhibit P-0XY

Dated: February 6, 2026

<div align="right">

Respectfully submitted,

**JACK D. HERNANDEZ**
d/b/a Ocean Vibes Music Publishing
*Plaintiff, Pro Se*

By: */s/ Jack D. Hernandez*
**Jack D. Hernandez**
16133 E Lancashire
Loxahatchee, Florida 33470
Email: jackdariohernandez@gmail.com

**DICK ALFREDO CABALLERO RODRIGUEZ**
a/k/a ALFR3D Beats
*Plaintiff, Pro Se*

By: */s/ Dick Alfredo Caballero*
**Dick Alfredo Caballero**
El Salvador, La Libertad
Ciudad Marsella Q5, D31
Email: alfr3dmusic@hotmail.com

</div>

**DIGITAL SIGNATURE CERTIFICATION:** The undersigned Pro Se Plaintiffs certify that their digital signatures included in this filing are intended to serve as valid signatures for all legal purposes under Federal Rule of Civil Procedure 11 and the Local Rules of the Southern District of Florida.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served on February 6, 2026 by electronic mail on counsel of record for Defendants, including:

Brendan Stuart Everman, Esq. at beverman@pryorcashman.com, James George Sammataro,Esq. at jsammataro@pryorcashman.com, Karen I. Suarez, Esq. at ksuarez@pryorcashman.com, and

Pryor Cashman LLP – Docketing at docketing@pryorcashman.com

By: /s/ Jack D. Hernandez
**Jack D. Hernandez**
d/b/a Ocean Vibes Music Publishing
*Plaintiff, Pro Se*
16133 E Lancashire
Loxahatchee, Florida 33470
Email: jackdariohernandez@gmail.com

Date: 02/06/2026

**EXHIBIT – P-0001**

**Registration Number**

# PA 2-487-058

**Effective Date of Registration:**
August 03, 2024
**Registration Decision Date:**
August 28, 2024

## Title

| | |
|---|---|
| **Title of Work:** | Punto G |

## Completion/Publication

| | |
|---|---|
| **Year of Completion:** | 2022 |
| **Date of 1st Publication:** | July 12, 2022 |
| **Nation of 1st Publication:** | El Salvador |

## Author

| | | |
|---|---|---|
| • | **Author:** | Dick Alfredo Caballero |
| | **Author Created:** | music, musical arrangement |
| | **Citizen of:** | El Salvador |

## Copyright Claimant

| | |
|---|---|
| **Copyright Claimant:** | Ocean Vibes Music Publishing |
| | 16133 E Lancashire, Loxahatchee, FL, 33470, United States |

## Rights and Permissions

| | |
|---|---|
| **Name:** | Jack Hernandez |
| **Email:** | jackdariohernandez@gmail.com |
| **Telephone:** | (561)512-7480 |

## Certification

| | |
|---|---|
| **Name:** | Jack Hernandez |
| **Date:** | August 03, 2024 |

**EXHIBIT – P-0002**

| | |
|---|---|
| No Presentación | 2023000006 |
| Fecha Presentación | 03/01/2023 03:45:22 |

| | |
|---|---|
| Servicio | DEPOSITO DE DERECHO DE AUTOR |
| Nombre de la Obra | PUNTO G |
| Solicitante | DICK ALFREDO CABALLERO RODRIGUEZ |
| Notificar a | No hay persona a notificar |
| Por medio de | Tablero Oficina Registral: TABLERO |
| Doc. que acompaña la solicitud | 1 USB Y COMPROBANTE DE PAGO. PRESENTA: DICK ALFREDO CABALLERO RODRIGUEZ DUI:05014545-2 |

| | | Equipo de Trabajo | EQUIPO 1 |
|---|---|---|---|
| Oficina: | San Salvador | Receptor | MI2114 |

Tiempo de respuesta no mayor a 4.8 horas.

ESCANEO 5

MI2114

No de Presentacion: 2023000006

REGISTRO DE LA PROPIEDAD INTELECTUAL: DEPARTAMENTO DE DERECHOS DE AUTOR. San Salvador, a las once horas y cuatro minutos del día cuatro de enero de dos mil veintitrés.

Agréguese el comprobante de pago de depósito de obra con número 133904284, por la cantidad de $11.43 de dólar de los Estados Unidos de América, juntamente con la solicitud y ejemplar presentado.

Tiénese por parte a DICK ALFREDO CABALLERO RODRIGUEZ, ARTISTA, mayor de edad, del domicilio de San Juan Opico, departamento de La Libertad, de nacionalidad SALVADOREÑA quien actúa en su carácter personal, por manifestar que es el autor de la obra presentada para su depósito.

Reunidos los requisitos de Ley, ADMÍTASE la solicitud de depósito de la obra titulada PUNTO G, la cual queda depositada en este Departamento.

Extiéndase al interesado el certificado de deposito respectivo. NOTIFÍQUESE.

Nancy Kalya Navarrete Quintanilla
REGISTRADORA

NOTA: Se hace constar que el presente depósito de obra constituye para el poseedor del certificado una prueba de la existencia de la misma. La protección del derecho de autor no abarca las ideas, procedimientos, métodos de operación o conceptos matemáticos, protegiendo exclusivamente la forma mediante la cual su autor/autores haya expresado sus ideas sean estas abstractas o concretas. (Art 2 del Convenio de Berna, Art 9 Acuerdo sobre los ADPIC, Arts. 12, 95 y 96 LPI).

**EXHIBIT - P-0003**

**SONGVIEW** ❖ A combined view of ASCAP and BMI musical works.

NOW VIEWING...

# Songview

1 results found

| Title | BMI Work ID | SV Status | Writer / Composer | Performer |
|-------|-------------|-----------|-------------------|-----------|
| PUNTO G | 63767667 | | CABELLERO DICK | |

---

**TOTAL %**
**CONTROLLED**    **WORK ID**
BMI      100%    63767667

ISWC

**Writers / Composers**

% CONTROLLED    BMI: 50%

| WRITERS / COMPOSERS | CURRENT AFFILIATION | IPI # |
|---------------------|---------------------|-------|
| CABELLERO DICK | NS | 0 |

**Performers**

*NO DATA AVAILABLE*

**Publishers**

% CONTROLLED    BMI: 50%

| PUBLISHERS | CURRENT AFFILIATION | IPI # |
|------------|---------------------|-------|
| ▸ OCEAN VIBES | BMI | 500716889 |

**Alternate Titles**

*NO DATA AVAILABLE*

**EXHIBIT - P-0004**







All Rights Reserved By Alfr3d Beats ©
-----------------------------------------

#beat #typebeat
Free beats, Free beat Reggaeton, Reggaeton, Reggaeton Type Beat, Pistas de Reggaeton, Reggaeton Romantico, Beat de Reggaeton, Reggaeton Beat, Instrumental de Reggaeton, Reggaeton Instrumental, Pista de Reggaeton 2020, Pista de Reggaeton 2021, Dancehall, Dancehall 2020, Dancehall, Dancehall 2021, Dancehall Instrumental, Pista de Dancehall, Dancehall Beat, Dancehall Type Beat, Instrumental de Dancehall, Perreo, Instrumental de Perreo, Perreo Type Beat, Instrumental, Base de Trap, Trapeton, Pista de Trap, Trap estilo Myke Towers, Trap type beat, Trap latino, Trap beat type, Pista de Trap 2021, Trap 2020, Trap 2021, Myke Towers y Jhay Cortez, Myke Towers Beat, Feid Type Beat, Feid beat type, Instrumental estilo Feid, Fenxxo, Myke Towers Type Beat, Timeless, Jhay Cortez pista, Jhay Cortez Instrumental, Myke Towers Instrumental, Trapeton Type beat, Instrumental de Trap, Beat de Trap, Beats gratis, Instrumentales gratis, intrumental gratis, Base de Reggaeton Perreo, J balvin Type Beat, Bad Bunny Type Beat, Anuel AA Type Beat, Arcangel AA Type Beat, Jhay Cortez Type Beat, Farruko Type Beat, Ozuna Type Beat, Guaynaa Type Beat, Lunay Type Beat, Bryant Myers Type Beat, Darell Type Beat, Miky Woodz Type Beat, Jowell y Randy Type Beat, Daddy Yankee Type Beat, Sebastian Yatra Instrumental, bleasd type beat, blestilo blessd, Sebastian Yatra Type Beat, Rauw Alejandro Type Beat, Rosalia Type Beat, Paloma Mami Type Beat Maluma Type Beat, Myke Towers Type Beat, Eladio Carrion Type Beat, Zion y Lennox Type Beat, Karol G Type Beat, Ñengo Flow Type Beat, Ozuna, Manuel Turizo, Nicky Jam, Jhay Cortez, Myke Towers Instrumental, Rauw Alejandro Instrumental, Bad Bunny Instrumental, Karol G Instrumental, J Balvin Instrumental, Jhay Cortez Instrumental, Tainy Instrumental, Ozuna Instrumental, Zion y Lennox Instrumental, Ñengo Flow Instrumental, Farruko Instrumental, Anuel Instrumental, Bad Bunny Instrumental, Sech Instrumental, Lyanno, Dimelo Flow, Rosalia Instrumental, Nio Garcia Instrumental, Maluma Instrumental, Shakira Instrumental, Perreo Instrumental, Lunay Type Beat, Lunay Instrumental, Wisin Instrumental, Chencho Corleone Instrumental, Chencho Corleone, Chencho Corleone Type Beat Yandel, Wisin, Zion y Lennox, Bryant Myers, Eladio Carrion, Rauw Alejandro, Lyanno, Rosalia, Paloma Mami, Karol G, Natti Nattasha, Becky G, Bytiago, Lunay, Guaynaa, Nio Gracia, De la Gheto, Myke Towers, Ñengo Flow, Alex Rose, Jon Z, Luigi 21 Plus, Cosculluela, Viva el Perreo, Puerto Rico, Afrobeat Instrumental, Trapeton, Instrumental 2021, Te bote Instrumental, Instrumental de uso libre, Instrumentales Gratis, Beat de Trapeton, Instrumental de Trapeton, Instrumental de Reggaeton Perro, Instrumental de Reggaeton 2020, Instrumental de Reggaeton 2021, Free Dancehall, Afrobeat, Afrobeat Instrumental, Afrobe

## Transcript

Follow along using the transcript



















All Rights Reserved By Alfr3d Beats ©

#beat #typebeat

Free beats, Free beat Reggaeton, Reggaeton, Reggaeton Type Beat, Pistas de Reggaeton, Reggaeton Romantico, Beat de Reggaeton, Reggaeton Beat, Instrumental de Reggaeton, Reggaeton Instrumental, Pista de Reggaeton 2020, Pista de Reggaeton 2021, Dancehall, Dancehall 2020, Dancehall, Dancehall 2021, Dancehall Instrumental, Pista de Dancehall, Dancehall Beat, Dancehall Type Beat, Instrumental de Dancehall, Perreo, Instrumental de Perreo, Perreo Type Beat, Instrumental, Base de Trap, Trapeton, Pista de Trap, Trap estilo Myke Towers, Trap type beat, Trap latino, Trap beat type, Pista de Trap 2021, Trap 2020, Trap 2021, Myke Towers y Jhay Cortez, Myke Towers Beat, Feid Type Beat, Feid beat type, Instrumental estilo Feid, Fenxo, Myke Towers Type Beat, Timeless, Jhay Cortez pista, Jhay Cortez Instrumental, Myke Towers Instrumental, Trapeton Type beat, Instrumental de Trap, Beat de Trap, Beats gratis, Instrumentales gratis, Intrumental gratis, Base de Reggaeton Perreo, J balvin Type Beat, Bad Bunny Type Beat, Anuel AA Type Beat, Arcangel AA Type Beat, Jhay Cortez Type Beat, Farruko Type Beat, Ozuna Type Beat, Guaynaa Type Beat, Lunay Type Beat, Bryant Myers Type Beat, Darell Type Beat, Miky Woodz Type Beat, Jowell y Randy Type Beat, Daddy Yankee Type Beat, Sebastian Yatra Instrumental, blessd type beat, blestilo blessd, Sebastian Yatra Type Beat, Rauw Alejandro Type Beat, Rosalia Type Beat, Paloma Mami Type Beat Maluma Type Beat, Myke Towers Type Beat, Eledio Carrion Type Beat, Zion y Lennox Type Beat, Karol G Type Beat, Ñengo Flow Type Beat, Ozuna, Manuel Turizo, Nicky Jam, Jhay Cortez, Myke Towers Instrumental, Rauw Alejandro Instrumental, Bad Bunny Instrumental, Karol G Instrumental, J Balvin Instrumental, Jhay Cortez Instrumental, Tainy Instrumental, Ozuna Instrumental, Zion y Lennox Instrumental, Ñengo Flow Instrumental, Farruko Instrumental, Anuel Instrumental, Bad Bunny Instrumental, Sech Instrumental, Lyanno, Dimelo Flow, Rosalia Instrumental, Nio Garcia Instrumental, Maluma Instrumental, Shakira Instrumental, Perreo Instrumental, Lunay Type Beat, Lunay Instrumental, Wisin Instrumental, Chencho Corleone Instrumental, Chencho Corleone, Chencho Corleone Type Beat Yandel, Wisin, Zion y Lennox, Bryant Myers, Eladio Carrion, Rauw Alejandro, Lyanno, Rosalia, Paloma Mami, Karol G, Natti Nattasha, Becky G, Bytiago, Lunay, Guaynaa, Nio Gracia, De la Gheto, Myke Towers, Ñengo Flow, Alex Rose, Jon Z, Luigi 21 Plus, Cosculluela, Viva el Perreo, Puerto Rico, Afrobeat Instrumental, Trapeton, Instrumental 2021, Te bote Instrumental, Instrumental de uso libre, Instrumentales Gratis, Beat de Trapeton, Instrumental de Trapeton, Instrumental de Reggaeton Perro, Instrumental de Reggaeton 2020, Instrumental de Reggaeton 2021, Free Dancehall, Afrobeat, Afrobeat Instrumental, Afrobe

## Transcript

Follow along using the transcript



**EXHIBIT – P-0005**







Desde la publicación ▾

| 12 jul 2022 – 7 nov 2023 | Visualizaciones |
|---|---|
| Chile | 4,6 % |
| México | 4,4 % |
| Colombia | 3,8 % |
| Argentina | 2,5 % |
| India | 1,8 % |

**2:09** 

# ‹ Regiones geográficas pri...

Desde la publicación ▼

| 12 jul 2022 – 7 nov 2023 | Visualizaciones |
|---|---|
| Chile | **4,6 %** |
| México | **4,4 %** |
| Colombia | **3,8 %** |
| Argentina | **2,5 %** |
| India | **1,8 %** |

**EXHIBIT – P-0006**

# McLaughlin & Stern, LLP
## Founded 1898

**Chester R. Ostrowski**
Partner
costrowski@mclaughlinstern.com
Direct Dial: (212) 455-0454

260 Madison Avenue
New York, New York 10016
(212) 448–1100
Fax (212) 448–0066

www.mclaughlinstern.com

Garden City, New York
Millbrook, New York
Westfield, New Jersey
Westport, Connecticut
West Palm Beach, Florida
Naples, Florida

September 27, 2024

**BY FEDERAL EXPRESS**
UMG Recordings, Inc.
c/o Universal Music Latino
2220 Colorado Avenue
Santa Monica, CA 90404
Attn: Legal Department

> **Re:** **Notice of Copyright Infringement**
> **and Pre-Suit Demand for Relief**

Dear Madam or Sir:

This firm has been retained by Ocean Vibes Music Publishing ("Ocean Vibes") and Dick Alfredo Caballero Rodriguez a/k/a "Alfr3d Beats" ("Alfr3d") (collectively, "Claimants") in connection with a claim of copyright infringement against UMG Recordings, Inc., together with certain additional individuals and entities, including, without limitation: (i) songwriter, performer, and producer Carolina Giraldo Navarro a/k/a "Karol G"; (ii) songwriter and performer Edwin Vázquez Vega a/k/a "Maldy"; (iii) songwriter and producer Marvin Hawkins Rodriguez a/k/a "DJ Maff"; (iv) songwriter Julio Manuel Gonzalez Tavarez a/k/a "Lenny Tavarez"; (v) composer Justin Quiles; and (vi) record label Universal Latino, a division of UMG Recordings, Inc. d/b/a "Universal Music Group" (collectively, the "Putative Defendants"). More specifically, Claimants contend that the composition and associated sound recording entitled "Gatúbela" by Karol G and Maldy ("Gatúbela") infringes upon Claimants' composition and associated sound recording entitled "Punto G" [U.S. Copyright Office Registration Nos. PA0002487058 and SR0000982470] ("Punto G" or the "Work"), as described further below.

Based upon our review of the relevant sound recordings, documents, communications, and other information, it appears that Claimants' assertion of infringement against the Putative Defendants is meritorious and that the relief demanded herein is reasonable and appropriate. Claimants have now expressly authorized this firm to provide notices and demands, such as this one, on their behalf, and to handle any and all future communications with and/or litigation adverse to the Putative Defendants related to or concerning their infringement claim. Please be guided accordingly.

**McLaughlin & Stern, LLP**
UMG Recordings, Inc.
September 27, 2024
Page 2

**Basis for Notice and Demand**

     Alfr3d created and produced *Punto G* in his home country of El Salvador prior to July 12, 2022, when it was first published on YouTube and became permanently accessible to the Putative Defendants and the public.[1] Significantly, *Punto G* was identified on YouTube as a "Reggaeton Beat – Carol G x Feid type beat | Instrumental de reggaeton" for the specific purpose of making it easy to find for anybody interested in the reggaeton style of music, including, without limitation, other musical artists and producers. The YouTube post further states:

> Este beat es FREE para uso NO monetizado, sin fines de lucro. Si deseas subir a las diferentes plataformas digitales, debes comprar una licencia, si no, la cancion será bajada. CRÉDITOS EN TÍTULO/DESCRIPCIÓN (Prod. By Alfr3d)[2]

     Simply stated, it is beyond dispute that *Punto G* was written, recorded, produced, published, and otherwise made publicly available before the Putative Defendants created or published *Gatúbela*. In point of fact, records obtained from the U.S. Copyright Office confirm that *Gatúbela* was not published until August 25, 2022. Moreover, although only a little over six weeks elapsed between the first publication of *Punto G* and the first publication of *Gatúbela*, significant evidence of access – and actual copying – by the Putative Defendants exists, including, but not limited to, the following:

- Upon information and belief, DJ Maff was a "subscriber" of Alfr3d's YouTube channel at the time *Punto G* was first published on July 12, 2022.

- On July 12, 2022, *i.e.*, the same day *Punto G* was first published, one or more YouTube users in Colombia (country of origin for both Karol G and DJ Maff) viewed *Punto G* for a total of 1.29 hours (over 77 minutes or approximately 24 times the total length of the song).

- On July 16, 2022, one or more YouTube users in Colombia (country of origin for both Karol G and DJ Maff) viewed *Punto G* for a total of 0.87 hours (over 52 minutes or approximately 16 times the total length of the song).

---

[1]    The YouTube version of *Punto G*, which was posted on July 12, 2022, has remained continuously accessible since that date, and has 3,367 views as of September 27, 2024, can be accessed here: https://youtu.be/706OnufqgnU?si=02vOlfLNUAOHS1i6.   Notably, Alfr3d has over 14,900 subscribers on YouTube. Without limitation, *Punto G* was, at all relevant times, also available for streaming and download at these web-based locations: www.alfr3dmusic.com (via beatstars); and https://player.beatstars.com/?storeId=117132&search_keyword=puntog.

[2]    Roughly translated: "This beat is FREE for non-monetized, non-profit use. If you would like to upload it to different digital platforms, you must purchase a license, if not, the song will be taken down. CREDITS IN TITLE/DESCRIPTION (Prod. By Alfr3d)."

McLaughlin & Stern, LLP
UMG Recordings, Inc.
September 27, 2024
Page 3

- Upon information and belief, between July 12, 2022 and July 21, 2022, DJ Maff "fell in love with the beat" from *Punto G*, sent it to Karol G, along with a few other beats for consideration, and ultimately began writing, recording, and producing *Gatúbela* in earnest.[3]

- On or about July 21, 2022, Karol G's team reached out to Maldy for the first time about his involvement in *Gatúbela*.  Karol G's team gave Maldy the entire song with his verse already written, and he went to the studio in Miami the very next day to record his verse with Justin Quiles.  Only four or five days later, he flew to Barcelona for the video shoot with Karol G and DJ Maff.[4]

- On August 22, 2022, DJ Maff posted about the release of *Gatúbela* on Instagram, including a clip of the music video for the song, and writing, in relevant part, "GATÚBELA @karolg agradecido contigo Gg, la rompiste . . . ."  On or about September 2, 2022, Alfr3d commented on DJ Maff's August 22, 2022 post, writing, "Rompiendo con melodias ajenas," and, approximately 14 minutes later, DJ Maff responded, "no le digas a nadie" (with a laughing emoji).[5]  Tellingly, DJ Maff deleted both Alfr3d's comment and his own response from Instagram on or about September 5, 2022 – *i.e.*, three days after the initial interaction.

- Later on September 2, 2022, Alfr3d direct messaged DJ Maff on Instagram with a mere salutation: "Saludos."   Although unprovoked, DJ Maff defensively responded on September 5, 2022 (*i.e.*, the same date he deleted the posts described above), writing "G mis respetos, ten en cuenta que la música es la misma por siempre, los mismos círculos que se combian en diferentes variaciones etc, conincidencias pueden suceder, te dejo claro la mía la hice hace más de 9 meses."[6]

    Even putting aside the evidence of access above, including DJ Maff's written admission of guilt, the two songs are so strikingly similar that the similarities cannot be purely coincidental. Among other things, and without limitation, an expert musicologist has carefully compared the compositions and determined that: both the main synthesizer riff and vocal chorus melody of

---

[3]      https://www.facebook.com/watch/?v=901505670732696
[4]      https://www.billboard.com/music/latin/maldy-karol-g-gatubela-song-stories-1235141639/;
https://www.instagram.com/p/CiJV919r7HF/?utm_source=ig_web_copy_link&igsh=MzRlODBiNWFlZA== (Maldy's Instagram post depicting video shoot date as July 26, 2022).
[5]      Roughly translated: DJ Maff's Post, "GATÚBELA @karolg grateful to you Gg, you smashed it." Original comment by Alfr3d, "smashing it with other people's melodies."  Response from DJ Maff, "don't tell anyone."
[6]      Roughly translated: Original message from Alfr3d, "Greetings." Response from DJ Maff, "G my respects, keep in mind that music is the same forever, the same circles that combine in different variations etc, coincidences can happen, I'll make it clear to you that I made mine more than 9 months ago."  DJ Maff's representation that he "made" *Gatúbela*, or any part thereof, 9 months earlier is clearly contradicted by other recorded and publicly available interviews.

**McLaughlin & Stern, LLP**
UMG Recordings, Inc.
September 27, 2024
Page 4

*Gatúbela* are extremely similar to the synth melody of *Punto G*; such similarities would not have occurred by chance alone; and such similarities cannot be explained away by prior art. Indeed, according to the expert musicologist, the level of similarity between *Punto G* and *Gatúbela* is "one we almost never see."

Specifically, the main compositional element of *Punto G* is a 4-bar phrase presented by a synthesizer, which constitutes approximately forty-six percent (46%) of the song's total runtime ("Phrase A"). *Gatúbela* features a synthesizer riff heavily modeled after Phrase A in *Punto G*, as evidenced by seventy-seven percent (77%) rhythmic similarity and seventy-three percent (73%) pitch similarity. The *Gatúbela* synthesizer riff constitutes approximately fifty-three percent (53%) of the song's total runtime.

The chorus vocal melody of *Gatúbela* is also heavily modeled after Phrase A in *Punto G*, as evidenced by sixty-four percent (64%) rhythmic similarity and twenty-six percent (26%) pitch similarity. The *Gatúbela* chorus material constitutes approximately thirty-six percent (36%) of the song's total runtime and the vast majority of the melodic vocal material (given that the verses are spoken/chanted and not sung).

Significantly, Phrase A in *Punto G* – created exclusively by Alfr3d – contains a distinctive configuration of pitches and rhythms that does not appear to be a mere musical building block, which can be explained away by prior art.[7]

In sum, Claimants are the sole owners of all copyrights with respect to *Punto G*. The Putative Defendants do not and never did hold any licensing rights with respect to *Punto G* and never acquired any other rights in or to *Punto G*, either. The Putative Defendants nonetheless actually (or very likely) heard *Punto G* prior to the creation and publication of *Gatúbela*. The similarities between *Punto G* and *Gatúbela* are such that it is simply not reasonable to believe that *Gatúbela* could have been created without having heard *Punto G* first.

Instead, it is more likely than not that the Putative Defendants copied, interpolated, or otherwise used material, unique, and distinct portions of *Punto G*, as previously published, in composing, performing, and recording *Gatúbela*, creating a derivative work, without license or other consent by Claimants. The Putative Defendants have otherwise violated -- and are, to date, continuously violating – Claimants' rights with respect to *Punto G* by and through, without limitation, their reproduction, publication, distribution, public performance, broadcasting, marketing, selling, streaming, licensing, monetizing, and/or other commercial exploitation of

---

[7]   Without prompting, numerous non-expert listeners have also independently drawn the conclusion that the Putative Defendants copied *Punto G* in their creation of *Gatúbela*. *See, e.g.*, https://youtu.be/706OnufqgnU?si=02vOIfLNUAOHS1i6 (comment by @vikalfred, "Karol G ya uso tu beat") (comment by @zUNTOUCHABLE, "También noté que este beat salió antes de GATUBELA . . . increíble) (comment by @victorcastro8179, "Este beat es el original de Gatúbela jajaja dimelo Alfred la mente"). Such listeners likely notice that *Gatúbela* uses a synthesizer timbre that is extremely similar to the one used in *Punto G*, characterized by a tinny, thin timbre with a fast attack, somewhere between a guitar synth and a piano synth.

McLaughlin & Stern, LLP
UMG Recordings, Inc.
September 27, 2024
Page 5

*Gatúbela.*[8]

## Notice and Demand

**NOTICE IS HEREBY GIVEN** that the Putative Defendants have infringed, and continue to infringe, upon Claimants' rights in and to *Punto G*.

**DEMAND IS HEREBY MADE** for the Putative Defendants to: (1) provide an accounting of all direct and indirect royalties, revenues, and/or other economic benefits generated by the creation and subsequent commercial exploitation of *Gatúbela* **on or before October 15, 2024**; (2) subsequently pay Claimants no less than fifty percent (50%) of all direct and indirect royalties, revenues, and/or other economic benefits generated by the creation and subsequent commercial exploitation of *Gatúbela* to date; (3) agree to pay Claimants no less than fifty percent (50%) of all direct and indirect royalties, revenues, and/or other economic benefits generated by the creation and subsequent commercial exploitation of *Gatúbela* in the future; and (4) formally recognize and acknowledge Claimants as a co-authors of *Gatúbela*.

## Exercise of Rights and Remedies

Please take further notice that, if the Putative Defendants fail to provide a full and comprehensive accounting on or before the date set forth above (or do not contact me to discuss some other acceptable arrangement), Claimants intend to take any and all actions deemed necessary to fully protect their interests and shall pursue all rights and remedies available to them, at law and in equity, including, but not limited to, the commencement of a civil action in a court of appropriate jurisdiction and/or filing for an injunction and/or initiating notice and takedown procedures with all relevant online platforms.

## No Waivers or Oral Compromise / Litigation Hold

Nothing contained in this notice and demand letter shall be construed to waive, limit, prejudice, or otherwise adversely affect: (1) any of Claimants' rights to obtain an accounting, to recover any and all amounts which may be or may become due or payable to them by the Putative Defendants under applicable law, or to seek an injunction requiring the Putative Defendants to cease their direct or indirect copyright infringement; and/or (2) any of Claimants' other or additional rights, remedies, and/or powers, at law or in equity. All such rights, remedies, and/or powers are hereby expressly reserved.

---

[8]     It is undeniable that *Gatúbela* is a commercial "hit" song. The "official video" for *Gatúbela* has over *half a billion* views on YouTube (534,750,798 as of September 27, 2024). The song debuted and peaked at number 4 on *Billboard's* U.S. Hot Latin Songs and number 37 on *Billboard's* U.S. Hot 100 chart, and it reached number 1 on each of *Billboard's* Colombia and U.S. Latin Rhythm Airplay charts. It became a certified "13x platinum" record, according to the Recording Industry Association of America, as of March 22, 2023. It was also a featured song on Karol G's global stadium tour, which was reportedly the highest-grossing Latin touring act of 2023, taking in $153.3 million in revenue and selling 925,000 over 20 shows. Karol G herself has one of the top 70 Instagram accounts in the world, based on number of followers, topping 70.1 million followers.

**McLaughlin & Stern, LLP**
UMG Recordings, Inc.
September 27, 2024
Page 6

No compromise, settlement, agreement, or understanding with respect to the infringement claim described herein currently exists, and none will be deemed to exist, unless and until such time, if any, as complete written documentation of such compromise, settlement, agreement, or understanding is signed and delivered by all parties. For the avoidance of doubt, no oral communication from or on behalf of Claimants shall constitute any compromise, settlement, agreement, or understanding and the Putative Defendants may not rely on any such oral communication. In addition, no statement, act, omission, or course of dealing or conduct on the part of Claimants will be construed to alter or waive any default or violation of any obligation by the Putative Defendants arising under applicable law, unless reduced to writing and signed on behalf of Claimants.

Since this letter is sent in anticipation of potential litigation, Claimants also demand that the Putative Defendants immediately place a "litigation hold" on all documents, communications, and other information, including electronically stored information (*e.g.*, audio files, emails, text messages, app messages, and/or social media posts or messages), relating in any way *Punto G*, *Gatúbela*, Claimants, and/or the claims and allegations of copyright infringement described herein. These litigation holds should apply specifically, but not be limited, to all paper files, computers, servers, storage media, laptops, tablets, smart phones, and other electronic devices.

Should you or any of the Putative Defendants have any questions about the any of foregoing or wish to discuss this matter in further detail, please do not hesitate to contact me directly by e-mail (costrowski@mclaughlinstern.com) or cell phone (973-525-6959).

Very truly yours,

Chester R. Ostrowski

cc:   **VIA E-MAIL**
managment@karolgmusic.com
maldysocietyllc@gmail.com
djmaff@outlook.com
booking@ltavarez.com
bcmanagement@gmail.com
umpg.royalty@umusic.com
contentProtection@umusic.com

**EXHIBIT - P-0007**

Registration Number

**SR 982-470**

**Effective Date of Registration:**
November 29, 2023
**Registration Decision Date:**
December 07, 2023

## Title

**Title of Work:** Punto G

## Completion/Publication

**Year of Completion:** 2022
**Date of 1st Publication:** July 12, 2022
**Nation of 1st Publication:** El Salvador

## Author

- **Author:** Dick Alfredo Caballero
  **Author Created:** sound recording
  **Citizen of:** El Salvador
  **Domiciled in:** El Salvador

## Copyright Claimant

**Copyright Claimant:** Ocean Vibes Music Publishing
16133 e Lancashire, Loxahatchee, Florida, 33470, United States
**Transfer statement:** By written agreement

## Rights and Permissions

**Organization Name:** Ocean Vibes Music Publishing
**Name:** Jack Hernandez
**Email:** jack@acade.me
**Telephone:** (561)512-7480
**Address:** 16133 E Lancashire
Loxahatchee, FL 33470 United States

## Certification

**Name:**  Jack Hernandez
**Date**:  November 29, 2023

**EXHIBIT - P-0008**

M Gmail

Jack Hernandez <jackdariohernandez@gmail.com>

## U.S. Copyright Office Application - Confirmation of Receipt

**Copyright Office** <noreply@loc.gov>
To: jackdariohernandez@gmail.com

Sat, Aug 3, 2024 at 11:28 AM

THIS IS AN AUTOMATED EMAIL - PLEASE DO NOT REPLY.

Your Application and payment for the work Punto G were received by the U.S. Copyright Office on 8/3/2024.

PLEASE NOTE: Your submission is not complete until you upload or mail the material you are registering. To do so, logon to https://eco.copyright.gov/eService_enu/ and click on case number 1-14113599661 in the Open Cases table. Follow the instructions to either upload a digital copy or mail a physical copy (with shipping slip attached) of the work being registered. Additional instructions and requirements for submitting the material being registered can be found at http://www.copyright.gov/eco/tips/.

SHIPPING SLIPS: If you mail physical copies of the material being registered, the effective date of registration will be based on the date on which we receive the copies WITH CORRESPONDING SHIPPING SLIPS ATTACHED.

A printable copy of the application will be available within 24 hours by clicking the My Applications link in the left top most navigation menu of the Home screen.

You may check the status of this claim via eCO using this number 1-14113599661. If you have questions or need assistance, Copyright Office contact information can be found at http://www.copyright.gov/help/index.html#general.

United States Copyright Office

**EXHIBIT - P-0009**

☰  ▶ YouTube    Search                                    🔍  🎤              ⋮    👤 SIGN IN

We have not been able to archive the video associated with this YouTube page

SKIP NAVIGATION

#beat #typebeat #usolibre

Reggaeton Beat - Carol G x Feid type beat | Instrumental de reggaeton uso libre sin copyrigths

1,699 views • Jul 12, 2022                                    👍 77    👎 DISLIKE    ↗ SHARE    ≡+ SAVE    ...

Alfr3d Beats ♪
9.74K subscribers                                                                          SUBSCRIBE

📷 Instagram:
https://web.archive.org/web/20220815154341/https://www.instagram.com/alfr3dmusic
🎧 Spotify :
https://web.archive.org/web/20220815154341/https://open.spotify.com/artist/7d6ze...
🎬 Youtube:
https://web.archive.org/web/20220815154341/https://www.youtube.com/alfr3dmusic
🌐 Web: https://web.archive.org/web/20220815154341/https://www.alfr3dmusic.com

🎼 DESCARGAR | COMPRAR ✒
https://web.archive.org/web/20220815154341/https://bsta.rs/2ba1d31f5

🎵 Bpm: 86
🎵 Tono: C# Menor

🔥 Este beat es FREE para uso NO monetizado, sin fines de lucro.  Si deseas subir a las diferentes
plataformas digitales, debes comprar una licencia, si no, la cancion será bajada.  CRÉDITOS EN
TÍTULO/DESCRIPCIÓN (Prod. By Alfr3d ) 🔥

Alfr3dmusic
☑ Facebook : https://web.archive.org/web/20220815154341/https://www.facebook.com/alfr3d
🎵 : https://web.archive.org/web/20220815154341/https://www.beatstars.com/alfr3dmusic
🎵 ▶ Whatsapp  +447915401871

🛒 Compra 2, lleva 1 más GRATIS 🎁

All Rights Reserved By Alfr3d Beats ©
----------------------

☰  ▶ YouTube                                                                    🔍  🎤        ⋮  [ 👤 SIGN IN ]

Instrumental, Pista de Reggaeton 2020, Pista de Reggaeton 2021, Dancehall, Dancehall 2020, Dancehall, Dancehall 2021, Dancehall Instrumental, Pista de Dancehall, Dancehall Beat, Dancehall Type Beat, Instrumental de Dancehall, Perreo, Instrumental de Perreo, Perreo Type Beat, Instrumental, Base de Trap, Trapeton, Pista de Trap, Trap estilo Myke Towers, Trap type beat, Trap latino, Trap beat type, Pista de Trap 2021, Trap 2020, Trap 2021, Myke Towers y Jhay Cortez, Myke Towers Beat, Feid Type Beat, Feid beat type, Instrumental estiolo Feid, Ferxxo, Myke Towers Type Beat, Timeless, Jhay Cortez pista, Jhay Cortez Instrumental, Myke Towers Instrumental, Trapeton Type beat, Instrumental de Trap, Beat de Trap, Beats gratis, Instrumentales gratis, Intrumental gratis, Base de Reggaeton Perreo, J balvin Type Beat, Bad Bunny Type Beat, Anuel AA Type Beat, Arcangel AA Type Beat, Jhay Cortez Type Beat, Farruko Type Beat, Ozuna Type Beat, Guaynaa Type Beat, Lunay Type Beat, Bryant Myers Type Beat, Darell Type Beat, Miky Woodz Type Beat, Jowell y Randy Type Beat, Daddy Yankee Type Beat, Sebastian Yatra Instrumental, blessd type beat, blestilo blessd, Sebastian Yatra Type Beat, Rauw Alejandro Type Beat, Rosalia Type Beat, Paloma Mami Type Beat Maluma Type Beat, Myke Towers Type Beat, Eladio Carrion Type Beat, Zion y Lennox Type Beat, Karol G Type Beat, Ñengo Flow Type Beat, Ozuna, Manuel Turizo, Nicky Jam, Jhay Cortez, Myke Towers Instrumental, Rauw Alejandro Instrumental, Bad Bunny Instrumental, Karol G Instrumental, J Balvin Instrumental, Jhay Cortez Instrumental, Tainy Instrumental, Ozuna Instrumental, Zion y Lennox Instrumental, Ñengo Flow Instrumental, Farruko Instrumental, Anuel Instrumental, Bad Bunny Instrumental, Sech Instrumental, Lyanno, Dimelo Flow, Rosalia Instrumental, Nio Garcia Instrumental, Maluma Instrumental, Shakira Instrumental, Perreo Instrumental, Lunay Type Beat, Lunay Instrumental, Wisin Instrumental, Chencho Corleone Instrumental, Chencho Corleone, Chencho Corleone Type Beat Yandel, Wisin, Zion y Lennox, Bryant

SKIP NAVIGATION   Carrion, Rauw Alejandro, Lyanno, Rosalia, Paloma Mami, Karol G, Natti Nattasha, ago, Luna, Guaynaa, Nio Gracia, De la Gheto, Myke Towers, Ñengo Flow, Alex Rose, Jon Z, Luigi 21 Plus, Cosculluela, Viva el Perreo, Puerto Rico, Afrobeat Instrumental, Trapeton, Instrumental 2021, Te bote Instrumental, Instrumental de uso libre, Instrumentales Gratis, Beat de Trapeton, Instrumental de Trapeton, instrumental de Reggaeton Perro, Instrumental de Reggaeton 2020, Instrumental de Reggaeton 2021, Free Dancehall, Afrobeat, Afrobeat Instrumental, Afrobe

SHOW LESS



**Calculate Your Ecommerce ROI**

How much could your business save and grow by partnering with Adyen?

Ad  adyen.com

VISIT SITE ↗



**Escapate 🏃 | Feid, Justin Quiles Reggaeton Type Beat [Beat Comercial]**
Robotizer Beats
56K views • 9 months ago



**olden Art**
Lucas Torres ♪
9.6K views • 1 month ago



**sapientdream - past lives (lyrics)**
sapientdream ♪
26M views • 2 years ago



**City of Gamers - Chill/Gaming/Studying Lofi Hip Hop Mix - (1 hour)**
Deepspot
4.3M views • 1 year ago

**MIX REGGAETON 2022 – LO MAS NUEVO 2022 – LO MAS SONA**
LATIN MUSIC
5.6K views • 1 month ago



**Old School Instrumental Hip Hop Session**
1 Channel
55K views • 2 years ago

**Cila Melodia**

 



**BASE DE TRAP MIX - Pista de Trap USO LIBRE| Rap/Trap Instrumental Freestyle Beat 2022**
Dope Beats
31K views • 1 month ago



**StreetArt - Beat Tape vol.3 Oldschool, BoomBap (Full Album)**
StreetArt
1.7M views • 1 year ago



**Hip Hop/Trap Instrumental Beats Mix 2021 🎧 Trap Type Beat 2021**
Gangs Music
586K views • 11 months ago

**Pista de Perreo - Uso Libre | Brray type beat | Instrumental reggaeton | sin copyrigths**
Alfr3d Beats 🎵
24K views • 6 months ago

3:38

**Mix - Reggaeton Beat - Carol G x Feid type beat | Instrumental de reggaeton uso libre sin copyrigths**
Type Beat, the bootleg boy, Burbank, and more

SKIP NAVIGATION



**1 Hour Old School Hip Hop Classic Instrumentals (NO ADS) | realluis089**
realluis089🎵
415K views • 1 year ago

**(FREE) Feid x Mora x Bad Bunny - "QUERERTE" 🐺 | Reggaeton Type Beat 2022 🎼**
Tennesy Beats
20K views • 1 month ago

3:59



**FREE! Pista de Reggaeton Uso Libre "Te Pienso"| Instrumental Reggaeton Romántico Beat | 2022**
Drilero RD 🎵
25K views • 6 months ago



**1 Hour Of Beats [FREE] kendrick lamar, j cole, jid, kenny mason, smino type beats 2021**
EPIK THE DAWN ✓
770K views • 1 year ago

**\*2021\* Hip Hop Beats to Study, Vibe and Chill to (Drake, Travis, Polo G, Juice Wrld, Kanye)**
Andreas Jankovic
581K views • 1 year ago



**[VENDIDA] Motel 🏩 | Type Beat, Chencho Corleone, Chris Jedi, | Instrumental Reggaeton 2022**
Junkies On The Beat 🎵
25K views • 2 months ago

**"Tormenta" 🌧 | Instrumental Reggaeton Perreo Malianteo | Arcangel X Kevvo Type Beat**
Blue Mask Beats
25K views • 7 months ago

**🌴 FREE PISTA DE AFRO B USO LIBRE (NENAS) AFROBEAT/DANCEHALL/BEAT/INSTRUMENTAL 2022**
DJ JHOON EN EL BEATS
1.5K views • 5 months ago

5:15



**Adu Tinju Dua Pemuda Kampung**
Deni Creator
408K views • 1 month ago

**EXHIBIT - P-0010**

**WITHOUT PREJUDICE – SETTLEMENT NEGOTIATION**

**Jack Hernández / DBA Ocean Vibes Music Publishing**
16133 E Lancashire E
Loxahatchee, Florida 33470
Email: jackdariohernandez@gmail.com
Phone: 561-512-7480

**Dick Alfredo Caballero Rodríguez a/k/a Alfr3d Beats**
El Salvador, La Libertad
Ciudad Marsella Q5, D31
Email: alfr3dmusic@hotmail.com

**November 12, 2025**

**Via Email and Certified Mail**

**James Sammataro, Esq.**
**Brendan Everman, Esq.**
Pryor Cashman LLP
255 Alhambra Circle, 8th Floor
Miami, FL 33134
Tel.: (786) 582-3010
Email: jsammataro@pryorcashman.com, beverman@pryorcashman.com

**Re: Settlement Proposal Prior to Discovery**

**Dear James Sammataro, Esq. and Brendan Everman, Esq.,**

Please be advised that **Jack Hernández / DBA Ocean Vibes Music Publishing** and **Dick Alfredo Caballero Rodríguez a/k/a Alfr3d Beats** are currently representing ourselves **pro se** while we seek new legal representation. We are writing to formally present an option to reach a possible settlement before this matter proceeds into the discovery phase in the matter of **HERNANDEZ et al v. UMG RECORDINGS, Inc et al**.

**Background of Case:**

- **Plaintiffs:** Dick Alfredo Caballero Rodríguez a/k/a Alfr3d Beats, Jack D. Hernández doing business as Ocean Vibes Music Publishing
- **Defendants:** Carolina Giraldo Navarro, Edwin Vasquez Vega, Marvin Hawkins Rodriguez, Julio Manuel Gonzalez Tavarez, UMG Recordings, Inc. doing business as Universal Music Group and Universal Music Latino, Karol G, Maldy, DJ Maff, Lenny Taverez, and Justin Quiles
- **Case Number:** 9:2025cv80338
- **Filed:** March 12, 2025

This proposal is based on the fact that the evidence presented included a **video of an alleged WhatsApp conversation between DJ Maff and Ovy on the Drums**, as well as **music production files**, both of which were furnished by DJ Maff on behalf of your clients—DJ Maff, Karol G, and Universal Music Group—to our prior counsel. These materials **fail to clearly establish an earlier date of creation**. Specifically, the video and production files do not verify or clarify any authentic earlier authorship date and therefore cannot substantiate your clients' claims of prior ownership.

Records will be subpoenaed through WhatsApp's legal compliance channels, as well as relevant phone service providers, during the discovery phase to determine whether such a conversation actually occurred and whether it was truthfully represented. The alleged exchange, which DJ Maff claims involved another producer known as Ovy on the Drums—of which he apparently shared an identical beat to the work produced by Alfr3d Beats titled *"Punto G"*—remains unverified and **inconsistently matches the multiple versions DJ Maff, Karol G, and Universal Music Group have publicly referenced in media interviews regarding how the song was created.**

We **disbelieve the materials to be valid proof of prior creation**; even so, they still do not correspond with the copyright registration filed by Universal Music Group and Karol G on or about **August 22 of the year the song was created**. That registration contains factual inaccuracies and fails to properly disclose the work as being based on a prior work.

Additionally, we note that **knowingly including false or misleading information in a U.S. copyright registration is a federal offense under 17 U.S.C. § 506(e)** and may constitute a violation subject to fines. False statements regarding authorship, date of creation, or omission of prior works can also render a copyright registration **invalid or unenforceable**, severely limiting or preventing enforcement of any alleged infringement claims. Courts have consistently held that misrepresentations on a registration form may prevent the holder from claiming statutory damages or attorney fees and can undermine credibility in civil proceedings. **Given these factors, any inaccuracies in the registration filed by Karol G and Universal Music Group could significantly weaken their position.**

Accordingly, the copyright registration may constitute a violation under 17 U.S.C. § 506(e) and could be rendered invalid or null due to the inclusion of false or misleading material statements.

In good faith and with the intention of avoiding prolonged litigation in the discovery phase, we are open to discussing a reasonable settlement resolution. Depending on the scope of the relief and mutual releases, we would consider a settlement of **$888,000 plus 12% of all *future* royalties from the song titled *Gatubela* for the life of the copyright and a mutual dismissal**, with each party—DJ Maff, Karol G, Universal Music Group, and ourselves—bearing its own legal costs.

It is our understanding that the song *"Gatubela"* by Karol G was created and published **after *"Punto G"* by Alfr3d Beats was first published and made publicly available online**. This work corresponds to a song that has **won awards and been part of a Grammy-winning**

**album**, and any misattribution or misuse of this work is **legally and morally wrong**. **It is morally wrong to misappropriate another composer's work, art form, and creation, as such actions can cause significant harm—financially, emotionally, and professionally—to the original creator.**

Additionally, **according to messages provided to us, DJ Maff directly admitted responsibility to Alfr3d Beats via Instagram**, explicitly stating and understood once translated into the English language: **"don't tell anyone."** Despite this private admission, DJ Maff and Karol G later publicly presented the matter in the media as a joke or sarcasm, framing it as a humorous attempt rather than taking responsibility. This public portrayal raises concerns about abuse of legal protections and further demonstrates disregard for the rights of the original creator.

Such actions are likely to cause a **public outcry**, as songwriters and musicians worldwide may **question and discredit the music industry and the Recording Academy**.

Given these discrepancies, we believe it would be in the best interests of all parties to discuss a potential settlement prior to the commencement of discovery and before we engage new legal representation. We are open to sitting at a table, meeting in person, and negotiating a friendly settlement. We could even come together, if a settlement were reached, to tell the public that we have decided to shake hands and move forward in good faith. We would also be open to signing a nondisclosure agreement. Doing so would conserve time, costs, and resources for all sides and would give the public positive news. **I would like to close by noting that, while we await a response, and reflecting on the facts of this matter, as the Bible says, "the truth will set you free," and we firmly believe that justice will ultimately prevail.**

Please advise if your clients are open to such discussions on or before November 24, 2025. We can even meet in person on this date: **November 24, 2025.**

Respectfully,

**Jack Hernández / DBA Ocean Vibes Music Publishing**
Pro Se Defendant

**Dick Alfredo Caballero Rodríguez a/k/a Alfr3d Beats**
Pro Se Defendant

**EXHIBIT - P-0011**

 Gmail

Jack Hernandez <jackdariohernandez@gmail.com>

# WITHOUT PREJUDICE - Settlement Proposal – Hernandez et al. v. UMG Recordings, Inc. et al (Case No. 9:2025-cv-80338) INC

**Jack Hernandez** <jackdariohernandez@gmail.com>                    Wed, Nov 12, 2025 at 12:43 PM
To: jsammataro@pryorcashman.com, beverman@pryorcashman.com

**Dear Mr. Sammataro and Mr. Everman,**

Attached please find a formal settlement proposal letter from myself, Jack Hernández / DBA Ocean Vibes Music Publishing, and co-plaintiff Dick Alfredo Caballero Rodríguez (a/k/a Alfr3d Beats) regarding *Hernandez et al. v. UMG Recordings, Inc. et al* (Case No. 9:2025-cv-80338).

We are currently representing ourselves **pro se** while we seek new legal counsel. The attached letter outlines our willingness to engage in good faith discussions toward a possible resolution before the discovery phase begins.

Please confirm receipt of this message and attachment at your earliest convenience.
We look forward to hearing from you.

Kind regards,
**Jack Hernández**
Ocean Vibes Music Publishing
16133 E Lancashire E
Loxahatchee, Florida 33470
✉ jackdariohernandez@gmail.com
📞 (561) 512-7480



📄 **WITHOUTPREJUDICE_HERNANDEZvsUMGRECORDINGS.pdf**
124K

**EXHIBIT -  P-0012**

9:34  ..Il LTE

< **Publicar**

**_eladiocarrion** ✪ MAKIAAAAAA 🔥
1sem  📌 Fijado  457 Me gusta  Responder  ♡ Enviar

Ver 2 respuestas más

**_eladiocarrion** ✪ Feliz por ti G 🔥
1sem  📌 Fijado  348 Me gusta  Responder  ♡ Enviar

Ver 1 respuesta más

**alfr3dmusic** Rompiendo con melodias ajenas
16min  Responder  Enviar  Ver traducción  ♡

**djmaff** @alfr3dmusic no le digas a nadie 😂
2min  Responder  Enviar  ♡

**ovyonthedrums** ✪ 🔥 🔥 🔥 🔥
1sem  239 Me gusta  Responder  Enviar  ♡

Ver una respuesta anterior

**djmaff** @ovyonthedrums gracias por estar mi pai 🖤
6d  86 Me gusta  Responder  Enviar  ♡

Ver 3 respuestas más

🖤  🙌  🔥  👏  🥺  😍  😮  😂

Agrega un comentario como...

12:14

**Dj Maff**
djmaff



**Dj Maff**

djmaff · Instagram

28 mil seguidores · 90 publicaciones

No se siguen mutuamente en Instagram

Ambos siguen a totoyelfrio y 32 más

**Ver perfil**

2 SEPT 2022

Saludos 

5 SEPT 2022

G mis respetos, ten en cuenta que
la música es la misma por
siempre, los mismos círculos que
se combinan en diferentes
variaciones etc, coincidencias
pueden suceder, te dejo claro la
mía la hice hace más de 9 meses

▶ Foto

+  Mensaje...

**EXHIBIT – P-0013**

Ethan Lustig, Ph.D.

July 2, 2024

## PRELIMINARY MUSICOLOGICAL ASSESSMENT:

## "PUNTO G" BY ALFR3D BEATS AND

## "GATÚBELA" BY KAROL G & MALDY

1. I have been retained to assess the musical similarity between Alfr3d Beats' "PUNTO G" (2022)[1] and Karol G and Maldy's "Gatúbela" (2022).[2]

2. In my professional expert opinion, both the main synthesizer riff and vocal chorus melody of "Gatúbela" is extremely similar to the synth melody of "PUNTO G". I believe that both elements are a direct interpolation of Alfr3d Beats' composition, and would not have occurred by chance alone (nor can they be explained away by prior art). The similarity is extensive in multiple domains, as I will elaborate below.

3. "PUNTO G" is a reggaeton instrumental ("beat") at a tempo of 86 beats per minute and in the key of C# minor. "Gatúbela" is a reggaeton song at a tempo of 95 beats per minute and in the key of B minor.

4. In "PUNTO G", the main compositional and melodic idea of the piece is a 4-bar phrase (henceforth referred to as "Phrase A") presented by a synthesizer. Phrase A first occurs at 0:02-0:09 and then subsequently throughout much of the composition (0:35-

---

[1] Released on July 12, 2022 [July 11 on Beatstars]:
https://www.youtube.com/watch?v=706OnufqgnU. Timepoints in this document refer to those of the link.
[2] Released on August 26, 2022 [August 25 for the YouTube music video]:
https://open.spotify.com/album/5FdSjtKiymlHrdbXDyXcxA. Timepoints in this document refer to those of the link.

LUSTIG PRELIMINARY ASSESSMENT - ALFR3D BEATS v. KAROL G        2

0:54, 1:31-2:01, 2:16-2:23, 2:38-3:08), constituting approximately 46% of the composition's 3:23 runtime.[3]

    5. Here is Phrase A from "PUNTO G" in music notation[4]:



    6. "Gatúbela" presents a synthesizer riff that first occurs at 0:11-0:15 and is heavily modeled on Phrase A. The following figure compares Phrase A (top) with the "Gatúbela" synth riff (bottom). Red boxes show identical pitches (73% pitch similarity):



    7. Even stronger than the pitch similarity between Phrase A and the "Gatúbela" synth riff, is their rhythmic similarity, which reaches 77%. Red boxes show identical rhythms, with Phrase A on top and the "Gatúbela" synth on the bottom:



---

[3] Though appearing in various octaves (i.e. higher or lower) throughout the piece, the fundamental pitches and rhythms remain unchanged. The passages are notated throughout this document in the standard and readable middle of the treble clef.
[4] As is musicological standard practice, all examples in this document have been transposed to a common key (A minor) for readability and ease of comparison.

8. The synthesizer riff in "Gatúbela" appears at 0:11-0:51, 1:01-1:09, 1:21-1:31, 1:54-2:05, 2:10-2:14, 2:20-2:44, and 2:54-3:10. It is present in approximately 53% of the record's 3:28 runtime.[5]

9. Even the synthesizer timbre between the two songs is extremely similar, characterized by a tinny, thin timbre with a fast attack, somewhere in between a guitar synth and a piano synth.

10. In addition to the pitch, rhythmic, and timbral similarities between the two songs' synths, the chorus vocal melody of "Gatúbela" (first appearing at 0:11-0:30) is also heavily modeled on Phrase A from "PUNTO G". The following figure compares Phrase A (top) with the chorus of "Gatúbela" (bottom). Red boxes (and one circle) show identical pitches[6]:



The pitch similarity percentage here is 26%.

11. The following figure compares Phrase A (top) with the chorus of "Gatúbela" (bottom), this time with red boxes showing identical rhythms:

---

[5] Indeed, this runtime estimation is generous given that the final 3 seconds of the song are simply a sustained reverb to silence.
[6] Ignoring octave in the case of bars 6-7 of the figure.



There is a rhythmic similarity percentage of 64%.

12. The chorus material in "Gatúbela" appears at 0:11-0:30, 0:41-0:58, 1:32-1:49, and 2:24-2:44. Taken together, the chorus constitutes approximately 36% the song's runtime, and constitutes the vast majority of the melodic vocal material in the song, given that the verses are spoken/chanted, not sung.

13. In terms of "prior art" research: upon investigation, I have not found anything resembling such a distinctive configuration of pitches and rhythms as those under consideration here. That is, the pattern in Phrase A is unique and cannot be explained away as simply a musical building block.

14. In short, Phrase A in "PUNTO G", which plays throughout 46% of the beat, is highly unique and shares strong similarities of pitch, rhythm, and timbre with the synth of "Gatúbela" (which repeats for 53% of the song), as well as strong similarities of pitch and rhythm with the vocal chorus melody of "Gatúbela" (repeated for 36% of the song). The specificity of Phrase A as well as the strong similarities between it and the "Gatúbela" synth and chorus vocal melody cannot be explained away by prior art.

Sincerely,

Ethan Lustig, Ph.D.

**EXHIBIT - P-0014**

Registration Number

**PA 2-383-038**

**Effective Date of Registration:**
October 20, 2022
**Registration Decision Date:**
December 05, 2022

## Title

**Title of Work:** GATUBELA, Artist: KAROL G / Maldy, USUV72204637 (eSingle Video)

## Completion/Publication

**Year of Completion:** 2022
**Date of 1st Publication:** August 25, 2022
**Nation of 1st Publication:** United States

## Author

- **Author:** UMG Recordings, Inc.
  **Author Created:** entire motion picture
  **Work made for hire:** Yes
  **Domiciled in:** United States

## Copyright Claimant

**Copyright Claimant:** UMG Recordings, Inc.
c/o Universal Music Latino, A Div. of UMG Recordings, Inc., 2220 Colorado
Ave., Santa Monica, CA, 90404, United States

## Limitation of  copyright claim

**Material excluded from this claim:** Sound Recording: "GATÚBELA" (00602448478344)

**New material included in claim:** Motion Picture

## Rights and Permissions

**Organization Name:** Universal Music Group

## Certification

**Name:** Tegan Kossowicz

**Date**:   October 20, 2022
**Applicant's Tracking Number**:   00602448478436

**EXHIBIT – P-0015**

Registration Number

# SR 947-602

**Effective Date of Registration:**
December 05, 2022
**Registration Decision Date:**
January 05, 2023

## Title

**Title of Work:**   GATUBELA, Artist: KAROL G / Maldy, USUM72216070 (eRelease)

## Completion/Publication

**Year of Completion:**   2022
**Date of 1st Publication:**   August 25, 2022
**Nation of 1st Publication:**   United States

## Author

- **Author:**   UMG Recordings, Inc.
  **Author Created:**   sound recording
  **Work made for hire:**   Yes
  **Domiciled in:**   United States

## Copyright Claimant

**Copyright Claimant:**   UMG Recordings, Inc.
c/o Universal Music Latino, A Div. of UMG Recordings, Inc., 2220 Colorado
Ave., Santa Monica, CA, 90404, United States

## Rights and Permissions

**Organization Name:**   Universal Music Group

## Certification

**Name:**   Tegan Kossowicz
**Date:**   December 05, 2022
**Applicant's Tracking Number:**   00602448478344

Page 1 of 2

**EXHIBIT - P-0016**

Registration Number

**PA 2-423-308**

**Effective Date of Registration:**
July 11, 2023
**Registration Decision Date:**
August 03, 2023

## Title

**Title of Work:** Gatubela

**Title of Larger Work:** MANANA SERA BONITO by Karol G
**Date on Copies:** 02/24/2023

## Completion/Publication

**Year of Completion:** 2023
**Date of 1st Publication:** February 24, 2023
**Nation of 1st Publication:** United States

## Author

- **Author:** Julio Manuel Gonzalez Tavarez
  **Author Created:** music, lyrics
  **Work made for hire:** No
  **Citizen of:** United States
  **Domiciled in:** United States

- **Author:** Carolina Giraldo Navarro
  **Author Created:** music, lyrics
  **Work made for hire:** No
  **Citizen of:** United States
  **Domiciled in:** United States

- **Author:** Justin Rafael Quiles Rivera
  **Author Created:** music, lyrics
  **Work made for hire:** No
  **Citizen of:** United States
  **Domiciled in:** United States

- **Author:** Marvin Hawkins Rodriguez
  **Author Created:** music, lyrics
  **Work made for hire:** No
  **Citizen of:** United States

**Domiciled in:** United States

- **Author:** Edwin F Vazquez Vega
  **Author Created:** music, lyrics
  **Work made for hire:** No
  **Citizen of:** United States
  **Domiciled in:** United States

## Copyright Claimant

**Copyright Claimant:** Julio Manuel Gonzalez Tavarez
street Not Known, city Not Known
**Transfer statement:** By written agreement

**Copyright Claimant:** Marvin Rodriguez
c/o WC Music Corp., 777 S Santa Fe Ave, Los Angeles, CA, 90021, United States
**Transfer statement:** By written agreement

**Copyright Claimant:** Carolina Giraldo Navarro
street Not Known, city Not Known
**Transfer statement:** By written agreement

**Copyright Claimant:** Justin Rafael Quiles Rivera
street Not Known, city Not Known
**Transfer statement:** By written agreement

**Copyright Claimant:** Edwin F Vazquez Vega
street Not Known, city Not Known
**Transfer statement:** By written agreement

## Rights and Permissions

**Organization Name:** Warner Chappell Music
**Name:** Jeremy Kern
**Email:** jeremy.kern@warnerchappell.com
**Telephone:** (310)441-6887
**Address:** 777 S Santa Fe Ave
Copyright Department
Los Angeles, CA 90021 United States

## Certification

**Name:** Ysabel Rosas
**Date:** July 11, 2023
**Applicant's Tracking Number:** WW 015739031 00

**EXHIBIT – P-0017**

**Registration Number**

# SR 972-945

**Effective Date of Registration:**
May 01, 2023
**Registration Decision Date:**
September 14, 2023

## Title ───────────────────────────

**Title of Work:** MANANA SERA BONITO, Artist: KAROL G, 00602455209108 (compact disc)

**Content Title:** MIENTRAS ME CURO DEL CORA; X SI VOLVEMOS (by KAROL / Romeo Santos); PERO TU; BESTIES; GUCCI LOS PANOS; TQG; TUS GAFITAS; OJOS FERRARI; MERCURIO; GATUBELA (by KAROL G / Maldy); KARMIKA; PROVENZA; CAROLINA; DANAMOS LA AMISTAD; AMARGURA; CAIRO (by KAROL G / Ovy On The Drums); MANANA SERA BONITO

## Completion/Publication ───────────────

**Year of Completion:** 2023
**Date of 1st Publication:** February 24, 2023
**Nation of 1st Publication:** United States

## Author ───────────────────────────

- **Author:** UMG Recordings, Inc.
**Author Created:** Most Sound Recordings / Photographs / Artwork
**Work made for hire:** Yes
**Domiciled in:** United States

## Copyright Claimant ─────────────────

**Copyright Claimant:** UMG Recordings, Inc.
c/o Universal Music Latino, A Div. of UMG Recordings, Inc., 2220 Colorado Ave., Santa Monica, CA, 90404, United States

## Limitation of copyright claim ───────────

**Material excluded from this claim:** Four Sound Recordings: "GATUBELA" (by KAROL G / Maldy) (SR 947-602); "PROVENZA" (SR 930-870); "X SI VOLVEMOS" (by KAROL / Romeo Santos) (00602455225757); "CAIRO" (by KAROL G / Ovy On The Drums) (00602448878496)

**New material included in claim:**   All Other Sound Recordings / Photographs / Artwork

## Rights and Permissions _____

**Organization Name:**   Universal Music Group

## Certification _____

**Name:**   Tegan Kossowicz
**Date:**   April 24, 2023
**Applicant's Tracking Number:**   00602455209108

**Copyright Office notes:**   Basis for Registration: Unit of publication containing collective work(s) and other component element(s).

**EXHIBIT – P-0018**

**Registration Number**

# PA 2-511-963

**Effective Date of Registration:**
January 03, 2025
**Registration Decision Date:**
January 30, 2025

## Title _____

          **Title of Work:**   Gatubela

     **Title of Larger Work:**   Manana Sera Bonito

## Completion/Publication _____

        **Year of Completion:**   2022
     **Date of 1st Publication:**   August 25, 2022
    **Nation of 1st Publication:**   United States

## Author _____

-        **Author:**   Edwin Vazquez Vega
     **Author Created:**   music, lyrics
  **Work made for hire:**   No
        **Citizen of:**   not known
      **Domiciled in:**   not known

-        **Author:**   Carolina Giraldo
       **Pseudonym:**   Karol G
     **Author Created:**   music, lyrics
  **Work made for hire:**   No
        **Citizen of:**   Colombia
      **Domiciled in:**   Colombia
    **Pseudonymous:**   Yes

-        **Author:**   Justin Rafael Quiles
     **Author Created:**   music, lyrics
  **Work made for hire:**   No
        **Citizen of:**   United States
      **Domiciled in:**   United States

-        **Author:**   Marvin Hawkins Rodriguez
     **Author Created:**   music, lyrics
  **Work made for hire:**   No

| | |
|---|---|
| **Citizen of:** | not known |
| **Domiciled in:** | not known |

- **Author:** Julio Manuel Gonzalez Tavarez
  | | |
  |---|---|
  | **Author Created:** | music, lyrics |
  | **Work made for hire:** | No |
  | **Citizen of:** | not known |
  | **Domiciled in:** | not known |

## Copyright Claimant

| | |
|---|---|
| **Copyright Claimant:** | Edwin Vazquez Vega<br>N/A, N/A |
| **Copyright Claimant:** | Karol G Music Production Publishing<br>c/o Girlpower Publishing, LLC, N/A |
| **Transfer statement:** | By written agreement |
| **Copyright Claimant:** | Girlpower Publishing, LLC<br>c/o Kobalt Music Publishing America Inc., 2 Gansevoort Street, Suite 803, New York, NY, 10014, United States |
| **Transfer statement:** | By written agreement |
| **Copyright Claimant:** | La Promesa Publishing<br>c/o La Promesa Publishing, LLC, N/A |
| **Transfer statement:** | By written agreement |
| **Copyright Claimant:** | Marvin Hawkins Rodriguez<br>N/A, N/A |
| **Copyright Claimant:** | La Promesa Publishing, LLC<br>c/o Kobalt Music Publishing America Inc., 2 Gansevoort Street, Suite 803, New York, NY, 10014, United States |
| **Transfer statement:** | By written agreement |
| **Copyright Claimant:** | Julio Manuel Gonzalez Tavarez<br>N/A, N/A |

## Certification

| | |
|---|---|
| **Name:** | Jonathan Cheung |
| **Date:** | January 03, 2025 |

**EXHIBIT – P-0020**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

### No.:9:25-cv-80338-DIMITROULEAS/REINHART

JACK D. HERNANDEZ d/b/a OCEAN VIBES
MUSIC PUBLISHING, and DICK ALFREDO
CABALLERO RODRIGUEZ a/k/a ALFR3D BEATS,

    Plaintiffs,  (Pro Se)

v.

UMG RECORDINGS, INC. d/b/a UNIVERSAL
MUSIC GROUP d/b/a UNIVERSAL MUSIC LATINO,
CAROLINA GIRALDO NAVARRO a/k/a KAROL G,
EDWIN VASQUEZ VEGA a/k/a MALDY,
MARVIN HAWKINS RODRIGUEZ a/k/a DJ MAFF,
JULIO MANUEL GONZALEZ TAVAREZ a/k/a
LENNY TAVÁREZ, and JUSTIN QUILES,

    Defendants.

_____/

### **PLAINTIFFS' FIRST SET OF INTERROGATORIES**

    Pursuant to Federal Rule of Civil Procedure 33, Plaintiffs Jack D. Hernandez d/b/a Ocean

Vibes Music Publishing and Dick Alfredo Caballero Rodriguez a/k/a Alfr3d Beats request that

defendants UMG Recordings, Inc., Carolina Giraldo Navarro p/k/a Karol G, Edwin Vasquez

Vega p/k/a Maldy, Marvin Hawkins Rodriguez p/k/a DJ Maff, Julio Manuel Gonzalez Tavarez

p/k/a Lenny Tavarez, and Justin Quiles answer, in writing and under oath, these interrogatories

within 30 days.

## **DEFINITIONS**

1. "UMG" shall refer to defendant UMG Recordings, Inc. and any agents, attorneys, employees, consultants, producers, engineers, representatives, or any other persons purporting to act on its behalf.

2. "Karol G" shall refer to defendant Carolina Giraldo Navarro p/k/a Karol G and any of her agents, attorneys, employees, consultants, producers, engineers, representatives, or any other persons purporting to act on her behalf.

3. "DJ Maff" shall refer to defendant Marvin Hawkins Rodriguez p/k/a DJ Maff and any of his agents, attorneys, employees, consultants, producers, engineers, representatives, or any other persons purporting to act on his behalf.

4. "Maldy" shall refer to defendant Edwin Vasquez Vega p/k/a Maldy and any of his agents, attorneys, employees, consultants, producers, engineers, representatives, or any other persons purporting to act on his behalf.

5. "Lenny Tavarez" shall refer to defendant Julio Manuel Gonzalez Tavarez p/k/a Lenny Tavarez and any of his agents, attorneys, employees, consultants, producers, engineers, representatives, or any other persons purporting to act on his behalf.

6. "Justin Quiles" shall refer to defendant Justin Quiles and any of his agents, attorneys, employees, consultants, producers, engineers, representatives, or any other persons purporting to act on his behalf.

7. "Gatúbela" shall refer to the composition and sound recording released by Karol G and Maldy referenced throughout the Complaint.

8. "Work" shall refer to the composition and sound recording created by Plaintiff Alfr3d entitled "Punto G," referenced throughout the Complaint.

9. "Hernandez" refers to plaintiff Jack D. Hernandez, individually and d/b/a Ocean Vibes Music Publishing, and any of his agents, representatives, employees, or persons acting on his behalf.

10. "Alfr3d" refers to plaintiff Dick Alfredo Caballero Rodriguez, a/k/a ALFR3D Beats, and any of his agents, representatives, employees, or persons acting on his behalf.

11. "Plaintiffs" refers collectively to Jack Hernandez d/b/a Ocean Vibes Music Publishing and Alfr3d Beats.

12. "Ovy on the Drums" refers to Daniel Echavarría Oviedo a/k/a Ovy on the Drums, a Colombian producer and songwriter, and includes any of his managers, engineers, representatives, collaborators, attorneys, assistants, or persons acting on his behalf in any capacity.

13. "Communication(s)" means any statement, disclosure, transmittal of information, or exchange of information in any format, including but not limited to email, text messages, WhatsApp messages, Instagram messages, letters, notes, audio messages, electronic messages, telephone calls, in-person discussions, or handwritten notes.

14. "Document" means any written, printed, typed, recorded, graphic, electronic, or digital matter of any kind, including all drafts and non-identical copies, whether stored physically or electronically, including but not limited to emails, contracts, business contracts, letters, agreements, invoices, notes, social-media files, screenshots, audio files,

DAW project files, logs, backups, external drives, metadata, any medium upon which information or intelligence can be recorded or retrieved, including without limitation, any written, graphic, or audio matter, or other means of preserving thought or expression, and all tangible things from which information can be processed or transcribed, including the originals and all non-identical copies, whether different from the original by reason of any notation made on such copy or otherwise, including but not limited to, correspondence, memoranda, notes, messages, letters, telegrams, teletypes, telefaxes, electronic mail entries, bulletins, inter-office or intra-office telephone calls, diaries, chronological data, minutes, books, reports, studies, summaries, pamphlets, printed matter, charts, ledgers, invoices, worksheets, receipts, returns, computer printouts, prospectuses, financial statements, schedules, affidavits, contracts, canceled checks, statements, transcripts, statistics, surveys, periodical articles, releases (any and all drafts, alterations, and modifications, changes, and amendments of any of the foregoing), graphic or audio records of representations of any kind, including, without limitation, electronic audio files in .mp3, .mp4, or any other format, microfilm, microfiche, photographs, charts, videotape, recordings, voice messages, motion pictures, mini-discs, floppy discs, memory sticks, USB drives, CD-ROM discs, DVDs, cassettes, tapes, records, discs, or mechanical or electronic recordings or representations of any kind. A draft or non-identical copy is a separate "document" within the meaning of this term. Computer generated or stored documents, including computer files or data, electronic mail, and information on a hard disk that has been erased but is retrievable constitutes documents within the meaning of this definition.

**Page 4**

15. "Person" means any natural person or any business, legal, musical, or governmental entity.

16. "Concerning" means relating to, referring to, describing, evidencing, supporting, contradicting, or pertaining to.

17. "Including" means including without limitation.

18. Each of the terms "each," "any," and "all" shall be construed inclusively to mean "each and any and all."

19. The connectives "and" and "or" shall be construed either conjunctively or disjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed outside of its scope.

20. The use of the singular includes the plural and vice versa.

21. The use of a pronoun of any gender shall be construed as including any gender.

22. "Complaint" shall refer to the Complaint filed in this case on November 20, 2024.

23. "BMI" refers to Broadcast Music, Inc. (BMI) is a performance rights organization in the United States.

24. "ASCAP" refers to the American Society of Composers, Authors and Publishers (ASCAP) and is a performance rights organization in the United States.

25. "SESAC" refers to the Society of European Stage Authors and Composers (SESAC) and is a for-profit performance-rights organization in the United States.

## **INTERROGATORIES**

**Interrogatory No. 1:**

Interrogatory No. 1: Identify all individuals involved in the writing, composition, arrangement, recording, or production of "Gatúbela" and describe the role each person played.

**Page 5**

**Response:**


**Interrogatory No. 1A**: List the musical elements in "Gatúbela"—including melodies, chord progressions, basslines, rhythms, percussion patterns, or synth lines—and identify the individual who created each element.

**Response:**


**Interrogatory No. 2:**

State the dates, times, and locations of all writing, recording, or production sessions related to "Gatúbela" and list all studios, facilities, or locations used to create any part of "Gatúbela".

**Response:**


**Interrogatory No. 3:**

Identify all studio assistants, recording engineers, producers, technicians, or other personnel who were involved in or present during the recording, production, or engineering of any part of the song "Gatúbela". For each individual identified, state their role, the specific sessions or tasks they participated in, and whether any studio logs, attendance records, session files, or digital time-stamped documentation exist indicating the dates and times of their involvement.

**Response:**

**Interrogatory No. 4:**

Describe in detail the process by which "Gatúbela" was created, including the sequence of musical elements added and by whom.

**Response:**

**Interrogatory No. 5:**

Identify all digital audio workstations (DAWs), including software version numbers and devices used, in the creation of "Gatúbela."

**Response:**

**Interrogatory No. 5A:** Identify all session files, stems, project files, audio exports, or drafts related to "Gatúbela," and state the date each was created, including any metadata indicating the creation or modification of musical elements.

**Response:**

**Interrogatory No. 6:**

Identify whether any party involved in the creation, promotion, or distribution of the song at issue has had knowledge, awareness, or notice that any portion of the work was created, composed, produced, or otherwise originated by one of the Plaintiffs. For each individual or entity identified, describe the nature of their knowledge, how and when they became aware of it, and any communications or documentation relating to that awareness.

**Response:**

**Interrogatory No. 7:**

State whether any musical element in "Gatúbela" was derived from, inspired by, based on, modeled after, or created with reference to any work not authored by defendants.

**Response:**

**Interrogatory No. 8:**

Identify and describe any and all copyright-infringement claims, lawsuits, or formal complaints in which any of the Defendants have been named as a party or an infringing party in a music copyright dispute within the past 10 years to the extent such matters relate to access, authorship, or originality.

**Response:**

**Interrogatory No. 8A:** For each claim, state the case name, jurisdiction, date filed, parties involved, the specific allegations made, and the current status or outcome of the matter

**Response:**

**Interrogatory No. 9:**

State whether any defendant created a musical element in "Gatúbela" using a preexisting melody, beat, sequence, or audio file created by any person other than the defendants.

**Response:**


**Interrogatory No. 9A** — Was ANY part created using Plaintiff's Alfr3d Beats "Work"?

**Response:**


**Interrogatory No. 9B** — Identify all third party loops, sample packs, presets, templates, or royalty-free materials used in "Gatúbela".

**Response:**


**Interrogatory No. 10:**

Identify all individuals or entities who claim authorship of "Gatúbela", including the percentage of ownership of each claim and the net earnings to date that each has earned such as music royalties from "Gatúbela" and which Performance Rights Organization such as ASCAP, BMI, and SESAC paid to each individually.

**Response:**


**Interrogatory No. 11:**

Identify all sources of revenue earned from "Gatúbela", by the Defendants or any entity acting on their behalf including streaming, publishing, performance royalties, licenses, and synchronization income since it was first published.

**Page 9**

**Response:**


**Interrogatory No. 11A:** State the total revenue generated by "Gatúbela" to date.

**Response:**


**Interrogatory No. 11B:** Identify the entity that maintains the accounting records since the day

Defendant's song "Gatúbela" was first published on August 22, 2022 according to a US

Copyright Office registration and up to present day December 1, 2025.

**Response:**


**Interrogatory No. 12:**

Identify and describe all communications between DJ Maff and ALFR3D Beats related to the use

of ALFR3D Beats' musical work, including any message containing the phrase "don't tell

anyone" and "smiley face emoticon." For each such communication, state the date, method of

communication, participants, and the intended meaning or purpose of the message as understood

by the sender.

**Response:**


**Interrogatory No. 13:**

State whether ownership or authorship of "Gatúbela" has ever been disputed, questioned,

corrected, or modified by any party, or the defendants themselves. State whether any defendant

has ever been informed, before the complaint was filed, that "Gatúbela" contained musical elements originating from Plaintiff's "Work".

**Response:**


**Interrogatory No. 14:**

Identify all documents or agreements relating to authorship, composition, production, or ownership of "Gatúbela" including the UMG Artist and Reportaire initial contract with dates of when the song creation process was financially agreed to commence.

**Response:**


**Interrogatory No. 15:**

Identify the individual known as "Ovy on the Drums," including his full legal name and professional role. State whether he contributed in any way to the creation of "Gatúbela," and if so, describe the nature of that contribution.

**Response:**


**Interrogatory No. 16:**

Identify all investigations, internal reviews, or evaluations conducted by defendants or their representatives concerning the originality of "Gatúbela" including musicologist reports.

**Response:**

**Interrogatory No. 17:**

Identify all interviews, public statements, social-media posts, or media comments by any defendant including Dj Maff, Karol G, and any of the other defendants regarding the creation of "Gatúbela", and explain any differences or inconsistencies among them.

**Response:**


**Interrogatory No. 18:**

State whether any communications, messages, files, audio materials, or digital content relating to the creation of "Gatúbela" are no longer available, were lost, or were deleted. If so, identify the type of material, the approximate date it became unavailable, and the reason for its unavailability to the best of your knowledge.

**Response:**


**Interrogatory No. 19:**

 Describe how DJ Maff became involved in the project, including who hired him, was it UMG or Karol G, or was anyone else involved in his hiring for contractual work to create "Gatúbela." and the date of such as to when he was contacted initially, and what materials he received including the dates of such.

**Response:**

**Interrogatory No. 20:**

Identify any individuals, whether employees or contractors, who were involved in preparing or reviewing any public statements made by any defendant about the creation of "Gatúbela". For each person identified, state their role and the nature of their involvement.

**Response:**

**Interrogatory No. 21:**

Identify all public statements made by Karol G to Billboard magazine relating to the song "Gatúbela" copyright dispute. For each statement, identify the date, subject matter, and the individuals who prepared, reviewed, or authorized the statement.

**Response:**

**Interrogatory No. 22:**

 Identify all conversations among Defendants regarding ALFR3D Beats or "Punto G." claims of copyright violation.

**Response:**

**Interrogatory No. 23:**

Identify all individuals involved in any discussions among Defendants regarding Plaintiffs, "Punto G," or any allegation of copying or similarity, and state the date and nature of each such discussion.

**Response:**


**Interrogatory No. 24:**

Identify all individuals who contributed melodic ideas, chord progressions, rhythmic patterns, basslines, sound selections, or production concepts used in "Gatúbela." and if they were part of a Work for Hire Agreement and who hired them and on which date.

**Response:**


**Interrogatory No. 25:**

Identify all facts, documents, and communications that Defendants contend support their position regarding whether Plaintiffs suffered any damages as a result of the alleged infringement of Plaintiffs' musical work.

**Response:**

Dated: December 1, 2025

Respectfully submitted,

**JACK D. HERNANDEZ**
d/b/a Ocean Vibes Music Publishing
*Plaintiff, Pro Se*

By: */s/ Jack D. Hernandez*
**Jack D. Hernandez**
16133 E Lancashire
Loxahatchee, Florida 33470
Email: jackdariohernandez@gmail.com

**DICK ALFREDO CABALLERO**
**RODRIGUEZ**
a/k/a ALFR3D Beats
*Plaintiff, Pro Se*

By: */s/ Dick Alfredo Caballero*
DICK ALFREDO CABALLERO
Email: alfr3dmusic@hotmail.com

## CERTIFICATE OF SERVICE

The undersigned Pro Se Plaintiffs certify that their digital signatures included in this document

are intended to serve as valid signatures for all legal purposes under Federal Rule of Civil

Procedure 11 and the Local Rules of the Southern District of Florida. Plaintiffs further certify

that this Request for Production is made in good faith and that all signatures made electronically

are adopted as if personally signed. The undersigned Pro Se Plaintiffs HEREBY CERTIFY that

on this 1st day of December, 2025, a true and correct copy of the foregoing PLAINTIFFS'

FIRST SET OF INTERROGATORIES was mailed to all counsel of record for Defendants by

U.S. Mail to their respective business addresses and via electronic mail from email address

jackdariohernandez@gmail.com and sent to the following addresses:

**Page 15**

**Brendan Stuart Everman, Esq.**
beverman@pryorcashman.com
ksuarez@pryorcashman.com

**Genesis M. Perez Medina, Esq.**
genesisperezlaw@gmail.com

**James George Sammataro, Esq.**
jsammataro@pryorcashman.com
docketing@pryorcashman.com
ksuarez@pryorcashman.com

**Juan Carlos Ramos-Rosado, Esq.**
juan.ramos@dmralaw.com
a.suarez@dmrpr.com
nathalie.bovadilla@dmralaw.com

s/ *Jack D. Hernandez*
Jack Hernández d/b/a Ocean Vibes Music
Publishing

s/*Dick Alfredo Caballero Rodriguez*
Dick Alfredo Caballero Rodriguez
a/k/a Alfr3d Beats

**EXHIBIT – P-0021**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### No.: 9:25-cv-80338-Dimitrouleas/Reinhart

JACK D. HERNANDEZ d/b/a OCEAN VIBES
MUSIC PUBLISHING, and DICK ALFREDO
CABALLERO RODRIGUEZ a/k/a ALFR3D
BEATS,

               Plaintiffs,

v.

UMG RECORDINGS, INC. d/b/a UNIVERSAL
MUSIC GROUP d/b/a UNIVERSAL MUSIC
LATINO, CAROLINA GIRALDO NAVARRO
a/k/a KAROL G, EDWIN VASQUEZ VEGA a/k/a
MALDY, MARVIN HAWKINS RODRIGUEZ
a/k/a DJ MAFF, JULIO MANUEL GONZALEZ
TAVAREZ a/k/a LENNY TAVEREZ, and JUSTIN
QUILES,

               Defendants.

_____/

## DEFENDANT UMG RECORDINGS, INC.'S RESPONSES
## TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

Defendant UMG Recordings, Inc. ("UMG") responds to the First Set of Interrogatories

collectively propounded by *pro se* plaintiffs Dick Alfredo Caballero Rodriguez *a/k/a* Alfr3d Beats

("Alfr3d") and Jack D. Hernandez *d/b/a* Ocean Vibes Music Publishing ("Hernandez") (together,

"Plaintiffs") on UMG, as well as co-defendants Carolina Giraldo Navarro *p/k/a* "Karol G," and

Marvin Hawkins Rodriguez *p/k/a* "DJ Maff" (collectively, "Defendants") on December 1, 2025,

and subsequently modified by Plaintiffs on December 18, 2025 ("Interrogatories").[1]

_____

[1] On December 1, 2025, Plaintiffs propounded 32 interrogatories, including subparts. On December 17, 2025, UMG objected on the grounds that the Federal Rules of Civil Procedure permit only 25 interrogatories. *See* Fed. R. Civ. P. 33(a)(1); *Uglade v. Vivaria Florida LLC*, No. 19-cv-61098, 2019 WL 12520069, at *3 (S.D. Fla. Sept. 30, 2019). On December 18, 2025, Plaintiffs agreed to modify their interrogatories by withdrawing interrogatory numbers 8, 8A, 17,

**INTERROGATORY NO. 1**:

Identify all individuals involved in the writing, composition, arrangement, recording, or production of "Gatúbela" and describe the role each person played.

**RESPONSE TO INTERROGATORY NO. 1**:

UMG objects to this Request to the extent that it is misdirected to UMG, mischaracterizes the evidence, and misunderstands UMG's involvement with "Gatúbela."

Without waiver of this objection, UMG states that it was not involved in – and does not have any direct knowledge of – the writing, composition, arrangement, recording, or production of "Gatúbela."  Notwithstanding the foregoing, through subsequently provided agreements, UMG was apprised that DJ Maff, Karol G, Julio Manuel Gonzalez Tavárez *p/k/a* Lenny Tavárez ("Tavárez"), Justin Rafael Quiles Rivera *p/k/a* Justin Quiles ("Quiles") and Edwin Vásquez Vega *p/k/a* ("Maldy") were involved in varying capacities in the creation and recording of "Gatúbela."

**INTERROGATORY NO. 1A**:

List the musical elements in "Gatúbela" – including melodies, chord progressions, basslines, rhythms, percussion patterns, or synth lines – and identify the individual who created each element.

**RESPONSE TO INTERROGATORY NO. 1A**:

UMG objects to this Request to the extent that it is misdirected to UMG, mischaracterizes the evidence, and misunderstands UMG's involvement with "Gatúbela."

Without waiver of this objection, UMG states that it was not involved in – and does not

---

20, 21, 22, and 23.  As a result, UMG responds to the interrogatories that have not been withdrawn by Plaintiffs, which are identified below by the original interrogatory numbers given by Plaintiffs.

have any direct knowledge of – the creation of the musical elements of "Gatúbela."

**INTERROGATORY NO. 2:**

State the dates, times, and locations of all writing, recording, or production sessions related to "Gatúbela" and list all studios, facilities, or locations used to create any part of "Gatúbela".

**RESPONSE TO INTERROGATORY NO. 2:**

UMG objects to this Request to the extent that it is misdirected to UMG, mischaracterizes the evidence, and misunderstands UMG's involvement with "Gatúbela."

Without waiver of this objection, UMG states that it was not involved in – and does not have any direct knowledge of – the writing, recording, or production sessions related to "Gatúbela."

**INTERROGATORY NO. 3:**

Identify all studio assistants, recording engineers, producers, technicians, or other personnel who were involved in or present during the recording, production, or engineering of any part of the song "Gatúbela." For each individual identified, state their role, the specific sessions or tasks they participated in, and whether any studio logs, attendance records, sessions files, or digital time-stamped documentation exist indicating the dates and times of their involvement.

**RESPONSE TO INTERROGATORY NO. 3:**

UMG objects to this Request to the extent that it is misdirected to UMG, mischaracterizes the evidence, and misunderstands UMG's involvement with "Gatúbela."

Without waiver of this objection, UMG states that it was not involved in – and does not have any direct knowledge of – which individuals were present during the recording, production, or engineering of any part of the "Gatúbela." However, as referenced above, UMG was subsequently apprised that DJ Maff, Karol G, Tavárez, Quiles and Maldy were involved in varying

capacities in the creation and recording of "Gatúbela."

**INTERROGATORY NO. 4**:

Describe in detail the process by which "Gatúbela" was created, including the sequence of musical elements added and by whom.

**RESPONSE TO INTERROGATORY NO. 4**:

UMG objects to this Request to the extent that it is misdirected to UMG, mischaracterizes the evidence, and misunderstands UMG's involvement with "Gatúbela."

Without waiver of this objection, UMG states that it was not involved in – and does not have any direct knowledge of – the process by which "Gatúbela" was created.

**INTERROGATORY NO. 5**:

Identify all digital audio workstations (DAWs), including software version numbers and devices used, in the creation of "Gatúbela".

**RESPONSE TO INTERROGATORY NO. 5**:

UMG objects to this Request to the extent that it is misdirected to UMG, mischaracterizes the evidence, and misunderstands UMG's involvement with "Gatúbela."

Without waiver of this objection, UMG states that it was not involved in – and does not have any direct knowledge of – the creation of "Gatúbela," including the DAWs used.

**INTERROGATORY NO. 5a**:

Identify all session files, stems, project files, audio exports, or drafts related to "Gatúbela', and state the date each was created, including any metadata indicating the creation or modification

of musical elements.

**RESPONSE TO INTERROGATORY NO. 5a**:

UMG objects to this Request to the extent that it is misdirected to UMG, mischaracterizes the evidence, and misunderstands UMG's involvement with "Gatúbela."

Without waiver of this objection, UMG states that it was not involved in – and does not have any direct knowledge of – the session files, stems, project files, audio exports, or drafts related to "Gatúbela."

**INTERROGATORY NO. 6**:

Identify whether any party involved in the creation, promotion, or distribution of the song at issue has had knowledge, awareness, or notice that any portion of the work was created, composed, produced, or otherwise originated by one of the Plaintiffs. For each individual or entity identified, describe the nature of their knowledge, how and when they became aware of it, and any communications or documentation relating to that awareness.

**RESPONSE TO INTERROGATORY NO. 6**:

UMG objects to this Request to the extent it seeks information relating to the promotion and distribution of "Gatúbela" on the grounds that it: (i) is unlikely to lead to the discovery of admissible evidence; (ii) seeks information regarding the knowledge and awareness of third-parties; (iii) is disproportionate to the needs of the case; and (iv) seeks confidential and proprietary business information. Without waiving these objections, UMG states that it was not involved in – and does not have any direct knowledge of – the creation of "Gatúbela." UMG further denies that any portion of "Gatúbela" originated by one of the Plaintiffs.

**INTERROGATORY NO. 7:**

State whether any musical element in "Gatúbela" was derived from, inspired by, based on, modeled after, or created with reference to any work not authored by defendants.

**RESPONSE TO INTERROGATORY NO. 7:**

UMG objects to this Request to the extent that it is misdirected to UMG, mischaracterizes the evidence, and misunderstands UMG's involvement with "Gatúbela."

Without waiver of this objection, UMG states that it did not create "Gatúbela" and does not have direct knowledge of whether any of its musical elements were inspired by, based on, modeled after, or created with reference to any work not authored by defendants.

**INTERROGATORY NO. 9:**

State whether any defendant created a musical element in "Gatúbela" using a preexisting melody, beat, sequence, or audio file created by any person other than the defendants.

**RESPONSE TO INTERROGATORY NO. 9:**

UMG objects to this Request to the extent that it is misdirected to UMG, mischaracterizes the evidence, and misunderstands UMG's involvement with "Gatúbela."

Without waiver of this objection, UMG states that it did not create "Gatúbela" and does not have direct knowledge of whether any of its musical elements were created using a preexisting melody, beat, sequence, or audio file created by any person other than the defendants.

**INTERROGATORY NO. 9a:**

Was ANY part created using Plaintiff's Alfr3d Beats "Work"?

**RESPONSE TO INTERROGATORY NO. 9a:**

UMG objects to this Request to the extent that it is misdirected to UMG, mischaracterizes

the evidence, and misunderstands UMG's involvement with "Gatúbela."

Without waiver of this objection, UMG denies that any part of "Gatúbela" was created using Alfr3d's "Work" and was provided with at least one agreement in which an individual involved with "Gatúbela" represented and warranted that "no selections, materials, ideas or other properties" embodied in the master recording of "Gatúbela" "violate[s] or infringe[s] upon any law or statutory right of any person or entity."[2]

**INTERROGATORY NO. 9b**:

Identify all third party loops, sample packs, presets, templates, or royalty-free materials used in "Gatúbela".

**RESPONSE TO INTERROGATORY NO. 9b**:

UMG objects to this Request to the extent that it is misdirected to UMG, mischaracterizes the evidence, and misunderstands UMG's involvement with "Gatúbela."

Without waiver of this objection, UMG states that it did not create "Gatúbela" and does not have direct knowledge of whether any third party loops, sample packs, presets, templates, or royalty-free materials were used in "Gatúbela."

**INTERROGATORY NO. 10**:

Identify all individuals or entities who claim authorship of "Gatúbela", including the percentage of ownership of each claim and the net earnings to date that each has earned such as music royalties from "Gatúbela" and which Performance Rights Organization such as ASCAP,

---

[2] A copy of the Producer Agreement entered between Girlpower Production LLC and La Company, LLC *f/s/o* DJ Maff (hereinafter, the "Maff Producer Agreement") will be produced after the Court enters a protective order regarding confidentiality.

BMI, and SESAC paid to each individually.

**RESPONSE TO INTERROGATORY NO. 10**:

UMG objects to this Request to the extent that it is misdirected to UMG, mischaracterizes the evidence, and misunderstands UMG's involvement with "Gatúbela." UMG further objects to this Request to the extent that it seeks information not in the possession, custody, or control of UMG, and is better directed to the Performance Rights Organizations,

Without waiver of these objections, UMG states that the individuals who possess an ownership interest in the composition to "Gatúbela" may be determined by examining the Maff Producer Agreement, which will be produced after the Court enters a protective order regarding confidentiality.

**INTERROGATORY NO. 11**:

Identify all sources of revenue earned from "Gatúbela", by the Defendants or any entity acting on their behalf including streaming, publishing, performance royalties, licenses, and synchronization income since it was first published.

**RESPONSE TO INTERROGATORY NO. 11**:

UMG objects to this Request to the extent it seeks information not in the possession, custody, or control of UMG. UMG further objects to this Request on the grounds that it seeks confidential and proprietary business information. Without waiving these objections, UMG states that the answer to this Request may be determined by examining the documents, including royalty statements and a license agreement pertaining to "Gatúbela's" master sound recording, that UMG will produce after the Court enters a protective order regarding confidentiality.

**INTERROGATORY NO. 11a**:

State the total revenue generated by "Gatúbela" to date.

**RESPONSE TO INTERROGATORY NO. 11a**:

UMG objects to this Request to the extent it seeks information not in the possession, custody, or control of UMG.  UMG further objects to this Request on the grounds that it seeks confidential and proprietary business information. Without waiving these objections, UMG states that the answer to this Request regarding the revenue generated from "Gatúbela's" master sound recording may be determined by examining the documents that UMG will produce after the Court enters a protective order regarding confidentiality.

**INTERROGATORY NO. 11b**:

Identify the entity that maintains the accounting records since the day Defendant's song "Gatúbela" was first published on August 22, 2022 according to a US Copyright Office registration and up to present day December 1, 2025.

**RESPONSE TO INTERROGATORY NO. 11b**:

UMG objects to this Request on the grounds that it is vague and ambiguous with respect to which "accounting records" it seeks.  UMG further objects to this Request to the extent it seeks information not in the possession, custody, or control of UMG.  UMG further objects to this Request on the grounds that it seeks confidential and proprietary business information. Without waiving these objections, UMG states that it maintains certain financial records relating to the master sound recording of "Gatúbela."

**INTERROGATORY NO. 12**:

Identify and describe all communications between DJ Maff and ALFR3D Beats related to the use of ALFR3D Beats' musical work, including any message containing the phrase "don't tell anyone" and "smiley face emoticon." For each such communication, state the date, method of communication, participants, and the intended meaning or purpose of the message as understood by the sender.

**RESPONSE TO INTERROGATORY NO. 12**:

UMG states that it was not involved in – and does not have any direct knowledge of – ccommunications between DJ Maff and Alfr3d.

**INTERROGATORY NO. 13**:

State whether ownership or authorship of "Gatúbela" has ever been disputed, questioned, corrected, or modified by any party, or the defendants themselves. State whether any defendant has ever been informed, before the complaint was filed, that "Gatúbela" contained musical elements originating from Plaintiff's "Work".

**RESPONSE TO INTERROGATORY NO. 13**:

UMG states that, other than this lawsuit, it is unaware of any disputes relating to "Gatúbela." UMG further states that, prior to this lawsuit, it had not been informed of Plaintiffs' claims.

UMG additionally states that it is the copyright owner of the sound recording for "Gatúbela" (SR 947-602) pursuant to its pertinent agreements with Karol G.

**INTERROGATORY NO. 14**:

Identify all documents or agreements relating to authorship, composition, production, or ownership of "Gatúbela" including the UMG Artist and Reportaire [sic] initial contract with dates

of when the song creation process was financially agreed to commence.

**RESPONSE TO INTERROGATORY NO. 14:**

UMG objects to this Request on the grounds that it seeks confidential and proprietary business information. Without waiving this objection, UMG states that the answer to this Request may be determined by examining the documents that UMG will produce after the Court enters a protective order regarding confidentiality.

**INTERROGATORY NO. 15:**

Identify the individual known as "Ovy on the Drums", including his full legal name and professional role. State whether he contributed in any way to the creation of "Gatúbela", and if so, describe the nature of that contribution.

**RESPONSE TO INTERROGATORY NO. 15:**

UMG states that the full legal name of the individual known as "Ovy on the Drums" is Daniel Echavarría Oviedo. UMG does not have any direct knowledge of Mr. Oviedo's contributions to "Gatúbela" or his professional role in connection therewith.

**INTERROGATORY NO. 16:**

Identify all investigations, internal reviews, or evaluations conduced by defendants or their representatives concerning the originality of "Gatúbela" including musicologist reports.

**RESPONSE TO INTERROGATORY NO. 16:**

UMG objects to this Request on the grounds that it is vague and ambiguous as to what is requested. Without waiving this objection, UMG states that it has already produced: (i) Dr. Joe Bennett's expert report addressing, among other things, whether "Gatúbela" copies any original expression in Alfr3d's Work, and (ii) Paul Geluso's expert report confirming that the instrumental

performances embodied in "Gatúbela" were independently created in advance of Alfr3d's July 12, 2022 posting of the instrumental, "Punto G."

**INTERROGATORY NO. 18**:

State whether any communications, messages, files, audio materials, or digital content relating to the creation of "Gatúbela" are no longer available, were lost, or were deleted. If so, identify the type of material, the approximate date it became unavailable, and the reason for its unavailability to the best of your knowledge.

**RESPONSE TO INTERROGATORY NO. 18**:

UMG objects to this Request to the extent that it is misdirected to UMG, mischaracterizes the evidence, and misunderstands UMG's involvement with "Gatúbela."

Without waiver of this objection, UMG states that it did not create "Gatúbela" and does not have direct knowledge of whether any communications, messages, files, audio materials, or digital content relating to the creation of "Gatúbela" are no longer available, were lost, or were deleted.

**INTERROGATORY NO. 19**:

Describe how DJ Maff became involved in the project, including who hired him, was it UMG or Karol G, or was anyone else involved in his hiring for contractual work to create "Gatúbela" and the date of such as to when he was contacted initially, and what materials he received including the dates of such.

**RESPONSE TO INTERROGATORY NO. 19**:

UMG objects to this Request to the extent that it is misdirected to UMG, mischaracterizes the evidence, and misunderstands UMG's involvement with "Gatúbela."

Without waiver of this objection, UMG states that it was not involved in creating "Gatúbela" and does not have any direct knowledge of how DJ Maff became involved in the project.

**INTERROGATORY NO. 24**:

Identify all individuals who contributed melodic ideas, chord progressions, rhythmic patterns, basslines, sound selections, or production concepts used in "Gatúbela", and if they were part of a Work for Hire Agreement and who hired them and on which date.

**RESPONSE TO INTERROGATORY NO. 24**:

UMG objects to this Request to the extent that it is misdirected to UMG, mischaracterizes the evidence, and misunderstands UMG's involvement with "Gatúbela."

Without waiver of this objection, UMG states that it was not involved in creating "Gatúbela" and does not have direct knowledge of who contributed melodic ideas, chord progressions, rhythmic patterns, basslines, sound selections, or production concepts used in "Gatúbela."

**INTERROGATORY NO. 25**:

Identify all facts, documents, and communications that Defendants contend support their position regarding whether Plaintiffs suffered any damages as a result of the alleged infringement of Plaintiffs' musical work.

**RESPONSE TO INTERROGATORY NO. 25**:

UMG objects to this Request on the grounds that it: (i) is vague and ambiguous as to what is requested; and (ii) it seeks information that is in the possession of Plaintiffs.  Without waiving these objections, UMG states that it has not infringed Plaintiffs' musical work and that Plaintiffs have not suffered any damages.

Dated: January 8, 2026

**PRYOR CASHMAN LLP**

*Attorneys for UMG, Karol G, and DJ Maff*
255 Alhambra Circle, 8th Floor
Miami, Florida 33134
Telephone No: (786) 582-3012

By: /s/ *James G. Sammataro*
James G. Sammataro
Florida Bar No. 520292
Brendan S. Everman
Florida Bar No. 68702
jsammataro@pryorcashman.com
beverman@pryorcashman.com
ksuarez@pryorcashman.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of this document was served on January 8, 2026, via email to

Hernández at <u>jackdariohernandez@gmail.com</u> and Alfr3d at <u>alfr3dmusic@hotmail.com</u>.


<u>*s/ James G. Sammataro*</u>
James G. Sammataro

**EXHIBIT - P-0022**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**No.:9:25-cv-80338-DIMITROULEAS/REINHART**

JACK D. HERNANDEZ d/b/a OCEAN VIBES
MUSIC PUBLISHING, and DICK ALFREDO
CABALLERO RODRIGUEZ a/k/a ALFR3D BEATS,

      Plaintiffs,  (Pro Se)

v.

UMG RECORDINGS, INC. d/b/a UNIVERSAL
MUSIC GROUP d/b/a UNIVERSAL MUSIC LATINO,
CAROLINA GIRALDO NAVARRO a/k/a KAROL G,
EDWIN VASQUEZ VEGA a/k/a MALDY,
MARVIN HAWKINS RODRIGUEZ a/k/a DJ MAFF,
JULIO MANUEL GONZALEZ TAVAREZ a/k/a
LENNY TAVÁREZ, and JUSTIN QUILES,

      Defendants.

_____/

### **PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS**

      Pursuant to Federal Rule of Civil Procedure 34, plaintiffs Jack D. Hernandez d/b/a Ocean

Vibes Music Publishing ("Hernandez") and Dick Alfredo Caballero Rodriguez a/k/a ALFR3D

Beats ("Alfr3d"), appearing pro se, hereby request that defendants UMG Recordings, Inc.,

Carolina Giraldo Navarro p/k/a Karol G, Edwin Vazquez Vega p/k/a Maldy, Marvin Hawkins

Rodriguez p/k/a DJ Maff, Julio Manuel Gonzalez Tavarez p/k/a Lenny Tavárez, and Justin

Quiles produce, within 30 days, the following documents, electronically stored information, and

accompanying metadata to plaintiff's Pro Se Jack D. Hernandez d/b/a Ocean Vibes Music

Publishing (Pro Se) business mailing address at 16133 E Lancashire, Loxahatchee, Florida

33470, and to Dick Alfredo Caballero Rodriguez a/k/a ALFR3D Beats (Pro Se) mailing address at: El Salvador, La Libertad Ciudad Marsella Q5, D31.

## DEFINITIONS

1. "Hernandez" refers to plaintiff Jack D. Hernandez, individually and d/b/a Ocean Vibes Music Publishing, and any of his agents, representatives, employees, or persons acting on his behalf.

2. "Alfr3d" refers to plaintiff Dick Alfredo Caballero Rodriguez, a/k/a ALFR3D Beats, and any of his agents, representatives, employees, or persons acting on his behalf.

3. "Plaintiffs" refers collectively to Jack Hernandez d/b/a Ocean Vibes Music Publishing and Alfr3d Beats.

4. "UMG" refers to UMG Recordings, Inc., and any of its parents, subsidiaries, affiliates, divisions, departments, executives, A&R staff, employees, representatives, distributors, attorneys, or persons acting on its behalf.

5. "Karol G" refers to defendant Carolina Giraldo Navarro a/k/a Karol G, and any of her managers, attorneys, employees, representatives, social-media teams, production staff, or persons acting on her behalf.

6. "DJ Maff" refers to defendant Marvin Hawkins Rodriguez a/k/a DJ Maff, and any of his agents, collaborators, assistants, studios, music programmers, representatives, attorneys, or persons acting on his behalf.

7. "Complaint" refers to the Complaint filed by Plaintiffs in this action.

8. "Ovy on the Drums" refers to Daniel Echavarría Oviedo a/k/a Ovy on the Drums, a Colombian producer and songwriter, and includes any of his managers, engineers, representatives, collaborators, attorneys, assistants, or persons acting on his behalf in any capacity.

9. "Gatúbela" refers to the musical composition and sound recording released by Karol G, titled "Gatúbela," including all stems, drafts, demos, MIDI files, DAW project files, edits, revisions, masters, metadata, or any versions in development.

10. "Punto G" refers to the musical composition and sound recording released by ALFR3D Beats, titled "Punto G" including all stems, drafts, demos, MIDI files, DAW project files, edits, revisions, masters, metadata, or any versions in development.

11. "BMI" refers to Broadcast Music, Inc. (BMI) is a performance rights organization in the United States.

12. "ASCAP" refers to the American Society of Composers, Authors and Publishers (ASCAP) and is a performance rights organization in the United States.

13. "SESAC" refers to the Society of European Stage Authors and Composers (SESAC) and is a for-profit performance-rights organization in the United States.

14. "Kobalt" refers to Kobalt Music Group, Ltd. and it is an independent rights management and music publishing company with presence in the United States.

15. "Work" refers to Plaintiffs' musical composition and sound recording titled "Punto G," including all stems, drafts, demos, DAW project files, metadata, MIDI files, and any versions of the composition.

16. "Communication(s)" means any statement, message, conversation, transmission, or exchange of information, whether oral or written, including emails, text messages, WhatsApp messages, Instagram messages, Facebook messages, TikTok messages, Telegram, Signal, Messenger, voicemails, voice notes, letters, comments, posts, drafts, digital messages, or any communication of any kind.

17. "Document" means any written, printed, typed, recorded, graphic, electronic, or digital matter of any kind, including all drafts and non-identical copies, whether stored physically or electronically, including but not limited to emails, contracts, business contracts, letters, agreements, invoices, notes, social-media files, screenshots, audio files, DAW project files, logs, backups, external drives, metadata, any medium upon which information or intelligence can be recorded or retrieved, including without limitation, any written, graphic, or audio matter, or other means of preserving thought or expression, and all tangible things from which information can be processed or transcribed, including the originals and all non-identical copies, whether different from the original by reason of any notation made on such copy or otherwise, including but not limited to, correspondence, memoranda, notes, messages, letters, telegrams, teletypes, telefaxes, electronic mail entries, bulletins, inter-office or intra-office telephone calls, diaries, chronological data, minutes, books, reports, studies, summaries, pamphlets, printed matter, charts, ledgers, invoices, worksheets, receipts, returns, computer printouts, prospectuses, financial statements, schedules, affidavits, contracts, canceled checks, statements, transcripts, statistics, surveys, periodical articles, releases (any and all drafts,

alterations, and modifications, changes, and amendments of any of the foregoing), graphic or audio records of representations of any kind, including, without limitation, electronic audio files in .mp3, .mp4, or any other format, microfilm, microfiche, photographs, charts, videotape, recordings, voice messages, motion pictures, mini-discs, floppy discs, memory sticks, USB drives, CD-ROM discs, DVDs, cassettes, tapes, records, discs, or mechanical or electronic recordings or representations of any kind. A draft or non-identical copy is a separate "document" within the meaning of this term. Computer generated or stored documents, including computer files or data, electronic mail, and information on hard disk that has been erased but is retrievable constitutes documents within the meaning of this definition.

18. "Person" means any natural person, corporation, partnership, agency, entity, or organization.

19. "Concerning" means relating to, referring to, regarding, involving, analyzing, discussing, describing, evidencing, reflecting, or pertaining to the subject matter.

20. "Including" means including without limitation.

21. "Each," "Any," and "All" shall be interpreted broadly and inclusively to bring within the scope of these Requests all responsive information.

22. "And" and "Or" shall be interpreted conjunctively or disjunctively to bring within the scope of these Requests any information that might otherwise fall outside them.

23. Words used in the singular include the plural, and vice versa.

24. Words importing any gender include all genders.

## **INSTRUCTIONS**

1. You are requested to use the following production format for electronically stored information ("ESI"): (i) metadata in a comma delimited file format; (ii) single-page Group IV TIFF or PDF images branded with sequential document control numbers; (iii) text rendering of native files (comparable to OCR); (iv) link to native file; and (v) exception reports/image placeholders must be provided for all data files that cannot be rendered to TIFF or PDF because the file is an unsupported file type, is password encrypted or is corrupt. For non-ESI documents, you are requested to produce documents in the following format: (i) single-page Group IV TIFF or PDF images branded with sequential document control numbers; (ii) page level OCR for each TIFF or PDF image which is delivered; and (iii) identify custodian name and location, along with correlating document control number in a comma delimited file format.

2. Each request shall be answered separately and fully in writing under oath as required by the Federal Rules of Civil Procedure. If you contend that you cannot comply with any request, you shall state with specificity the reasons for your inability to comply. (i)These Requests are continuing. If, after serving your responses, you locate or obtain additional responsive documents or electronically stored information ("ESI"), you must supplement your responses in according to Rule 26(e). (ii) Unless otherwise specified, the time period covered by these Requests is January 1, 2020 through the date of production. (iii) Documents shall be produced as they are kept in the usual course of business or organized and labeled to correspond with the categories in these Requests, as required by Rule 34(b)(2)(E). (iv)All ESI—including emails, text messages, WhatsApp messages, Instagram DMs, cloud-storage files, mobile-device exports, audio files, DAWproject files, and metadata—shall be produced in native electronic format with

all associated metadata, including timestamps, revision history, authorship information, and file-creation data. (v) If you withhold any document based on a claim of privilege, you must provide a privilege log identifying: the document or ESI withheld; its date; the author and all recipients; the specific privilege asserted; and a description sufficient to assess the privilege claim.(vi) If any responsive document once existed but no longer exists, you shall identify: the document; the date and circumstances of its destruction or deletion; the identity of all persons involved; and any persons with knowledge of its former contents. (vii) The term "concerning" shall be interpreted broadly to include all documents that refer to, relate to, describe, evidence, reflect, support, dispute, analyze, comment upon, or pertain to the subject matter of the request. (viii)  All drafts, non-identical copies, redlined versions, edited versions, preliminary versions, and versions containing differing metadata must be produced. (ix) Responsive documents that exist only electronically shall not be printed or converted to PDF in place of native-format production unless Plaintiffs expressly agree in writing. (x) If you believe any portion of any request is objectionable, you shall state with specificity the grounds for objection and produce all documents responsive to the non-objectionable portions. (xi) All responsive documents, ESI, media, and materials shall be delivered to the following addresses: Jack D. Hernandez (Pro Se) d/b/a Ocean Vibes Music Publishing, 16133 E Lancashire, Loxahatchee, Florida 33470 and to Dick Alfredo Caballero Rodriguez (Pro Se)a/k/a ALFR3D Beats at El Salvador, La Libertad Ciudad Marsella Q5, D31. (xii) Defendants are reminded of their legal duty to preserve all evidence, including mobile-device data, metadata, message histories, social-media content, drafts, DAW files, cloud-storage files, backups, and deleted materials capable of forensic recovery.

## DOCUMENTS TO BE PRODUCED

1.  All documents identifying every individual involved in the creation, composition, arrangement, production, recording, engineering, editing, mixing, or mastering of the musical composition and sound recording known as "Gatúbela."

2.  All DAW project files, session files, stems, multitracks, exports, drafts, demos, MIDI files, Fruity Loops files, and all associated audio or project materials relating to the creation, development, or revision of "Gatúbela."

3.  All communications among any of the Defendants regarding the composition, beat-making, arrangement, recording, editing, mixing, mastering, revision, publishing, or release of "Gatúbela."

4.  All communications with any third-party producer, sound designer, loop-maker, sample creator, engineer, musician, or collaborator considered or used in the creation of "Gatúbela."

5.  All agreements, contracts, producer agreements, split sheets, work-for-hire agreements, invoices, or author- or producer-related documentation relating to the creation or ownership of "Gatúbela."

6.  All documents showing the timeline for creation of "Gatúbela," including scheduling documents, session logs, internal notes, version histories, draft dates, and metadata timestamps.

7.  All documents showing whether any Defendant accessed, listened to, viewed, downloaded, copied, reviewed, or otherwise encountered Plaintiffs' Work "Punto G."

8.  All communications comparing "Gatúbela" to "Punto G," discussing similarity between the two, or referencing Plaintiffs' work in any way.

9.  All internal or external musicological analyses, expert evaluations, forensic reviews, comparisons, or technical assessments relating to "Gatúbela."

10. All royalty statements, revenue summaries, financial reports, profit statements, earnings documents, accounting documents, and monetary breakdowns relating to "Gatúbela."

11. All marketing, promotional, advertising, public-relations, or media documents relating to "Gatúbela."

12. All communications with digital streaming platforms (including Spotify, Apple Music, YouTube, Amazon Music, Tidal, Deezer, TikTok, Meta, and others) regarding "Gatúbela."

13. All documents identifying or describing any person or company involved in distributing, licensing, promoting, monetizing, or otherwise handling the commercial exploitation of "Gatúbela."

14. All documents relating to any past copyright or intellectual property disputes involving any Defendant within the past ten (10) years.

15. All documents supporting, evidencing, or relating to any affirmative defense asserted by Defendants in this action.

16. All documents describing the contributions, musical work, technical work, or role of Marvin Hawkins Rodriguez a/k/a DJ Maff in creating "Gatúbela."

17. All documents identifying or describing all musical, technical, creative, engineering, programming, or production work performed by DJ Maff on behalf or for Karol G or UMG.

18. All documents identifying any uncredited contributors to beats, loops, melodies, samples, sound design, arrangement, or any musical element used in "Gatúbela."

19. All documents relating to the decision-making process for determining songwriting, production, or authorship credits for "Gatúbela."

20. All drafts, demos, alternate versions, early beat sketches, session files, mockups, test renders, or early creative materials generated by DJ Maff or any other Defendant for "Gatúbela."

21. All documents identifying how DJ Maff became involved in the creation of "Gatúbela," including communications describing who hired, contacted, or recruited him.

22. All documents identifying or describing the involvement (if any) of Ovy on the Drums (Daniel Echavarría Oviedo) in the composition, production, arrangement, or development of "Gatúbela."

23. All documents describing or identifying the specific contributions of each claimant listed on Copyright Registration PA 2-511-963 for "Gatúbela" or any other Copyright Registration regarding "Gatúbela" that is registered in the U.S. Copyright Office from January 1, 2021 to December 1, 2025.

24. All documents identifying all UMG A&R personnel who reviewed, supervised, approved, or evaluated "Gatúbela."

25. All contracts, agreements, drafts, correspondence, licensing documents, or production agreements relating to the creation, production, authorship, or ownership of "Gatúbela."

26. All contracts, invoices, budgets, agreements, or documentation relating to the production of the "Gatúbela" music video.

27. All revenue documents relating to "Gatúbela," including revenue from streaming, downloads, licensing, synchronization, performance royalties, and any other monetization across the entire world.

28. All documents showing royalty splits, division of royalties, allocation of revenue, royalty checks, music performance societies payments collected and paid by and from BMI, ASCAP, SESAC, or payment structures among all persons credited or involved in "Gatúbela."

29. All internal accounting records, payment ledgers, royalty disbursement logs, or financial documents showing payments made to any Defendant or third party for "Gatúbela."

30.  All communications between Karol G, DJ Maff, UMG, producers, engineers, managers, studios, or A&R staff regarding the creation, development, revision, approval, or release of "Gatúbela."

31.  All reference tracks, playlists, influence materials, inspirational sources, or stylistic guides used or considered in creating "Gatúbela."

32.  All documents showing whether any Defendant accessed ALFR3D Beats' YouTube channel or listened to "Punto G" by any digital means or digital formats.

33.  All internal communications discussing or acknowledging similarity between "Gatúbela" and "Punto G."

34.  All early beat drafts, stems, DAW files, melodic sketches, rhythmic drafts, harmonic drafts, or other musical-development materials relating to the creation of "Gatúbela."

35.  All similarity analyses, comparisons, assessments, or discussions comparing "Gatúbela" to "Punto G."

36.  All voice notes, notebooks, lyric drafts, idea journals, melody books, or creative notes relating to the creation of "Gatúbela."

37.  All communications discussing modifying any part of "Gatúbela" due to potential similarity to another work.

38.  All loops, samples, MIDI files, sample packs, VST presets, external sound sources, Fruity Loops files, purchased sound content, or third-party musical material used in creating "Gatúbela."

39.  All group chats, messaging threads, or communications among producers, engineers, or collaborators referencing "Punto G" by name or implication.

40. All documents identifying the origin of every melodic, harmonic, rhythmic, sonic, or structural element used in "Gatúbela."

41. All documents, emails, messages, or communications among UMG executives discussing Plaintiffs' copyright claim relating to "Gatúbela."

42. All internal UMG investigations, evaluations, analyses, or discussions concerning Plaintiffs' copyright infringement allegations.

43. All communications between UMG and Karol G's management, representatives, legal counsel, or team regarding Plaintiffs' claim or "Punto G."

44. All communications between UMG and DJ Maff regarding Plaintiffs' claim, including any discussion of potential access to "Punto G."

45. All communications between UMG and any publishing company (including Sony/ATV, Warner Chappell, Kobalt, or any other publisher) regarding Plaintiffs' claim or potential similarity to "Punto G."

46. All internal UMG assessments, analyses, or reports concerning potential legal exposure, financial exposure, business risk, public-relations impact, or copyright risk related to Plaintiffs' claim.

47. All public-relations plans, talking points, internal or external communications strategies, press guidance, or crisis-management materials relating to Plaintiffs' claim.

48. All internal communications among any Defendant discussing similarity between "Gatúbela" and any preexisting musical work, including "Punto G."

49. All documents showing whether any Defendant accessed, viewed, or visited the ALFR3D Beats YouTube channel between January 1, 2021 and the date of production.

50. All Instagram direct messages, private messages, comments, reels, screenshots, voice notes, communications, or posts by DJ Maff referencing ALFR3D Beats, "Punto G," or "Gatúbela."

51. All WhatsApp messages, chats, group chats, call logs, backups, exported-chats, voice notes, or communications made or received by DJ Maff referencing ALFR3D Beats, "Punto G," or "Gatúbela."

52. All emails, attachments, links, or file transfers sent by DJ Maff to Karol G, her management, A&R staff, UMG personnel, or collaborators containing beats, drafts, session files, or materials referencing ALFR3D Beats or "Punto G."

53. All copyright registrations, applications, drafts, deposit copies, communications with the U.S. Copyright Office, musicologist reports, copyright analyses, or expert reports relating to "Gatúbela" or to Plaintiffs' Work "Punto G."

54. All interview recordings, articles, videos, live streams, podcasts, broadcasts, public statements, or media appearances in which DJ Maff discussed the creation, origin, influences, or production of "Gatúbela."

55. All documents showing musical influences, genres, artists, or prior works referenced, studied, compared, emulated, or considered during the creation of "Gatúbela."

56. All notes, voice memos, lyric fragments, melodic ideas, chord ideas, sketches, or creative materials generated during early ideation of "Gatúbela," including deleted or partially deleted files.

57. All internal discussions or communications in which Defendants described "Gatúbela" as being "inspired by," "similar to," "based on," or "in the style of" any other track, including Plaintiffs' Work "Punto G."

58. All communications in which any Defendant expressed concern that "Gatúbela" sounded too similar to another work, including any discussion of altering beat, melody, or arrangement.

59. All early lyric sheets, topline ideas, melodic drafts, humming tracks, or voice memos created during the songwriting process for "Gatúbela."

60. All documents identifying loops, samples, VST plugins, presets, MIDI files, sample libraries, music production software, purchased content, or sound packs used in the creation of "Gatúbela."

61. All computer forensic data, including file-creation timestamps, file-modification timestamps, project-version metadata, and DAW log files for any materials used in creating "Gatúbela."

62. All drafts or early versions of "Gatúbela" containing greater similarity to Plaintiffs' Work "Punto G" than the commercially released version.

63. All communications referencing ALFR3D Beats, his YouTube channel, his beat style, his production methods, or whether he should be contacted, credited, or compensated.

64. All A&R review documents, evaluation notes, feedback memos, ratings, comments, or internal assessments regarding the "Gatúbela" beat or composition.

65. All draft versions or rejected versions of "Gatúbela" that were not included in the final album release.

66. All communications in which Defendants shared YouTube links, TikTok clips, Instagram beats, or other online content for the purpose of finding a "style" or "direction" for "Gatúbela."

67. All documents identifying or listing all beat submissions made for Karol G's album cycle, including DJ Maff's submissions, to determine whether any resembled "Punto G."

68. All scratch vocals, guide vocals, demo vocals, toplines, or working vocals recorded over any version of the "Gatúbela" beat.

69. All A&R or producer feedback instructing changes to the beat, melody, arrangement, or structure to make "Gatúbela" sound more like another work (including "Punto G").

70. All audio or video recordings capturing any part of the studio sessions, discussions, or creative meetings relating to the creation of "Gatúbela."

71. All communications containing references to potential copyright liability, "getting sued," "copyright risk," "legal exposure," "similar melody," "same beat," or similar risk-related statements about "Gatúbela."

72. All communications discussing whether DJ Maff studied, followed, or modeled his production style, creative approach, drum patterns, bass arrangements, or melodic structures after ALFR3D Beats.

73. All documents showing the development and evolution of DJ Maff's beat style, melodic style, harmonic structure, or rhythmic patterns leading up to the creation of "Gatúbela."

74. All communications in which Karol G, UMG, or A&R requested or discussed beats "similar to," "in the style of," or "with the vibe of" another artist or producer, including ALFR3D Beats.

75. All videos, TikTok posts, Instagram Lives, Stories, Reels, or recordings in which Defendants played early, draft, or alternate versions of "Gatúbela."

76. All DAW screen recordings, arrangement views, piano-roll screenshots, plugin setups, or production walkthroughs showing the creation of "Gatúbela."

77. All internal discussions or communications regarding whether songwriting or production credits for "Gatúbela" should be changed, minimized, expanded, altered, reassigned, or concealed.

78.  All metadata, iCloud backups, Google Drive files, Dropbox files, OneDrive files, or other cloud storage materials containing any version, draft, or supportive material relating to the creation of "Gatúbela."

79.  All documents, communications, or digital logs referencing deletion, destruction, removal, overwriting, or alteration of files relating to the creation of "Gatúbela."

80.  All uncompressed or raw audio and video files documenting any portion of the creation of "Gatúbela," including original phone-camera recordings and files containing additional metadata.

81.  All documents showing whether DJ Maff accessed, viewed, streamed, downloaded, saved, bookmarked, or opened Plaintiffs' track "Punto G" through any digital platform, including YouTube, Spotify, Apple Music, TikTok, Instagram, WhatsApp, email links, web browsers or any file-sharing service.

82.  All documents showing whether YouTube recommended, autoplayed, algorithmically suggested, queued, or in any way displayed ALFR3D Beats' content to DJ Maff or any device associated with him.

83.  All documents showing whether DJ Maff accessed "Punto G" or ALFR3D Beats' content via private, unlisted, deleted, hidden, or formerly available YouTube links, including browser histories, cached files, device logs, mobile-app histories, or metadata.

84.  All communications in which DJ Maff received, opened, clicked, tapped, previewed, or discussed any link directing to "Punto G," ALFR3D's YouTube channel, or any webpage containing the track.

85.  All forensic digital records—including device logs, mobile logs, cloud backups, YouTube-history exports, Google Takeout archives, browser caches, app data, and

deleted-history recovery files—showing whether DJ Maff or anyone acting on his behalf accessed "Punto G" or any ALFR3D Beats content.

86. All documents showing whether any Defendant accessed, viewed, streamed, downloaded, saved, bookmarked, opened, or listened to Plaintiffs' Work"Punto G" or any content created by ALFR3D Beats between January 1, 2021 and December 1, 2025.

87. All documents showing whether digital platforms (including YouTube, TikTok, Instagram, Facebook, Spotify, Apple Music, or any other platform) recommended, autoplayed, suggested, or algorithmically surfaced ALFR3D Beats content to any Defendant.

88. All communications in which any Defendant received, opened, tapped, clicked, previewed, forwarded, saved, or interacted with any link directing to "Punto G," ALFR3D's YouTube channel, or any digital content created by Plaintiffs.

89. All documents showing whether any Defendant accessed, received, or was provided private, unlisted, deleted, password-protected, or hidden links containing Plaintiffs' music or beats.

90. All forensic digital records—device logs, cloud logs, YouTube histories, Whatsapp Chats, Google Takeout files, browser histories, cache, metadata, and deleted histories—showing whether any Defendant accessed "Punto G."

91. All documents identifying whether any Defendant followed, subscribed to, viewed, visited, or interacted with ALFR3D Beats on any platform.

92. All documents showing whether any Defendant's management team, assistants, producers, engineers, A&R personnel, studio staff, or label personnel accessed Plaintiffs' Work "Punto G."

93. All communications where any Defendant asked for or discussed beats "similar to," "in the style of," or matching the sound of ALFR3D Beats.

94.  All communications among Defendants referencing Plaintiffs, ALFR3D Beats, "Punto G," or any alleged similarity.

95.  All documents showing whether any third-party collaborator working with any Defendant accessed or referenced "Punto G" in connection with the creation of "Gatúbela." and whether any third-party collaborator working with any Defendant accessed or referenced "Gatúbela" in connection with the creation of any digital files such as digital videos, mock up videos, or whatsapp chat recording videos, prior to August 22, 2022 which reference the making of or creation process of "Gatúbela."

96.  All documents, screenshots, exports, reports, or records identifying or reflecting any social-media comments by fans, followers, users, or the general public referencing Plaintiffs, ALFR3D Beats, "Punto G," or any allegation of similarity or copyright infringement relating to "Gatúbela."

97.  All documents reflecting any comments, posts, replies, tags, mentions, retweets, quote-tweets, duets, stitches, reactions, or interactions in which users stated, suggested, implied, or argued that "Gatúbela" copied, was inspired by, or sounded similar to "Punto G."

98.  All documents showing whether any Defendant, their managers, agents, social-media teams, or label personnel monitored, saved, archived, responded to, acknowledged, deleted, or otherwise engaged with social-media comments alleging copying of "Punto G."

99.  All internal communications discussing public comments, fan reactions, controversy, viral discussions, or social-media threads comparing "Punto G" to "Gatúbela."

100. All analytics, internal reports, sentiment studies, fan-engagement summaries, marketing assessments, or social-listening data generated by or available to any Defendant concerning

online commentary about Plaintiffs' Work "Punto G" or any allegations of copyright infringement by Karol G and or any of the other Defendants.

101. All documents relating to any music awards for which "Gatúbela" was submitted, nominated, considered, or evaluated, including but not limited to the Grammy Awards, Latin Grammy Awards, Billboard Music Awards, Billboard Latin Music Awards, ASCAP Awards, BMI Awards, Premios Juventud, Premios Lo Nuestro, and any other national or international award program.

102. All documents reflecting any award nominations, wins, recognitions, certifications, shortlists, or finalist status received by "Gatúbela," including official announcements, certificates, award letters, plaques, and notifications.

103. All submission packages, entry forms, application materials, credit listings, liner notes, upload files, metadata submissions, or supporting documentation submitted by any Defendant to any award organization in connection with "Gatúbela."

104. All communications between any Defendant and any award-granting entity, including the Recording Academy (Grammy Awards), Latin Recording Academy (Latin Grammys), Billboard, ASCAP, BMI, SESAC, Univision, or Telemundo, concerning "Gatúbela."

105. All communications among Defendants regarding strategy, expectations, promotional plans, submissions, or considerations for entering "Gatúbela" into any music award or industry recognition program.

106. All internal documents discussing the potential or actual impact of any awards, nominations, or recognitions for "Gatúbela," including marketing strategy, financial projections, and public-relations considerations.

107. All documents identifying the credited songwriters, producers, engineers, publishers, and contributors as submitted to any music award committee for consideration or evaluation of "Gatúbela."

108. All evaluations, scoring sheets, reviewer comments, adjudication forms, feedback, or scoring rubrics received from any award organization related to "Gatúbela."

109. All documents reflecting public announcements, press releases, media publications, interviews, or statements made by any Defendant relating to awards or nominations associated with "Gatúbela."

110. All documents showing revenue increases, streaming spikes, marketing boosts, sponsorship deals, brand partnerships, or other commercial gains attributed to "Gatúbela" receiving any award, nomination, or recognition.

111. All documents showing the chart performance of "Gatúbela" on any radio chart, streaming chart, sales chart, or popularity chart worldwide, including Billboard, Billboard Global 200, Billboard Latin Charts, Spotify Charts, Apple Music Charts, Shazam Charts, YouTube Charts, Monitor Latino, Radiomonitor, and any other charting system.

112. All radio-airplay reports, spins reports, monitoring reports, cue sheets, performance logs, tracking summaries, or reporting data showing how often "Gatúbela" was played on radio stations worldwide.

113. All documents showing global or regional popularity rankings of "Gatúbela," including any internal or external tracking reports from Nielsen, Luminate Data, Radiomonitor, BMAT, BDS, or similar services.

114. All playlist submissions, editorial playlist entries, curated playlist placements, or promotional documents submitted to Spotify, Apple Music, Amazon Music, Tidal, YouTube Music, Deezer, or other DSPs related to the promotion or charting of "Gatúbela."

115. All documents showing growth metrics, chart history, chart peaks, chart declines, and chart certifications for "Gatúbela," including any chart-analytics dashboards, internal reports, or marketing summaries.

116. All communications discussing the chart performance or radio performance of "Gatúbela," including conversations among Defendants, managers, producers, A&R executives, or UMG personnel.

117. All public statements, press releases, marketing materials, interviews, promotional posts, or internal talking points referencing the chart success, radio performance, or popularity of "Gatúbela."

118. All documents submitted by any Defendant to Nielsen, Luminate, Monitor Latino, Radiomonitor, or any charting or monitoring body for the purpose of tracking, verifying, or promoting "Gatúbela."

119. All internal documents analyzing the geographical areas in which "Gatúbela" performed strongest on charts or radio, including heat maps, regional breakout reports, demographic analyses, and global performance summaries.

120. All communications discussing how the chart performance or radio success of "Gatúbela" impacted marketing decisions, release strategies, touring, endorsements, or public-relations campaigns.

121. All documents identifying every location, venue, city, country, event, concert, festival, tour stop, award show, performance, or appearance in which "Gatúbela" was publicly performed, played, broadcast, or used.

122. All tour setlists, performance logs, show rundowns, musical-direction notes, band notes, or setlist submissions relating to performances of "Gatúbela" during any tour or live appearance by Karol G or any Defendant.

123. All documents identifying each television show, award show, music program, broadcast, livestream, digital program, or televised event where "Gatúbela" was performed, lip-synced, danced to, featured, or used.

124. All cue sheets submitted to any television network, broadcaster, streaming service, production company, rights organization, or performing-rights society (including ASCAP, BMI, SESAC, SoundExchange) relating to performances of "Gatúbela."

125. All licensing agreements, permissions, sync licenses, broadcast licenses, live-performance licenses, or clearance documents relating to any public use of "Gatúbela."

126. All communications discussing or planning performances of "Gatúbela" on any tour, concert, festival, award show, TV show, livestream, or media appearance.

127. All promotional materials, press releases, tour announcements, TV promotions, or marketing documents referencing performances of "Gatúbela."

128. All documents identifying the musicians, dancers, performers, musical directors, choreographers, stage managers, or production staff involved in performing "Gatúbela" in concerts, tours, or televised events.

129. All video recordings, audio recordings, rehearsal footage, behind-the-scenes content, or production videos documenting performances of "Gatúbela" on tour or on television.

130. All documents showing revenue generated from live performances of "Gatúbela," including touring revenue, performance royalties, broadcast payments, sponsorships, endorsements, and promotional value.

131. "Gatúbela" written composition.

132. "Gatúbela" sound recording.

133. All copyright registration applications, including exhibits, submitted for "Gatúbela."

134. All communications exchanged between Defendants and the U.S. Copyright Office concerning "Gatúbela."

135. All copyright registrations for "Gatúbela."

136. Documents that can prove the original date of creation of "Gatúbela."

137. All documents and communications concerning the actual or potential use, distribution, or licensing of "Gatúbela."

138. All communications concerning "Gatúbela."

139. All communications between Defendants and UMG.

140. All communications between Defendants and Karol G.

141. All communications, including direct messages or posts/comments on Instagram, between Plaintiffs and DJ Maff.

142. All agreements between Karol G and third parties relating to Karol G music compositions or production services between January 1, 2018 and December 1, 2025.

143. All agreements between Dj Maff and third parties relating to Dj Maff music compositions or production services between January 1, 2018 and December 1, 2025.

144. All agreements between Maldy and third parties relating to Maldy music compositions or production services between January 1, 2018 and December 1, 2025.

145. All agreements between UMG and third parties relating to the "Gatúbela" Music compositions or music production or music distribution services between January 1, 2018 and December 31, 2025.

146. All licensing agreements relating to "Gatúbela."

147. Documents sufficient to identify the total compensation received by Karol G for her music production services between January 1, 2018 and December 1, 2025.

148. Documents sufficient to identify the total compensation received by DJ Maff for his music production services between January 1, 2018 and December 1, 2025.

149. Documents sufficient to identify the total compensation received by Maldy for his music production services between January 1, 2018 and December 1, 2025.

150. All documents and communications reflecting the actual damages suffered by Plaintiffs as a result of the alleged copyright infringement at issue in this case.

151. All communications with musicology experts about "Gatúbela."

152. All reports, summaries, or analyzes of "Punto G" prepared by any musicology expert.

153. All documents and communications supporting, proving or evidencing that DJ Maff had "knowledge and fraudulent intent," as alleged in the Complaint.

154. All documents and communications supporting, proving or evidencing that "[s]ince August 22, 2022, Defendants have repeatedly marketed, made available, and otherwise used "Gatúbela" in whole or in part, on social media, online, and elsewhere.

155. All documents and communications supporting, proving or evidencing that "the "Gatúbela" was not published or disseminated prior to the first publication of August 22, 2022 as published on the US Copyright registration of "Gatúbela".

156. All documents and communications discussing that any of the Defendants recognized committing infringement according to the Complaint and or of not committing infringement of "Punto G".

157. All documents and communications that involve the allegations in Paragraph 68 of the Complaint.

158. All the web browsing history of DJ Maff between June 1, 2022 and December 1, 2025.

159. All the web browsing history of Karol G between June 1, 2022 and December 1, 2025.

160. All the web browsing history of Maldy between June 1, 2022 and December 1, 2025.

161. All the web browsing history of UMG executives involved in the song composition of "Gatúbela" between June 1, 2022 and December 31, 2022 prior to "Gatúbela" first being published on August 22, 2022.

162. All the business contracts where UMG Artist and Reportaire personnel involved in the song composition of "Gatúbela" entered into contractual agreement between any of the listed defendants and UMG if any exists between the dates of January 1, 2022 and December 31, 2022 prior to "Gatúbela" first being published on August 22, 2022.

Dated: December 1, 2025

Respectfully submitted,

**JACK D. HERNANDEZ**
d/b/a Ocean Vibes Music Publishing
*Plaintiff, Pro Se*

By: */s/ Jack D. Hernandez*
**Jack D. Hernandez**
16133 E Lancashire
Loxahatchee, Florida 33470
Email: jackdariohernandez@gmail.com

**DICK ALFREDO CABALLERO
RODRIGUEZ**
a/k/a ALFR3D Beats
*Plaintiff, Pro Se*

By: */s/ Dick Alfredo Caballero*
DICK ALFREDO CABALLERO
Email: alfr3dmusic@hotmail.com

## CERTIFICATE OF SERVICE

The undersigned Pro Se Plaintiffs certify that their digital signatures included in this document

are intended to serve as valid signatures for all legal purposes under Federal Rule of Civil

Procedure 11 and the Local Rules of the Southern District of Florida. Plaintiffs further certify

that this Request for Production is made in good faith and that all signatures made electronically

are adopted as if personally signed. The undersigned Pro Se Plaintiffs HEREBY CERTIFY that

on this 1st day of December, 2025, a true and correct copy of the foregoing PLAINTIFFS'

FIRST REQUEST FOR PRODUCTION OF DOCUMENTS was mailed to all counsel of record

for Defendants by U.S. Mail to their respective business addresses and via electronic mail from

email address jackdariohernandez@gmail.com and sent to the following addresses:

**Brendan Stuart Everman, Esq.**
beverman@pryorcashman.com
ksuarez@pryorcashman.com

**Genesis M. Perez Medina, Esq.**
genesisperezlaw@gmail.com

**James George Sammataro, Esq.**
jsammataro@pryorcashman.com
docketing@pryorcashman.com
ksuarez@pryorcashman.com

**Juan Carlos Ramos-Rosado, Esq**.
juan.ramos@dmralaw.com
a.suarez@dmrpr.com
nathalie.bovadilla@dmralaw.com

<div align="right">

*s/ Jack D. Hernandez*
Jack Hernández d/b/a Ocean Vibes Music
Publishing

*s/Dick Alfredo Caballero Rodriguez*
Dick Alfredo Caballero Rodriguez
a/k/a Alfr3d Beats

</div>

**EXHIBIT – P-0023**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**No.: 9:25-cv-80338-Dimitrouleas/Reinhart**

JACK D. HERNANDEZ d/b/a OCEAN VIBES
MUSIC PUBLISHING, and DICK ALFREDO
CABALLERO   RODRIGUEZ   a/k/a   ALFR3D
BEATS,

                Plaintiffs,

     v.

UMG RECORDINGS, INC. d/b/a UNIVERSAL
MUSIC   GROUP   d/b/a   UNIVERSAL   MUSIC
LATINO, CAROLINA   GIRALDO   NAVARRO
a/k/a KAROL G, EDWIN VASQUEZ VEGA a/k/a
MALDY, MARVIN   HAWKINS   RODRIGUEZ
a/k/a DJ MAFF, JULIO   MANUEL   GONZALEZ
TAVAREZ a/k/a LENNY TAVEREZ, and JUSTIN
QUILES,

                Defendants.

_____/

**DEFENDANTS' RESPONSES TO PLAINTIFFS'**
**FIRST REQUESTS FOR PRODUCTION**

       Defendants UMG Recordings, Inc. ("UMG"), Carolina Giraldo Navarro *p/k/a* "Karol G",

and Marvin Hawkins Rodriguez *p/k/a* "DJ Maff" (collectively, "Defendants") respond to the First

Set of Requests for Production of Documents served by plaintiffs Jack D. Hernandez *d/b/a* Ocean

Vibes Music Publishing and Dick Alfredo Caballero Rodriguez a/k/a Alfr3d Beats ("Plaintiffs")

on December 2, 2025.[1]  Defendants will produce responsive, non-objectionable documents by

January 8, 2026, subject to a mutually acceptable protective order regarding confidentiality.

---

[1] Plaintiffs served these requests upon Defendants without specifying which documents are sought
from which Defendant.  As a result, these responses and objections are asserted on behalf of
Defendants.

**REQUEST FOR PRODUCTION NO. 1:**

All documents identifying every individual involved in the creation, composition, arrangement, production, recording, engineering, editing, mixing, or mastering of the musical composition and sound recording known as "Gatúbela."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

Defendants object to this Request as overly broad and unduly burdensome including to the extent it seeks "documents identifying every individual" involved with the "composition and sound recording." Defendants further object to this Request as vague and ambiguous including to the extent it seeks unspecified "documents identifying every individual." Subject to and without waiving these objections, Defendants will produce documents sufficient to identify the individual who created the beat—including the allegedly infringing riff melody or chord progression—for "Gatúbela," subject to a mutually acceptable protective order regarding confidentiality.

**REQUEST FOR PRODUCTION NO. 2:**

All DAW project files, session files, stems, multitracks, exports, drafts, demos, MIDI files, Fruity Loops files, and all associated audio or project materials relating to the creation, development, or revision of "Gatúbela."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all files and materials relating to the creation, development, or revision of "Gatúbela." Defendants further object to this Request as vague and ambiguous including to the extent it seeks unspecified and undefined "associated audio or project materials." Subject to and without waiving these objections, Defendants will produce audio or project files evidencing that DJ Maff

independently created the beat—including the allegedly infringing riff melody or chord progression—for "Gatúbela," subject to a mutually acceptable protective order regarding confidentiality.

**REQUEST FOR PRODUCTION NO. 3:**

All communications among any of the Defendants regarding the composition, beat-making, arrangement, recording, editing, mixing, mastering, revision, publishing, or release of "Gatúbela."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all communications "regarding the composition, beat-making, arrangement, recording, editing, mixing, mastering, revision, publishing, or release of 'Gatúbela.'" Defendants further object to this Request as vague and ambiguous with respect to what documents it is requesting. Defendants further object to this Request on the grounds that it seeks confidential and proprietary business information. Subject to and without waiving these objections, Defendants will produce communications among Defendants regarding the beat—including the allegedly infringing riff melody or chord progression—for "Gatúbela," subject to a mutually acceptable protective order regarding confidentiality.

**REQUEST FOR PRODUCTION NO. 4:**

All communications with any third-party producer, sound designer, loop-maker, sample creator, engineer, musician, or collaborator considered or used in the creation of "Gatúbela."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all communications with "any third-party producer, sound designer, loop-maker,

sample creator, engineer, musician, or collaborator." Defendants further object to this request as vague and ambiguous including to the extent it seeks communications with individuals who were "considered or used." Defendants further object to this Request on the grounds that it seeks confidential and proprietary business information. Subject to and without waiving these objections, Defendants will produce communications with third parties regarding the beat— including the allegedly infringing riff melody or chord progression—for "Gatúbela," subject to a mutually acceptable protective order regarding confidentiality.

**REQUEST FOR PRODUCTION NO. 5:**

All agreements, contracts, producer agreements, split sheets, work-for-hire agreements, invoices, or author -or producer- related documentation relating to the creation or ownership of "Gatúbela."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

Defendants object to this Request to the extent it seeks disclosure of confidential and proprietary contractual terms that are irrelevant to Plaintiffs' copyright infringement allegations. Subject to the foregoing objection, Defendants will produce redacted copies of responsive documents, subject to a mutually acceptable protective order regarding confidentiality.

**REQUEST FOR PRODUCTION NO. 6:**

All documents showing the timeline for creation of "Gatúbela," including scheduling documents, session logs, internal notes, version histories, draft dates, and metadata timestamps.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all documents "showing the timeline for creation," including "scheduling documents, session logs, internal notes, version histories, draft dates, and metadata timestamps." Defendants

further object to this Request as vague and ambiguous including to the extent it seeks an undefined "timeline for creation." Subject to and without waiving these objections, Defendants will produce documents evidencing that DJ Maff independently created the beat—including the allegedly infringing riff melody or chord progression—for "Gatúbela" before Plaintiffs published "Punto G" (the "Instrumental"), subject to a mutually acceptable protective order regarding confidentiality.

**REQUEST FOR PRODUCTION NO. 7:**

All documents showing whether any Defendant accessed, listened to, viewed, downloaded, copied, reviewed, or otherwise encountered Plaintiffs' Work "Punto G."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

Defendants object to this Request as vague and ambiguous with respect to what documents it is requesting. Subject to and without waiving this objection, Defendants state that they did not access, listen to, view, download, copy, review, or otherwise encounter the Instrumental before writing and composing "Gatúbela."

**REQUEST FOR PRODUCTION NO. 8:**

All communications comparing "Gatúbela" to "Punto G," discussing similarity between the two, or referring Plaintiffs' work in any way.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

Defendants object to this Request to the extent it seeks information protected by the attorney-client privilege, work-product privilege, or any other applicable privilege. Defendants further object to this Request as overly broad and unduly burdensome to the extent it seeks all communications "comparing" works, "discussing similarity," or "referring [to a] work in any way." Defendants further object to this Request as vague and ambiguous including to the extent

it seeks communications "comparing" works, "discussing similarity," or "referring [to a] work in any way."  Subject to and without waiving these objections, Defendants state that, other than the expert reports that they already produced in discovery, Defendants do not possess any non-privileged documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 9**:

All internal or external musicological analyses, expert evaluations, forensic reviews, comparisons, or technical assessments relating to "Gatúbela."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9**:

Defendants have already produced, or will produce, all non-privileged documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 10**:

All royalty statements, revenue summaries, financial reports, profit statements, earnings documents, accounting documents, and monetary breakdowns relating to "Gatúbela."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10**:

Defendants object to this Request as vague and ambiguous with respect to the phrases "accounting documents" and "monetary breakdowns." Subject to and without waiving this objection, Defendants will produce documents evidencing the revenues generated by "Gatúbela," subject to a mutually acceptable protective order regarding confidentiality.

**REQUEST FOR PRODUCTION NO. 11**:

All marketing, promotional, advertising, public-relations, or media documents relating to "Gatúbela."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11**:

Defendants object to this Request as overly broad and unduly burdensome.  Marketing is

irrelevant to the parties' claims and defenses in this case. Defendants further object to this Request as vague and ambiguous including to the extent it seeks unspecified and undefined "marketing, promotional, advertising, public-relations, or media documents." Defendants further object to this Request on the grounds that it seeks confidential and proprietary business information. Defendants will not produce documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 12:**

All communications with digital streaming platforms (including Spotify, Apple Music, YouTube, Amazon Music, Tidal, Deezer, TikTok, Meta, and others) regarding "Gatúbela."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

Based upon reasonable investigation, Defendants do not possess any documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 13:**

All documents identifying or describing any person or company involved in distributing, licensing, promoting, monetizing, or otherwise handing the commercial exploitation of "Gatúbela."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all documents "identifying or describing any person or company." Defendants further object to this Request as vague and ambiguous including to the extent it seeks all unspecified documents "identifying" or "describing" "any person or company" involved in undefined "distributing, licensing, promoting, monetizing, or otherwise handing the commercial exploitation of 'Gatúbela.'" Defendants further object to this Request on the grounds that it seeks confidential and proprietary business information. Defendants will not produce documents responsive to this

Request.

**REQUEST FOR PRODUCTION NO. 14:**

    All documents relating to any past copyright or intellectual property disputes involving any Defendant within the past ten (10) days.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

    Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all documents relating to any copyright or intellectual property disputes involving any Defendant "within the past ten (10) days." Defendants further object to this Request as vague and ambiguous including to the extent it seeks unspecific "copyright or intellectual property disputes." Defendants further object to this Request on the grounds that it seeks documents not relevant to any claim or defense raised in this Action and proportional to the needs of this Action, as limited by and required under Fed. R. Civ. P. 26(b)(1). Specifically, Plaintiffs seek documents concerning "any" "copyright or intellectual property disputes." Defendants further object to this Request on the grounds that it seeks confidential and proprietary business information. Defendants object to this Request as seeking information protected by the attorney-client privilege, work-product privilege, or any other applicable privilege. Defendants further object to this Request to the extent it seeks confidential and proprietary business information. Defendants will not produce documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 15:**

    All documents supporting, evidencing, or relating to any affirmative defense asserted by Defendants in this action.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

    Defendants object to this Request as seeking information protected by the attorney-client

privilege, work-product privilege, or any other applicable privilege. Defendants further object to this Request to the extent it seeks confidential and proprietary business information. Subject to the foregoing objections, Defendants will produce all non-privileged, responsive documents that can be located after diligent search and reasonable inquiry, subject to a mutually acceptable protective order regarding confidentiality.

**REQUEST FOR PRODUCTION NO. 16:**

All documents describing the contributions, musical work, technical work, or role of Marvin Hawkins Rodriguez a/k/a DJ Maff in creating "Gatúbela."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all documents describing "contributions, musical work, technical work, or role" of DJ Maff. Defendants further object to this Request as vague and ambiguous including to the extent it seeks documents making unspecified descriptions of undefined "contributions, musical work, technical work, or role" of DJ Maff. Defendants object to this Request as seeking information protected by the attorney-client privilege, work-product privilege, or any other applicable privilege. Subject to and without waiving these objections, Defendants will produce documents evidencing that DJ Maff independently created the beat—including the allegedly infringing riff melody or chord progression—for "Gatúbela" before Plaintiffs published the Instrumental, subject to a mutually acceptable protective order regarding confidentiality.

**REQUEST FOR PRODUCTION NO. 17:**

All documents identifying or describing all musical, technical, creative, engineering, programming, or production work performed by DJ Maff on behalf or for Karol G or UMG.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17**:

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all documents identifying or describing "all musical, technical, creative, engineering, programming, or production work performed by DJ Maff on behalf or for Karol G or UMG." Defendants further object to this Request as vague and ambiguous including to the extent it seeks documents making undefined identifications and/or descriptions of unspecified "musical, technical, creative, engineering, programming, or production work." Defendants further object to this Request on the grounds that it seeks documents not relevant to any claim or defense raised in this Action and proportional to the needs of this Action, as limited by and required under Fed. R. Civ. P. 26(b)(1). Specifically, Plaintiffs seek documents concerning "work performed by DJ Maff on behalf or for Karol G or UMG," regardless of its relation to Gatúbela. Defendants further object to this Request to the extent it seeks confidential and proprietary business information. Defendants will not produce documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 18**:

All documents identifying any uncredited contributors to beats, loops, melodies, samples, sound design, arrangement, or any musical element used in "Gatúbela."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18**:

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all documents "identifying any uncredited contributors to beats, loops, melodies, samples, sound design, arrangement, or any musical element used." Defendants further object to this Request to the extent it seeks all documents making undefined identifications if "any uncredited contributors" to unspecified "beats, loops, melodies, samples, sound design, arrangement, or any musical element." Defendants further object to this Request to the extent it

seeks confidential and proprietary business information.  Subject to and without waiving these objections, Defendants will produce documents evidencing that DJ Maff independently created the beat—including the allegedly infringing riff melody or chord progression—for "Gatúbela" before Plaintiffs published the Instrumental, subject to a mutually acceptable protective order regarding confidentiality.

**REQUEST FOR PRODUCTION NO. 19**:

All documents relating to the decision-making process for determining songwriting, production, or authorship credits for "Gatúbela."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19**:

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all documents relating to the "decision-making process for determining . . . credits." Defendants further object to this Request as vague and ambiguous including to the extent it seeks documents relating to an undefined "decision-making process."  Defendants further object to this Request to the extent it seeks confidential and proprietary business information.  Defendants will not produce documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 20**:

All drafts, demos, alternate versions, early beat sketches, session files, mockups, test renders, or early creative materials generated by DJ Maff or any other Defendant for "Gatúbela."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 20**:

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks "[a]ll drafts, demos, alternate versions, early beat sketches, session files, mockups, test renders, or early creative materials generated by DJ Maff or any other Defendant for 'Gatúbela.'"  Defendants further object to this Request as vague and ambiguous including to the

extent it seeks undefined "drafts, demos, alternate versions, early beat sketches, session files, mockups, test renders, or early creative materials." Defendants further object to this Request to the extent it seeks confidential and proprietary business information. Subject to and without waiving these objections, Defendants will produce audio and project files sufficient to establish that DJ Maff independently created the beat—including the allegedly infringing riff melody or chord progression—for "Gatúbela" before Plaintiffs published the Instrumental, subject to a mutually acceptable protective order regarding confidentiality.

**REQUEST FOR PRODUCTION NO. 21:**

All documents identifying how DJ Maff became involved in the creation of "Gatúbela," including communications describing who hired, contacted, or recruited him.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all documents "identifying how DJ Maff became involved in the creation of 'Gatúbela', including communications describing who hired, contacted, or recruited him." Defendants further object to this Request as vague and ambiguous including to the extent it seeks unspecified documents identifying "how DJ Maff became involved in the creation" of Gatúbela, as well as communications making undefined descriptions of "who hired, contracted, or recruited" DJ Maff. Defendants will not produce documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 22:**

All documents identifying or describing the involvement of (if any) of Ovy on the Drums (Daniel Echavarria Oviedo) in the composition, production, arrangement, or development of "Gatúbela."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 22**:

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all documents "identifying or describing the involvement" of "Ovy on the Drums." Defendants further object to this Request as vague and ambiguous including to the extent it seeks unspecified documents making undefined identifications and/or descriptions of undefined "involvement." Subject to and without waiving these objections, Defendants will produce communications with Ovy on the Drums regarding the beat—including the allegedly infringing riff melody or chord progression—for "Gatúbela," subject to a mutually acceptable protective order regarding confidentiality.

**REQUEST FOR PRODUCTION NO. 23**:

All documents describing or identifying the specific contributions of each claimant listed on the Copyright Registration PA 2-511-963 for "Gatúbela" or any other Copyright Registration regarding "Gatúbela" that is registered in the U.S. Copyright Office from January 1, 2021 to December 1, 2025.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 23**:

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all documents describing or identifying "specific contributions of each claimant" to a copyright. Defendants further object to this Request as vague and ambiguous including to the extent it seeks unspecified documents making undefined identifications and/or descriptions of undefined "specific contributions." Defendants will not produce documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 24**:

All documents identifying all UMG A&R personnel who reviewed, supervised, approved,

or evaluated "Gatúbela."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 24:**

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all documents "identifying all UMG A&R personnel who reviewed, supervised, approved, or evaluated 'Gatúbela.'" Defendants further object to this Request as vague and ambiguous including to the extent it seeks unspecified documents making undefined identifications of undefined "A&R personnel" who purportedly conducted undefined reviews, supervision, approval and/or evaluation. Subject to and without waiving these objections, Defendants state that, based upon reasonable investigation, Defendants do not possess any documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 25:**

All contracts, agreements, drafts, correspondence, licensing documents, or production agreements relating to the creation, production, authorship, or ownership of "Gatúbela."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 25:**

Defendants object to this Request to the extent it seeks disclosure of confidential and proprietary contractual terms that are irrelevant to Plaintiffs' copyright infringement allegations. Subject to the foregoing objection, Defendants will produce redacted copies of responsive binding agreements, subject to a mutually acceptable protective order regarding confidentiality.

**REQUEST FOR PRODUCTION NO. 26:**

All contracts, invoices, budgets, agreements, or documentation relating to the production of the "Gatúbela" music video.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**

Defendants object to this Request as overly broad and unduly burdensome. Defendants

further object to this Request as vague and ambiguous including to the extent it seeks undefined "contracts, invoices, budgets, agreements, or documentation." Defendants further object to this Request on the grounds that it seeks documents not relevant to any claim or defense raised in this Action and proportional to the needs of this Action, as limited by and required under Fed. R. Civ. P. 26(b)(1). The "Gatúbela" music video is irrelevant to the parties' claims and defenses. Defendants will not produce documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 27:**

All revenue documents relating to "Gatúbela," including revenue from streaming, downloads, licensing, synchronization, performance royalties, and any other monetization across the entire world.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

Defendants object to this Request as vague and ambiguous and seeks confidential and proprietary information. Subject to and without waiving these objections, Defendants will produce documents evidencing the revenues generated by "Gatúbela," subject to a mutually acceptable protective order regarding confidentiality.

**REQUEST FOR PRODUCTION NO. 28:**

All documents showing royalty splits, division of royalties, allocation of revenue, royalty checks, music performance societies payments collected and paid by and from BMI, ASCAP, SESAC, or payment structures among all persons credited or involved in "Gatúbela."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

Defendants object to this Request as overly broad and unduly burdensome. Defendants further object to this Request as vague and ambiguous with respect to what documents it is requesting. Subject to and without waiving these objections, Defendants will produce documents

evidencing the revenues generated by "Gatúbela," subject to a mutually acceptable protective order regarding confidentiality.

**REQUEST FOR PRODUCTION NO. 29:**

All internal accounting records, payment ledgers, royalty disbursement logs, or financial documents showing payments made to any Defendant or third party for "Gatúbela."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 29:**

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all "internal accounting records, payment ledgers, royalty disbursement logs, or financial documents showing payments." Defendants further objects to this Request as vague and ambiguous it seeks documents "showing payments," including to undefined "third part[ies]." Subject to and without waiving these objections, Defendants will produce redacted copies of agreements relating to ownership of "Gatúbela" and documents evidencing the revenues generated by "Gatúbela," subject to a mutually acceptable protective order regarding confidentiality.

**REQUEST FOR PRODUCTION NO. 30:**

All communications between Karol G, DJ Maff, UMG, producers, engineers, managers, studios, or A&R staff regarding the creation, development, revision, approval, or release for "Gatúbela."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 30:**

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all "communications between Karol G, DJ Maff, UMG, producers, engineers, managers, studios, or A&R staff regarding the creation, development, revision, approval, or release for 'Gatúbela.'" Defendants further object to this Request as vague and ambiguous with respect to what documents it is requesting. Defendants further object to this Request on the grounds that

it seeks documents not relevant to any claim or defense raised in this Action and proportional to the needs of this Action, as limited by and required under Fed. R. Civ. P. 26(b)(1). Subject to and without waiving these objections, Defendants will produce communications regarding the creation and development of the beat—including the allegedly infringing riff melody or chord progression—for "Gatúbela," subject to a mutually acceptable protective order regarding confidentiality.

**REQUEST FOR PRODUCTION NO. 31:**

All reference tracks, playlists, influence materials, inspirational sources, or stylistic guides used or considered in creating "Gatúbela."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 31:**

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all "reference tracks, playlists, influence materials, inspirational sources, or stylistic guides used or considered in creating 'Gatúbela.'" Defendants further object to this Request as vague and ambiguous including to the extent it seeks undefined and unspecified "reference tracks, playlists, influence materials, inspirational sources, or stylistic guides." "used or considered" in an unspecified manner. Defendants will not produce documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 32:**

All documents showing whether any Defendant accessed Alfr3d Beats' Youtube Channel or listened to "Punto G" by any digital means or digital formats.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 32:**

Defendants did not access the Instrumental by any digital means before writing and composing "Gatúbela."

**REQUEST FOR PRODUCTION NO. 33:**

All internal communications discussing or acknowledging similarity between "Gatúbela" and "Punto G."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 33:**

Defendants object to this Request to the extent it seeks information protected by the attorney-client privilege, work-product privilege, or any other applicable privilege. Defendants further object to this Request as overly broad and unduly burdensome on the grounds that it seeks all communications "discussing or acknowledging similarity" between works. Defendants further object to this Request as vague and ambiguous including to the extent it seeks communications "discussing or acknowledging similarity" between works. Defendants will not produce documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 34:**

All early beat drafts, stems, DAW files, melodic sketches, rhythmic drafts, harmonic drafts, or other musical-development materials relating to the creation of "Gatúbela."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 34:**

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all "early beat drafts, stems, DAW files, melodic sketches, rhythmic drafts, harmonic drafts, or other musical-development materials relating to the creation of 'Gatúbela.'" Defendants further object to this Request as vague and ambiguous including to the extent it seeks undefined and unspecified "early beat drafts, stems, DAW files, melodic sketches, rhythmic drafts, harmonic drafts, or other musical-development materials." Subject to and without waiving these objections, Defendants will produce audio and project files sufficient to establish that DJ Maff independently created the beat—including the allegedly infringing riff melody or chord progression—for

"Gatúbela" before Plaintiffs published the Instrumental, subject to a mutually acceptable protective order regarding confidentiality.

**REQUEST FOR PRODUCTION NO. 35:**

All similarity analyses, comparisons, assessments, or discussions comparing "Gatúbela" to "Punto G."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 35:**

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all "similarity analyses, comparisons, assessments, or discussions comparing 'Gatúbela' to 'Punto G.'" Defendants further object to this Request as vague and ambiguous including to the extent it seeks undefined and unspecified "similarity analyses, comparisons, assessments, or discussions." Subject to and without waiving these objections, Defendants state that, other than the expert reports that they already produced in discovery, Defendants do not possess any non-privileged documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 36:**

All voice notes, notebooks, lyric drafts, idea journals, melody books, or creative notes relating to the creation of "Gatúbela."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 36:**

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all voice notes, notebooks, lyric drafts, idea journals, melody books, or creative notes relating to the creation of 'Gatúbela.'" Defendants further object to this Request as vague and ambiguous including to the extent it seeks undefined and unspecified "voice notes, notebooks, lyric drafts, idea journals, melody books, or creative notes." Subject to and without waiving these objections, Defendants will produce documents evidencing that DJ Maff independently created

the beat—including the allegedly infringing riff melody or chord progression—for "Gatúbela" before Plaintiffs published the Instrumental, subject to a mutually acceptable protective order regarding confidentiality.

**REQUEST FOR PRODUCTION NO. 37:**

All discussions discussing modifying any part of "Gatúbela" due to potential similarity to another work.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 37**

After reasonable investigation, Defendants state that they do not possess any documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 38:**

All loops, samples, MIDI files, sample packs, VST presets, external sound sources, Fruity Loops files, purchased sound content, or third-party musical material used in creating "Gatúbela."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 38:**

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all "loops, samples, MIDI files, sample packs, VST presets, external sound sources, Fruity Loops files, purchased sound content, or third-party musical material." Defendants further object to this Request as vague and ambiguous including to the extent it seeks all "loops, samples, MIDI files, sample packs, VST presets, external sound sources, Fruity Loops files, purchased sound content, or third-party musical material." Subject to and without waiving these objections, Defendants will produce communications, audio files, and project files evidencing that DJ Maff independently created the beat—including the allegedly infringing riff melody or chord progression—for "Gatúbela" before Plaintiffs published the Instrumental, subject to a mutually acceptable protective order regarding confidentiality.

**REQUEST FOR PRODUCTION NO. 39**:

All group chats, messaging threads, or communications among producers, engineers, or collaborators referencing "Punto G" by name or implication.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 39**:

After reasonable investigation, Defendants state that they do not possess any documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 40**

All documents identifying the origin of every melodic, harmonic, rhythmic, sonic, or structural element used in "Gatúbela."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 40**:

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all "documents identifying the origin of every melodic, harmonic, rhythmic, sonic, or structural element used." Defendants further object to this Request as vague and ambiguous including to the extent it seeks unspecified "documents identifying the origin of every melodic, harmonic, rhythmic, sonic, or structural element used." Defendants will not produce documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 41**

All documents, emails, messages, or communications among UMG executives discussing Plaintiffs' copyright claim relating to "Gatúbela."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 41**:

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all "documents, emails, messages, or communications." Defendants further object to this Request as vague and ambiguous including to the extent it seeks undefined and unspecified

"documents, emails, messages, or communications." Defendants further object to this Request to the extent it seeks information protected by the attorney-client privilege, work-product privilege, or any other applicable privilege, including to the extent it seeks "documents, emails, messages, or communications among UMG executives discussing Plaintiffs' copyright claim." Defendants further object to this Request on the grounds that it seeks confidential and proprietary business information. Defendants will not produce documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 42**

All internal UMG investigations, evaluations, analyses, or discussions concerning Plaintiffs' copyright infringement allegations.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 42**:

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all "internal UMG investigations, evaluations, analyses, or discussions." Defendants further object to this Request as vague and ambiguous including to the extent it seeks undefined and unspecified "investigations, evaluations, analyses, or discussions." Defendants further object to this Request to the extent it seeks information protected by the attorney-client privilege, work-product privilege, or any other applicable privilege, including to the extent it seeks "internal UMG investigations, evaluations, analyses, or discussions concerning Plaintiffs' copyright infringement allegations." Defendants further object to this Request on the grounds that it seeks confidential and proprietary business information. Defendants will not produce documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 43**

All communications between UMG and Karol G's management, representatives, legal counsel, or team regarding Plaintiffs' claim or "Punto G."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 43**:

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all communications "regarding Plaintiffs' claim or 'Punto G.'" Defendants further object to this Request to the extent it seeks information protected by the attorney-client privilege, work-product privilege, or any other applicable privilege, including to the extent it seeks communications with "Karol G's management, representatives, legal counsel, or team." Defendants further object to this Request on the grounds that it seeks confidential and proprietary business information. Defendants will not produce documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 44**

All communications between UMG and DJ Maff regarding Plaintiffs' claim, including any discussion of potential access to "Punto G."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 44**:

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all communications "regarding Plaintiffs' claim, including any discussion of potential access to 'Punto G.'" Defendants further object to this Request to the extent it seeks information protected by the attorney-client privilege, work-product privilege, or any other applicable privilege, including to the extent it seeks communications between "UMG and DJ Maff regarding Plaintiff's claim, including any discussion of potential access to 'Punto G.'" Defendants further object to this Request on the grounds that it seeks confidential and proprietary business information. After reasonable investigation, Defendants state that they do not possess any non-privileged documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 45**

All communications between UMG and any publishing company (including Sony/ATV,

Warner Chappell, Kobalt, or any other publisher) regarding Plaintiffs' claim or potential similarity to "Punto G."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 45:**

After reasonable investigation, Defendants state that they do not possess any documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 46**

All internal UMG assessments, analyses, or reports concerning potential legal exposure, financial exposure, business risk, public-relations impact, or copyright risk related to Plaintiffs' claim.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 46:**

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all "UMG assessments, analyses, or reports concerning potential legal exposure, financial exposure, business risk, public-relations impact, or copyright risk related to Plaintiffs' claim." Defendants further object to this Request as vague and ambiguous including to the extent it seeks undefined and unspecified "assessments, analyses, or reports concerning potential legal exposure, financial exposure, business risk, public-relations impact, or copyright risk." Defendants further object to this Request to the extent it seeks information protected by the attorney-client privilege, work-product privilege, or any other applicable privilege, including to the extent it seeks documents "related to Plaintiffs' claim." Defendants further object to this Request on the grounds that it seeks confidential and proprietary business information. Subject to and without waiving these objections, Defendants state that, other than the expert reports that they already produced in discovery, Defendants do not possess any non-privileged documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 47**

All public-relations plans, talking points, internal or external communications strategies, press guidance, or crisis-management materials relating to Plaintiffs' claim.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 47:**

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all "public-relations plans, talking points, internal or external communications strategies, press guidance, or crisis-management materials relating to Plaintiffs' claim." Defendants further object to this Request as vague and ambiguous including to the extent it seeks undefined and unspecified "public-relations plans, talking points, internal or external communications strategies, press guidance, or crisis-management materials." Defendants further object to this Request to the extent it seeks information protected by the attorney-client privilege, work-product privilege, or any other applicable privilege, including to the extent it seeks documents "public-relations plans, talking points, internal or external communications strategies, press guidance, or crisis-management materials relating to Plaintiffs' claim." Defendants further object to this Request on the grounds that it seeks confidential and proprietary business information. Defendants will not produce documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 48**

All internal communications among any Defendant discussing similarity between "Gatúbela" and any preexisting musical work, including "Punto G."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 48:**

After reasonable investigation, Defendants state that they do not possess any documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 49**

All documents showing whether any Defendant accessed, viewed, or visited the ALFR3D Beats Youtube channel between January 1, 2021 and the date of production.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 49:**

After reasonable investigation, Defendants state that they did not access or listen to the Instrumental before writing and composing "Gatúbela" and that they do not possess any documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 50**

All Instagram direct messages, private messages, comments, reels, screenshots, voice notes, communications, or posts by DJ Maff referencing the Alfr3d Beats, "Punto G," or "Gatúbela."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 50:**

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all "Instagram direct messages, private messages, comments, reels, screenshots, voice notes, communications, or posts by DJ Maff." Defendants further object to this Request as vague and ambiguous including to the extent it seeks unspecified "direct messages, private messages, comments, reels, screenshots, voice notes, communications, or posts" which make unspecified "referenc[es]." Subject to and without waiving these objections, Defendants state that they do not possess any non-privileged communications referencing Alfr3d Beats or the Instrumental. Defendants will not produce documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 51**

All Whatsapp messages, chats, group chats, call logs, backups, exported-chats, voice notes, or communications made or received by DJ Maff referencing ALFR3D Beats, "Punto G," or

"Gatúbela."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 51:**

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all "Instagram direct messages, private messages, comments, reels, screenshots, voice notes, communications, or posts by DJ Maff." Defendants further object to this Request as vague and ambiguous including to the extent it seeks unspecified "direct messages, private messages, comments, reels, screenshots, voice notes, communications, or posts" which make unspecified "referenc[es]." Subject to and without waiving these objections, Defendants state that they do not possess any non-privileged communications referencing Alfr3d Beats or the Instrumental. Defendants will not produce documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 52**

All emails, attachments, links, or file transfers sent by DJ Maff or Karol G, her management, A&R staff, UMG personnel, or collaborators containing beats, session files, or materials referencing ALFR3D Beats or "Punto G."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 52:**

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all "emails, attachments, links, or file transfers . . . containing beats, session files, or materials referencing ALFR3D Beats or 'Punto G.'" Defendants further object to this Request as vague and ambiguous including to the extent it seeks unspecified "beats, session files, or materials" making undefined "referenc[es]." Subject to and without waiving these objections, Defendants state that they do not possess any non-privileged communications referencing Alfr3d Beats or the Instrumental.

**REQUEST FOR PRODUCTION NO. 53**

All copyright registrations, applications, drafts, deposit copies, communications with the U.S. Copyright Office, musicologist reports, copyright analyses, or expert reports relating to "Gatúbela" or to Plaintiffs' Work "Punto G."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 53:**

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all "copyright registrations, applications, drafts, deposit copies, communications with the U.S. Copyright Office, musicologist reports, copyright analyses, or expert reports." Defendants further object to this Request as vague and ambiguous including to the extent that it seeks undefined and unspecified "applications, drafts, deposit copies, communications with the U.S. Copyright Office, musicologist reports, copyright analyses, or expert reports." Defendants further object to this Request as seeking documents in Plaintiffs' possession, custody or control, including to the extent it seeks documents concerning "Plaintiffs' Work."

**REQUEST FOR PRODUCTION NO. 54**

All interview recordings, articles, videos, live streams, podcasts, broadcasts, public statements, or media appearances in which DJ Maff discussed the creation, origin, influences, or production of "Gatúbela."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 54:**

After reasonable investigation, Defendants state that they do not possess any documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 55**

All documents showing musical influences, genres, artists, or prior works referenced, studied, compared, emulated, or considered during the creation of "Gatúbela."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 55**:

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all "documents showing musical influences, genres, artists, or prior works referenced, studied, compared, emulated, or considered." Defendants further object to this Request as vague and ambiguous including to the extent it seeks unspecified "documents showing musical influences, genres, artists, or prior works referenced, studied, compared, emulated, or considered." Defendants will not produce documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 56**

All notes, voice memos, lyric fragments, melodic ideas, chord ideas, sketches, or creative materials generated during early ideation of "Gatúbela," including deleted or partially deleted files.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 56**:

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all "notes, voice memos, lyric fragments, melodic ideas, chord ideas, sketches, or creative materials generated during early ideation of 'Gatúbela,' including deleted or partially deleted files. Defendants further object to this Request as vague and ambiguous including to the extent it seeks undefined and unspecified "notes, voice memos, lyric fragments, melodic ideas, chord ideas, sketches, or creative materials" during an undefined "early ideation" period. Subject to and without waiving these objections, Defendants will produce documents evidencing that DJ Maff independently created the beat—including the allegedly infringing riff melody or chord progression—for "Gatúbela" before Plaintiffs published the Instrumental, subject to a mutually acceptable protective order regarding confidentiality.

**REQUEST FOR PRODUCTION NO. 57**

All internal discussions or communications in which Defendants described "Gatúbela" as

being "inspired by," "similar to" "based on" or "in the style of" any other track, including Plaintiffs' Work "Punto G."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 57**:

After reasonable investigation, Defendants state that they do not possess any documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 58**

All communications in which any Defendant expressed concern that "Gatúbela" sounded too similar to another work, including any discussion of altering beat, melody, or arrangement.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 58**:

After reasonable investigation, Defendants state that they do not possess any documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 59**

All early lyric sheets, topline ideas, melodic drafts, humming tracks, or voice memos created during the songwriting process for "Gatúbela."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 59**:

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all "early lyric sheets, topline ideas, melodic drafts, humming tracks, or voice memos created during the songwriting process for 'Gatúbela.'" Defendants further object to this Request as vague and ambiguous including to the extent it seeks undefined and unspecified "early lyric sheets, topline ideas, melodic drafts, humming tracks, or voice memos." Subject to and without waiving these objections, Defendants will produce documents evidencing that DJ Maff independently created the beat—including the allegedly infringing riff melody or chord progression—for "Gatúbela" before Plaintiffs published the Instrumental, subject to a mutually

acceptable protective order regarding confidentiality.

**REQUEST FOR PRODUCTION NO. 60**

All documents identifying loops, samples, VST plugins, presets, MIDI files, sample libraries, music production software, purchased content, or sound packs used in the creation of "Gatúbela."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 60**:

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks documents "identifying loops, samples, VST plugins, presets, MIDI files, sample libraries, music production software, purchased content, or sound packs." Defendants further object to this Request as vague and ambiguous including to the extent it seeks undefined and unspecified "loops, samples, VST plugins, presets, MIDI files, sample libraries, music production software, purchased content, or sound packs." Defendants will not produce documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 61**

All computer forensic data, including file-creation timestamps, file-modification timestamps, project-version metadata, and DAW log files for any materials used in creating "Gatúbela."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 61**:

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all "computer forensic data, including file-creation timestamps, file-modification timestamps, project-version metadata, and DAW log files for any materials used." Defendants further object to this vague and ambiguous including to the extent it seeks undefined "computer forensic data." Defendants further object to this Request on the grounds that it seeks documents

not relevant to any claim or defense raised in this Action and proportional to the needs of this Action, as limited by and required under Fed. R. Civ. P. 26(b)(1). Specifically, Plaintiffs seek "[a]ll computer forensic data," regardless of whether it relates to the claims and/or defenses in this Action. Subject to and without waiving these objections, Defendants will produce documents evidencing that DJ Maff independently created the beat—including the allegedly infringing riff melody or chord progression—for "Gatúbela" before Plaintiffs published the Instrumental, subject to a mutually acceptable protective order regarding confidentiality.

**REQUEST FOR PRODUCTION NO. 62**

All drafts or early versions of "Gatúbela" containing greater similarity to Plaintiffs' Work "Punto G" than the commercially released version.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 62:**

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks "drafts or early versions" "containing greater similarity." Defendants further object to this vague and ambiguous including to the extent it seeks undefined "greater similarity." Defendants will not produce documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 63**

All communications referencing ALFR3D Beats, his Youtube channel, his beat style, his production methods, or whether he should be contacted, credited, or compensated.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 63:**

After reasonable investigation, Defendants state that they do not possess any documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 64**

All A&R review documents, evaluation notes, feedback memos, ratings, comments, or

internal assessments regarding the "Gatúbela" beat or composition.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 64:**

After reasonable investigation, Defendants state that they do not possess any documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 65**

All draft versions or rejected versions of "Gatúbela" that were not included in the final album release.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 65:**

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all "draft versions or rejected versions" of Gatúbela.  Defendants will not produce documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 66**

All communications in which Defendants shared Youtube links, TikTok clips, Instagram beats, or other online content for the purpose of finding a "style" or "direction" for "Gatúbela."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 66:**

After reasonable investigation, Defendants state that they do not possess any documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 67**

All documents identifying or listing all beat submissions made for Karol G's album cycle, including DJ Maff's submissions, to determine whether any resembled "Punto G."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 67:**

After reasonable investigation, Defendants state that they do not possess any documents

responsive to this Request.

**REQUEST FOR PRODUCTION NO. 68**

  All scratch vocals, guide vocals, demo vocals, toplines, or working vocals recorded over any version of the "Gatúbela" beat.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 68:**

  Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all "scratch vocals, guide vocals, demo vocals, toplines, or working vocals recorded over any version of the Gatúbela beat." Defendants further object to this Request as vague and ambiguous including to the extent that it seeks all undefined or unspecified "scratch vocals, guide vocals, demo vocals, toplines, or working vocals." Defendants further object on the grounds that the vocals for "Gatúbela" are irrelevant to the parties claims and defenses. Defendants will not produce documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 69**

  All A&R or producer feedback instructing changes to the beat, melody, arrangement, or structure to make "Gatúbela" sound more like another work (including "Punto G").

**RESPONSE TO REQUEST FOR PRODUCTION NO. 69:**

  After reasonable investigation, Defendants state that they do not possess any documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 70**

  All audio or video recordings capturing any part of the studio sessions, discussions, or creative meetings relating to the creation of "Gatúbela."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 70:**

  Defendants object to this Request as overly broad and unduly burdensome on the grounds

that it seeks all "audio or video recordings capturing any part of the studio sessions, discussions, or creative meetings." Defendants further object to this Request as vague and ambiguous including to the extent it seeks all documents "capturing any [undefined] part" of any undefined "part of the studio sessions, discussions, or creative meetings." Defendants will not produce documents responsive to this Request.

## REQUEST FOR PRODUCTION NO. 71

All communications containing references to potential copyright liability, "getting sued," "copyright risk," "legal exposure," "similar melody," "same beat," or similar risk-related statements about "Gatúbela."

## RESPONSE TO REQUEST FOR PRODUCTION NO. 71:

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks undefined communications containing undefined "references" to undefined and unspecified" "potential copyright liability, 'getting used,' 'copyright risk,' 'egal exposure,' 'similar melody,' 'same beat,' or similar risk-related statements." Defendants further object to this Request as vague and ambiguous including to the extent it seeks undefined and unspecified "potential copyright liability, 'getting used,' 'copyright risk,' 'egal exposure,' 'similar melody,' 'same beat,' or similar risk-related statements." Defendants will not produce documents responsive to this Request.

## REQUEST FOR PRODUCTION NO. 72

All communications discussing whether DJ Maff studied, followed, or modeled his production style, creative approach, drum patterns, bass arrangements, or melodic structures after ALFR3D Beats.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 72**:

After reasonable investigation, Defendants state that they do not possess any documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 73**

All documents showing the development and evolution of DJ Maff's beat style, melodic style, harmonic structure, or rhythmic patterns leading up to the creation of "Gatúbela."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 73**:

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all "documents showing the development and evolution of DJ Maff's beat style, melodic style, harmonic structure, or rhythmic patterns leading up to the creation of 'Gatúbela.'" Defendants further object to this Request as vague and ambiguous including to the extent it seeks undefined "development and evolution" of undefined "beat style, melodic style, harmonic structure, or rhythmic patterns" in an undefined time period "leading up to the creation of 'Gatúbela.'" Defendants will not produce documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 74**

All communications in which Karol G, UMG, or A&R requested or discussed beats "similar to," "in the style of," or "with the vibe of" another artist or producer, including ALFR3D Beats.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 74**:

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all communications in which "Karol G, UMG, or A&R requested or discussed beats "similar to," "in the style of," or "with the vibe of" another artist or producer." Defendants further object to this Request as vague and ambiguous including to the extent it seeks undefined requests

or discussions concerning undefined "beats" which were purportedly ""similar to," "in the style of," or "with the vibe of," in unspecified ways of other undefined and unspecified "artist[s] or producer[s]." Defendants further object to this Request on the grounds that it seeks documents not relevant to any claim or defense raised in this Action and proportional to the needs of this Action, as limited by and required under Fed. R. Civ. P. 26(b)(1). Specifically, Plaintiffs seek documents concerning beats for works other than Gatúbela which were similar to other unrelated artists or producers. Defendants will not produce documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 75**

All videos, Tiktok posts, Instagram Lives, Stories, Reels, or recordings in which Defendants played early, draft, or alternate versions of "Gatúbela."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 75:**

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all "videos, Tiktok posts, Instagram Lives, Stories, Reels, or recordings in which Defendants played early, draft, or alternate versions of ""Gatúbela.""   Defendants further object to this Request as vague and ambiguous including to the extent it seeks undefined and unspecified "videos, Tiktok posts, Instagram Lives, Stories, Reels, or recordings" concerning undefined "early, draft, or alternative versions" of Gatúbela.  Defendants will not produce documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 76**

All DAW screen recordings, arrangement views, piano-roll screenshots, plugin setups, or production walkthroughs showing the creation of "Gatúbela."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 76:**

Defendants object to this Request as overly broad and unduly burdensome on the grounds

that it seeks all "DAW screen recordings, arrangement views, piano-roll screenshots, plugin setups, or production walkthroughs." Defendants further object to this Request as vague and ambiguous including to the extent it seeks undefined and unspecified "DAW screen recordings, arrangement views, piano-roll screenshots, plugin setups, or production walkthroughs." Defendants will not produce documents responsive to this Request.

## REQUEST FOR PRODUCTION NO. 77

All internal discussions or communications regarding whether songwriting or production credits for "Gatúbela" should be changed, minimized, expanded, altered, reassigned, or concealed.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 77:

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all "discussions or communications regarding whether songwriting or production credits for 'Gatúbela' should be changed, minimized, expanded, altered, reassigned, or concealed." Defendants further object to this Request as vague and ambiguous including to the extent it seeks documents concerning whether credits for Gatúbela "should be changed, minimized, expanded, altered, reassigned, or concealed," in undefined and unspecified manners. Defendants will not produce documents responsive to this Request.

## REQUEST FOR PRODUCTION NO. 78

All metadata, iCloud backups, Google Drive files, Dropbox files, OneDrive files, or other cloud storage materials containing any version, draft, or supportive material relating to the creation of "Gatúbela."

## RESPONSE TO REQUEST FOR PRODUCTION NO. 78:

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all "metadata, iCloud backups, Google Drive files, Dropbox files, OneDrive files, or

other cloud storage materials containing any version, draft, or supportive material." Defendants further object to this Request as vague and ambiguous including to the extent it seeks documents concerning undefined and unspecified "metadata, iCloud backups, Google Drive files, Dropbox files, OneDrive files, or other cloud storage materials" for undefined and unspecified "version[s], draft[s], or supportive material[s]." Defendants will not produce documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 79**

      All documents, communications, or digital logs referencing deletion, destruction, removal, overwriting, or alteration of files relating to the creation of "Gatúbela."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 79:**

      Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all "documents, communications, or digital logs referencing deletion, destruction, removal, overwriting, or alteration of files relating to the creation of 'Gatúbela.'" Defendants further object to this Request as vague and ambiguous including to the extent it seeks undefined and unspecified "digital logs referencing deletion, destruction, removal, overwriting, or alteration of files." Defendants will not produce documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 80**

      All uncompressed or raw audio and video files documenting any portion of the creation of "Gatúbela," including original phone-camera recordings and files containing additional metadata.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 80:**

      Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all "uncompressed or raw audio and video files documenting any portion of the creation of 'Gatúbela,' including original phone-camera recordings and files containing additional

metadata." Defendants further object to this Request as vague and ambiguous including to the extent it seeks undefined and unspecified "uncompressed or raw audio and video files," including unspecified "original phone-camera recordings" and undefined "files containing additional metadata." Subject to and without waiving these objections, Defendants will produce documents and communications evidencing that DJ Maff independently created the beat—including the allegedly infringing riff melody or chord progression—for "Gatúbela" before Plaintiffs published the Instrumental, subject to a mutually acceptable protective order regarding confidentiality.

**REQUEST FOR PRODUCTION NO. 81**

All documents showing whether DJ Maff accessed, viewed, streamed, downloaded, saved, bookmarked, or opened Plaintiffs' track "Punto G" through any digital platform, including Youtube, Spotify, Apple Music, TikTok, Instagram, WhatsApp, email links, web browsers or any file-sharing service.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 81**:

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all "documents showing whether DJ Maff accessed, viewed, streamed, downloaded, saved, bookmarked, or opened Plaintiffs' track "Punto G" through any digital platform." Defendants further object to this Request as vague and ambiguous including to the extent it seeks documents concerning access through "any digital platform[s]," including undefined and unspecified "email links, web browsers or any file-sharing service." Subject to and without waiving this objection, Defendants state that they did not access or listen to the Instrumental before writing and composing "Gatúbela" and that they do not possess any documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 82**

All documents showing whether Youtube recommended, autoplayed, algorithmically suggested, queued, or in any way displayed ALFR3D Beats' content to DJ Maff or any device associated with him.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 82:**

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all "documents showing whether Youtube recommended, autoplayed, algorithmically suggested, queued, or in any way displayed ALFR3D Beats' content to DJ Maff or any device associated with him." Defendants further object to this Request as vague and ambiguous including to the extent it seeks unspecified recommendations, autoplay, algorithmic suggestions, queues or displays "in any way" of unspecified "content" on undefined "device[s]." Defendants further object to this Request on the grounds that it seeks documents not relevant to any claim or defense raised in this Action and proportional to the needs of this Action, as limited by and required under Fed. R. Civ. P. 26(b)(1). Specifically, Plaintiffs seek documents concerning all unspecified content, regardless of its relevance. Defendants will not produce documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 83**

All documents showing whether DJ Maff accessed "Punto G" or ALFR3D Beats' content via private, unlisted, deleted, hidden, or formerly available Youtube links, including browser histories, cached files, device logs, mobile-app histories, or metadata.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 83:**

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all documents concerning whether DJ Maff accessed any of "ALFR3D Beats'

content," including "via private, unlisted, deleted, hidden, or formerly available Youtube links," and all "browser histories, cached files, device logs, mobile-app histories, or metadata." Defendants furth object to this Request as vague and ambiguous including to the extent it seeks undefined and unspecified "ALFR3D Beats' content," undefined and unspecified "private, unlisted, deleted, hidden, or formerly available Youtube links," and undefined and unspecified "browser histories, cached files, device logs, mobile-app histories, or metadata." Subject to and without waiving this objection, Defendants state that they did not access or listen to the Instrumental before writing and composing "Gatúbela" and that they do not possess any documents responsive to this Request.

## REQUEST FOR PRODUCTION NO. 84

All communications in which DJ Maff received, opened, clicked, tapped, previewed, or discussed any link directing to "Punto G," ALFR3D's Youtube Channel, or any webpage containing the track.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 84:

Subject to and without waiving this objection, Defendants state that they did not access or listen to the Instrumental before writing and composing "Gatúbela" and that they do not possess any documents responsive to this Request.

## REQUEST FOR PRODUCTION NO. 85

All forensic digital records – including device logs, mobile logs, cloud backups, Youtube-history exports, Google Takeout archives, browser caches, app data, and deleted-history recovery files- showing whether DJ Maff or anyone acting on his behalf accessed "Punto G" or any ALFR3D Beats content.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 85**:

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all "forensic digital records." Defendants further object to this Request as vague and ambiguous including to the extent it seeks unspecified and undefined "forensic digital records," undefined and unspecified "device logs, mobile logs, cloud backups, Youtube-history exports, Google Takeout archives, browser caches, app data, and deleted-history recovery files," and undefined and unspecified "ALFR3D Beats content." Defendants further object to this Request on the grounds that it seeks documents not relevant to any claim or defense raised in this Action and proportional to the needs of this Action, as limited by and required under Fed. R. Civ. P. 26(b)(1). Specifically, Plaintiffs seek documents concerning all forensic digital records concerning ALFR3D Beats content, regardless of its relevance. Subject to and without waiving this objection, Defendants state that they did not access or listen to the Instrumental before writing and composing "Gatúbela" and that they do not possess any documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 86**

All documents showing whether any Defendant accessed, viewed, streamed, downloaded, saved, bookmarked, opened, or listened to Plaintiffs' Work "Punto G" or any content created by ALFR3D Beats between January 1, 2021 and December 1, 2025.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 86**:

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all "documents showing whether any Defendant accessed, viewed, streamed, downloaded, saved, bookmarked, opened, or listened to Plaintiffs' Work "Punto G" or any content created by ALFR3D Beats." Defendants further object to this Request as vague and ambiguous including to the extent that it seeks documents showing undefined and unspecified

access, views, streams, downloads, saves, bookmarks, opens, or listens," and undefined and unspecified "any content created by ALFR3D Beats." Defendants further object to this Request on the grounds that it seeks documents not relevant to any claim or defense raised in this Action and proportional to the needs of this Action, as limited by and required under Fed. R. Civ. P. 26(b)(1). Specifically, Plaintiffs seek documents concerning "any content created by ALFR3D Beats," regardless of its relevance. Defendants will not produce documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 87**

All documents showing whether digital platforms (including Youtube, TikTok, Instagram, Facebook, Spotify, Apple Music, or any other platform) recommended, autoplayed, suggested, or algorithmically surfaced ALFR3D Beats content to any Defendant.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 87:**

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all documents "showing whether digital platforms . . . recommended, autoplayed, suggested, or algorithmically surfaced ALFR3D Beats content." Defendants further object to this Request as vague and ambiguous including to the extent it seeks documents showing unspecified and undefined recommendations, autoplays, suggestions, or algorithmic surfacing of undefined and unspecified "ALFR3D Beats content." Defendants further object to this Request on the grounds that it seeks documents not relevant to any claim or defense raised in this Action and proportional to the needs of this Action, as limited by and required under Fed. R. Civ. P. 26(b)(1). Specifically, Plaintiffs seek documents concerning "ALFR3D Beats content," regardless of its relevance. Defendants will not produce documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 88**

All communications in which any Defendant received, opened, tapped, clicked, previewed, forwarded, saved, or interacted with any link directing to "Punto G," ALFR3D's Youtube channel, or any digital content created by Plaintiffs.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 88**:

After reasonable investigation, Defendants state that they do not possess any documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 89**

All documents showing whether any Defendant accessed, received, or was provided private unlisted, deleted, password-protected, or hidden links containing Plaintiffs' music or beats.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 89**:

After reasonable investigation, Defendants state that they do not possess any documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 90**

All forensic digital records – device logs, cloud logs, YouTube histories, Whatsapp Chats, Google Takeout files, browser histories, cache, metadata, and deleted histories – showing whether any Defendant access "Punto G."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 90**:

Defendants state that they did not access or listen to the Instrumental before writing and composing "Gatúbela" and that, after reasonable investigation, they do not possess any documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 91**

All documents identifying whether any Defendant followed, subscribed to, viewed, visited,

or interacted with ALFR3D Beats on any platform.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 91**:

Defendants state that they have not followed, subscribed to, viewed, visited, or interacted with ALFR3D Beats on any platform and, after reasonable investigation, do not possess any documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 92**

All documents showing whether any Defendant's management team, assistants, producers, engineers, A&R personnel, studio staff, or label personnel accessed Plaintiffs' Work "Punto G."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 92**:

After reasonable investigation, Defendants do not possess any documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 93**

All communications where any Defendant asked for or discussed beats "similar to," "in the style of," or matching the sound of ALFR3d Beats.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 93**:

After reasonable investigation, Defendants do not possess any documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 94**

All communications among Defendants referencing Plaintiffs, ALFR3D Beats, "Punto G," or any alleged similarity.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 94**:

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all communications "referencing Plaintiffs, ALFR3D Beats, 'Punto G,' or any alleged

similarity." Defendants further object to this Request as vague and ambiguous including to the

extent it seeks all communications concerning any undefined or unspecified "alleged similarity."

Defendants further object to this Request on the grounds that it seeks documents not relevant to

any claim or defense raised in this Action and proportional to the needs of this Action, as limited

by and required under Fed. R. Civ. P. 26(b)(1). Specifically, Plaintiffs seek communications

"referencing Plaintiffs, ALFR3D Beats, 'Punto G,' or any alleged similarity," regardless of their

relevance. Defendants will not produce documents responsive to this Request.

## REQUEST FOR PRODUCTION NO. 95

All documents showing whether any third-party collaborator working with any Defendant

accessed or referenced "Punto G" in connection with the creation of "Gatúbela," and whether any

third-party collaborator working with any Defendant accessed or referenced "Gatúbela" in

connection with the creation of any digital files such as digital videos, mock up videos, or whatsapp

chat recording videos, prior to August 22, 2022 which reference the making of or creation process

of "Gatúbela."

## RESPONSE TO REQUEST FOR PRODUCTION NO. 95:

After reasonable investigation, Defendants do not possess any documents responsive to

this Request.

## REQUEST FOR PRODUCTION NO. 96

All documents, screenshots, exports, reports, or records identifying or reflecting any social-

media comments by fans, followers, users, or the general public referencing Plaintiffs, ALFR3D

Beats, "Punto G," or any allegation of similarity or copyright infringement relating to "Gatúbela."

## RESPONSE TO REQUEST FOR PRODUCTION NO. 96:

Defendants object to this Request as overly broad and unduly burdensome on the grounds

that it seeks all "documents, screenshots, exports, reports, or records identifying or reflecting any social-media comments by fans, followers, users, or the general public referencing Plaintiffs, ALFR3D Beats, 'Punto G,' or any allegation of similarity or copyright infringement relating to 'Gatúbela.'" Defendants further object to this Request as vague and ambiguous including to the extent it seeks undefined and unspecified "documents, screenshots, exports, reports, or records" of undefined and unspecified "fans, followers, users, or the general public." Defendants further object to this Request to the extent it seeks documents in the possession, custody or control of third parties, and not Defendants, including but not limited to "fans, followers, users, or the general public." Defendants will not produce documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 97**

All documents reflecting any comments, posts, replies, tags, mentions, retweets, quote-tweets, duets, stitches, reactions, or interactions in which users stated, suggested, implied, or argued that "Gatúbela" copied, was inspired by, or sounded similar to "Punto G."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 97:**

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all "documents reflecting any comments, posts, replies, tags, mentions, retweets, quote-tweets, duets, stitches, reactions, or interactions in which users stated, suggested, implied, or argued that 'Gatúbela' copied, was inspired by, or sounded similar to 'Punto G.'" Defendants further object to this Request as vague and ambiguous including to the extent it seeks undefined and unspecified "comments, posts, replies, tags, mentions, retweets, quote-tweets, duets, stitches, reactions, or interactions" made by unspecified "users." Defendants further object to this Request to the extent it seeks documents in the possession, custody or control of third parties, and not Defendants, including but not limited to unspecified "users." Defendants will not produce

documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 98**

    All documents showing whether any Defendant, their managers, agents, social-media teams, or label personnel monitored, saved, archived, responded to, acknowledged, deleted, or otherwise engaged with social-media comments alleging copying of "Punto G."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 98:**

    Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all "documents showing whether any Defendant, their managers, agents, social-media teams, or label personnel monitored, saved, archived, responded to, acknowledged, deleted, or otherwise engaged with social-media comments alleging copying of 'Punto G.'" Defendants further object to this Request as vague and ambiguous including to the extent it seeks documents concerning unspecified monitoring, saving, archiving, responding, acknowledging, deleting or otherwise engaging with unspecified "social-media comments." Defendants will not produce documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 99**

    All internal communications discussing public comments, fan reactions, controversy, viral discussions, or social-media threads comparing "Punto G" to "Gatúbela."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 99:**

    After reasonable investigation, Defendants state that they do not possess any documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 100**

    All analytics, internal reports, sentiment studies, fan-engagement summaries, marking assessments, or social-listening data generated by or available to any Defendant concerning online

commentary about Plaintiffs' Work "Punto G" or any allegations of copyright infringement by Karol G and or any of the other Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 100:**

After reasonable investigation, Defendants state that they do not possess any documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 101**

All documents relating to any music awards for which "Gatúbela" was submitted, nominated, considered, or evaluated, including but not limited to the Grammy Awards, Latin Grammy Awards, Billboard Music Awards, Billboard Latin Music Awards, ASCAP Awards, BMI Awards, Premios Juventad, Premios Lo Nuestro, and an other national or international award program.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 101:**

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all "documents relating to any music awards for which 'Gatúbela' was submitted, nominated, considered, or evaluated." Defendants further object to this Request on the grounds that it seeks documents not relevant to any claim or defense raised in this Action and proportional to the needs of this Action, as limited by and required under Fed. R. Civ. P. 26(b)(1). Specifically, Plaintiffs seek documents "relating to any music awards," which are irrelevant to the claims and/or defenses in this Action. Defendants will not produce documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 102**

All documents reflecting any award nominations, wins, recognitions, certifications, shortlists, or finalist status received by "Gatúbela" including official announcements, certificates, award letters, plaques, and notifications.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 102**:

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all "documents reflecting any award nominations, wins, recognitions, certifications, shortlists, or finalist status received by 'Gatúbela' including official announcements, certificates, award letters, plaques, and notifications." Defendants further object to this Request on the grounds that it seeks documents not relevant to any claim or defense raised in this Action and proportional to the needs of this Action, as limited by and required under Fed. R. Civ. P. 26(b)(1). Specifically, Plaintiffs seek documents "reflecting any award nominations, wins, recognitions, certifications, shortlists, or finalist status," which are irrelevant to the claims and/or defenses in this Action. Defendants will not produce documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 103**

All submission packages, entry forms, application materials, credit listings, liner notes, upload files, metadata submissions, or supporting documentation submitted by any Defendant to any award organization in connection with "Gatúbela."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 103**:

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all "submission packages, entry forms, application materials, credit listings, liner notes, upload files, metadata submissions, or supporting documentation submitted by any Defendant to any award organization." Defendants further object to this Request as vague and ambiguous including to the extent it seeks undefined and unspecified "submission packages, entry forms, application materials, credit listings, liner notes, upload files, metadata submissions, or supporting documentation submitted by any Defendant to any award organization." Defendants further object to this Request on the grounds that it seeks documents not relevant to any claim or

defense raised in this Action and proportional to the needs of this Action, as limited by and required under Fed. R. Civ. P. 26(b)(1).   Specifically, Plaintiffs seek documents "submitted by any Defendant to any award organization," which are irrelevant to the claims and/or defenses in this Action.  Defendants will not produce documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 104**

All communications between any Defendant and any award-granting entity, including the Recording Academy (Grammy Awards), Latin Recording Academy (Latin Grammys), Billboard, ASCAP, BMI, SESAC, Univision, or Telemundo, concerning "Gatúbela."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 104:**

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all "communications between any Defendant and any award-granting entity, including the Recording Academy (Grammy Awards), Latin Recording Academy (Latin Grammys), Billboard, ASCAP, BMI, SESAC, Univision, or Telemundo, concerning 'Gatúbela.'"  Defendants further object to this Request on the grounds that it seeks documents not relevant to any claim or defense raised in this Action and proportional to the needs of this Action, as limited by and required under Fed. R. Civ. P. 26(b)(1).   Specifically, Plaintiffs seek communications "between any Defendant and any award-granting entity," which are irrelevant to the claims and/or defenses in this Action.  Defendants will not produce documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 105**

All communications among Defendants regarding strategy, expectations, promotional plans, submissions, or considerations for entering "Gatúbela" into any music award or industry recognition program.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 105**:

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all "communications among Defendants regarding strategy, expectations, promotional plans, submissions, or considerations for entering 'Gatúbela' into any music award or industry recognition program." Defendants further object to this Request on the grounds that it seeks documents not relevant to any claim or defense raised in this Action and proportional to the needs of this Action, as limited by and required under Fed. R. Civ. P. 26(b)(1). Specifically, Plaintiffs seek communications "among Defendants regarding strategy, expectations, promotional plans, submissions, or considerations for entering 'Gatúbela' into any music award or industry recognition program," which are irrelevant to the claims and/or defenses in this Action. Defendants will not produce documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 106**

All internal documents discussing the potential or actual impact of any awards, nominations, or recognitions for "Gatúbela," including marketing strategy, financial projections, and public-relations considerations.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 106**:

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all "internal documents discussing the potential or actual impact of any awards, nominations, or recognitions for 'Gatúbela,' including marketing strategy, financial projections, and public-relations considerations." Defendants further object to this Request on the grounds that it seeks documents not relevant to any claim or defense raised in this Action and proportional to the needs of this Action, as limited by and required under Fed. R. Civ. P. 26(b)(1). Specifically, Plaintiffs seek documents "discussing the potential or actual impact of any awards, nominations,

or recognitions for 'Gatúbela,'" which are irrelevant to the claims and/or defenses in this Action. Defendants will not produce documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 107**

All documents identifying the credited songwriters, producers, engineers, publishers, and contributors as submitted to any music award committee for consideration or evaluation of "Gatúbela."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 107:**

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all "documents identifying the credited songwriters, producers, engineers, publishers, and contributors as submitted to any music award committee for consideration or evaluation of 'Gatúbela.'" Defendants further object to this Request on the grounds that it seeks documents not relevant to any claim or defense raised in this Action and proportional to the needs of this Action, as limited by and required under Fed. R. Civ. P. 26(b)(1). Specifically, Plaintiffs seek documents "identifying the credited songwriters, producers, engineers, publishers, and contributors as submitted to any music award committee for consideration or evaluation of 'Gatúbela,'" which are irrelevant to the claims and/or defenses in this Action. Defendants will not produce documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 108**

All evaluations, scoring sheets, reviewer comments, adjudication forms, feedback, or scoring rubrics received from any award organization related to "Gatúbela."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 108:**

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all "evaluations, scoring sheets, reviewer comments, adjudication forms, feedback, or

scoring rubrics received from any award organization." Defendants further object to this Request as vague and ambiguous including to the extent it seeks undefined and unspecified "evaluations, scoring sheets, reviewer comments, adjudication forms, feedback, or scoring rubrics received from any award organization." Defendants further object to this Request on the grounds that it seeks documents not relevant to any claim or defense raised in this Action and proportional to the needs of this Action, as limited by and required under Fed. R. Civ. P. 26(b)(1). Specifically, Plaintiffs seek documents "evaluations, scoring sheets, reviewer comments, adjudication forms, feedback, or scoring rubrics received from any award organization," which are irrelevant to the claims and/or defenses in this Action. Defendants will not produce documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 109**

All documents reflecting public announcements, press releases, media publications, interviews, or statements made by any Defendant relating to awards or nominations associated with "Gatúbela."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 109**:

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all documents "reflecting public announcements, press releases, media publications, interviews, or statements made by any Defendant relating to awards or nominations." Defendants further object to this Request to the extent it seeks confidential and proprietary business information. Defendants further object to this Request on the grounds that it seeks documents not relevant to any claim or defense raised in this Action and proportional to the needs of this Action, as limited by and required under Fed. R. Civ. P. 26(b)(1). Specifically, Plaintiffs seek documents "reflecting public announcements, press releases, media publications, interviews, or statements made by any Defendant relating to awards or nominations," which are irrelevant to the claims

and/or defenses in this Action.  Defendants will not produce documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 110**

All documents showing revenue increases, streaming spikes, marketing boosts, sponsorship deals, brand partnerships, or other commercial gains attributed to "Gatúbela" receiving any award, nomination, or recognition.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 110:**

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all documents "showing revenue increases, streaming spikes, marketing boosts, sponsorship deals, brand partnerships, or other commercial gains attributed to 'Gatúbela' receiving any award, nomination, or recognition." Defendants further object to this Request to the extent it seeks confidential and proprietary business information.  Defendants further object to this Request on the grounds that it seeks documents not relevant to any claim or defense raised in this Action and proportional to the needs of this Action, as limited by and required under Fed. R. Civ. P. 26(b)(1).  Specifically, Plaintiffs seek documents "showing revenue increases, streaming spikes, marketing boosts, sponsorship deals, brand partnerships, or other commercial gains attributed to 'Gatúbela' receiving any award, nomination, or recognition," which are irrelevant to the claims and/or defenses in this Action.  Defendants will not produce documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 111**

All documents showing the chart performance of "Gatúbela" or any radio chart, streaming chart, sales chart, or popularity chart worldwide, including Billboard, Billboard Global 200, Billboard Latin Charts, Spotify Charts, Apple Music Charts, Shazam Charts, Youtube Charts, Monitor Latino, Radiomonitor, and any other charting system.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 111**:

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all documents "showing the chart performance of 'Gatúbela' or any radio chart, streaming chart, sales chart, or popularity chart worldwide, including Billboard, Billboard Global 200, Billboard Latin Charts, Spotify Charts, Apple Music Charts, Shazam Charts, Youtube Charts, Monitor Latino, Radiomonitor, and any other charting system." Defendants further object to this Request on the grounds that it seeks documents not relevant to any claim or defense raised in this Action and proportional to the needs of this Action, as limited by and required under Fed. R. Civ. P. 26(b)(1). Specifically, Plaintiffs seek documents "showing the chart performance of 'Gatúbela' or any radio chart, streaming chart, sales chart, or popularity chart worldwide, including Billboard, Billboard Global 200, Billboard Latin Charts, Spotify Charts, Apple Music Charts, Shazam Charts, Youtube Charts, Monitor Latino, Radiomonitor, and any other charting system," which are irrelevant to the claims and/or defenses in this Action. Defendants will not produce documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 112**

All radio-airplay reports, spins reports, monitoring reports, cue sheets, performance logs, tracking summaries, or reporting data showing how often "Gatúbela" was played on radio stations worldwide.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 112**:

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all "radio-airplay reports, spins reports, monitoring reports, cue sheets, performance logs, tracking summaries, or reporting data." Defendants further object to this Request as vague and ambiguous including to the extent it seeks undefined and unspecified "radio-airplay reports,

spins reports, monitoring reports, cue sheets, performance logs, tracking summaries, or reporting data." Defendants further object to this Request on the grounds that it seeks documents not relevant to any claim or defense raised in this Action and proportional to the needs of this Action, as limited by and required under Fed. R. Civ. P. 26(b)(1). Specifically, Plaintiffs seek documents "showing how often 'Gatúbela' was played on radio stations worldwide," which is irrelevant to the claims and/or defenses in this Action. Defendants will not produce documents responsive to this Request.

## REQUEST FOR PRODUCTION NO. 113

All documents showing global or regional popularity rankings of "Gatúbela," including any internal or external tracking reports from Nielsen, Luminate Data, Radiomonitor, BMAT, BDS, or similar services.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 113:

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all "documents showing global or regional popularity rankings of "Gatúbela," including any internal or external tracking reports from Nielsen, Luminate Data, Radiomonitor, BMAT, BDS, or similar services." Defendants further object to this Request as vague and ambiguous including to the extent it seeks undefined and unspecified "similar services." Defendants further object to this Request on the grounds that it seeks documents not relevant to any claim or defense raised in this Action and proportional to the needs of this Action, as limited by and required under Fed. R. Civ. P. 26(b)(1). Specifically, Plaintiffs seek documents "showing how often 'Gatúbela' was played on radio stations worldwide," which is irrelevant to the claims and/or defenses in this Action. Defendants will not produce documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 114**

All playlist submissions, editorial playlist entries, curated playlist placements, or promotional documents submitted to Spotify, Apple Music, Amazon Music, Tidal, Youtube Music, Deezer, or other DSPs related to the promotion or charting of "Gatúbela."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 114:**

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all "playlist submissions, editorial playlist entries, curated playlist placements, or promotional documents submitted to Spotify, Apple Music, Amazon Music, Tidal, Youtube Music, Deezer, or other DSPs." Defendants further object to this Request as vague and ambiguous including to the extent it seeks undefined or unspecified "playlist submissions, editorial playlist entries, curated playlist placements, or promotional documents." Defendants further object to this Request on the grounds that it seeks documents not relevant to any claim or defense raised in this Action and proportional to the needs of this Action, as limited by and required under Fed. R. Civ. P. 26(b)(1). Specifically, Plaintiffs seek documents showing "playlist submissions, editorial playlist entries, curated playlist placements, or promotional documents," which are irrelevant to the claims and/or defenses in this Action. Defendants will not produce documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 115**

All documents showing growth metrics, chart history, chart peaks, chart declines, and chart certifications for "Gatúbela," including any chart-analytics dashboards, internal reports, or marketing summaries.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 115:**

Defendants object to this Request as overly broad and unduly burdensome on the grounds

that it seeks all "documents showing growth metrics, chart history, chart peaks, chart declines, and chart certifications for 'Gatúbela,' including any chart-analytics dashboards, internal reports, or marketing summaries." Defendants further object to this Request as vague and unduly burdensome including to the extent it seeks undefined and unspecified "showing growth metrics, chart history, chart peaks, chart declines, and chart certifications," including undefined and unspecified "chart-analytics dashboards, internal reports, or marketing summaries." Defendants further object to this Request on the grounds that it seeks documents not relevant to any claim or defense raised in this Action and proportional to the needs of this Action, as limited by and required under Fed. R. Civ. P. 26(b)(1). Specifically, Plaintiffs seek documents showing "showing growth metrics, chart history, chart peaks, chart declines, and chart certifications" and "chart-analytics dashboards, internal reports, or marketing summaries," which are irrelevant to the claims and/or defenses in this Action. Defendants will not produce documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 116**

All communications discussing the chart performance or radio performance of "Gatúbela," including conversations among Defendants, managers, producers, A&R executives, or UMG personnel.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 116:**

Defendants object to this Request as overly broad and unduly burdensome on the grounds that is seeks all "communications discussing the chart performance or radio performance of 'Gatúbela,'" Defendants further object to this Request as vague and ambiguous including to the extent it seeks undefined and unspecified "chart performance or radio performance." Defendants further object to this Request on the grounds that it seeks documents not relevant to any claim or defense raised in this Action and proportional to the needs of this Action, as limited by and required

under Fed. R. Civ. P. 26(b)(1). Specifically, Plaintiffs seek documents showing "chart performance or radio performance," which are irrelevant to the claims and/or defenses in this Action. Defendants will not produce documents responsive to this Request.

## REQUEST FOR PRODUCTION NO. 117

All public statements, press releases, marketing materials, interviews, promotional posts, or internal talking points referencing the chart success, radio performance, or popularity of "Gatúbela."

## RESPONSE TO REQUEST FOR PRODUCTION NO. 117:

Defendants object to this Request as overly broad and unduly burdensome on the grounds that is seeks all "public statements, press releases, marketing materials, interviews, promotional posts, or internal talking points." Defendants further object to this Request as vague and ambiguous including to the extent it seeks undefined and unspecified "public statements, press releases, marketing materials, interviews, promotional posts, or internal talking points" which reference undefined and unspecified "chart success, radio performance, or popularity." Defendants further object to this Request to the extent it seeks confidential and proprietary business information. Defendants further object to this Request on the grounds that it seeks documents not relevant to any claim or defense raised in this Action and proportional to the needs of this Action, as limited by and required under Fed. R. Civ. P. 26(b)(1). Specifically, Plaintiffs seek all "public statements, press releases, marketing materials, interviews, promotional posts, or internal talking points" which reference "chart success, radio performance, or popularity," all of which are irrelevant to the claims and/or defenses in this Action. Defendants will not produce documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 118**

All documents submitted by any Defendant to Nielsen, Lumimate, Monitor Latino, Radiomonitor, or any charting or monitoring body for the purpose of tracking, verifying, or promoting "Gatúbela'.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 118:**

Defendants object to this Request as overly broad and unduly burdensome on the grounds that is seeks all "documents submitted by any Defendant to Nielsen, Lumimate, Monitor Latino, Radiomonitor, or any charting or monitoring body." Defendants further object to this Request as vague and ambiguous including to the extent it seeks undefined and unspecified "documents submitted . . . for the purpose of tracking, verifying, or promoting" Gatúbela in unspecified and undefined manners. Defendants further object to this Request on the grounds that it seeks documents not relevant to any claim or defense raised in this Action and proportional to the needs of this Action, as limited by and required under Fed. R. Civ. P. 26(b)(1). Specifically, Plaintiffs seek all "documents submitted . . . for the purpose of tracking, verifying, or promoting" Gatúbela, which is irrelevant to the claims and/or defenses in this Action. Defendants will not produce documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 119**

All internal documents analyzing the geographical areas in which "Gatúbela" performed strongest on charts or radio, including heat maps, regional breakout reports, demographic analyses, and global performance summaries.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 119:**

Defendants object to this Request as overly broad and unduly burdensome on the grounds that is seeks all documents "analyzing the geographical areas" in which Gatúbela "performed

strongest on charts or radio," which Plaintiffs purport includes "heat maps, regional breakout reports, demographic analyses, and global performance summaries." Defendants further object to this Request as vague and ambiguous including to the extent it seeks documents analyzing where Gatúbela "performed strongest on charts or radio" through undefined and unspecified "heat maps, regional breakout reports, demographic analyses, and global performance summaries." Defendants further object to this Request to the extent it seeks confidential and proprietary business information. Defendants further object to this Request on the grounds that it seeks documents not relevant to any claim or defense raised in this Action and proportional to the needs of this Action, as limited by and required under Fed. R. Civ. P. 26(b)(1). Specifically, Plaintiffs seek all "internal documents analyzing the geographical areas" in which Gatúbela "performed strongest on charts or radio," which Plaintiffs purport includes "heat maps, regional breakout reports, demographic analyses, and global performance summaries," all of which is irrelevant to the claims and/or defenses in this Action. Defendants will not produce documents responsive to this Request.

## REQUEST FOR PRODUCTION NO. 120

All communications discussing how the chart performance or radio success of "Gatúbela" impacted marketing decisions, release strategies, touring, endorsements, or public-relations campaigns.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 120:

Defendants object to this Request as overly broad and unduly burdensome on the grounds that is seeks all communications concerning "marketing decisions, release strategies, touring, endorsements, or public-relations campaigns." Defendants further object to this Request as vague and ambiguous including to the extent it seeks communications concerning undefined and

unspecified "chart performance or radio success" and the impact on undefined and unspecified "marketing decisions, release strategies, touring, endorsements, or public-relations campaigns." Defendants further object to this Request to the extent it seeks confidential and proprietary business information.  Defendants further object to this Request on the grounds that it seeks documents not relevant to any claim or defense raised in this Action and proportional to the needs of this Action, as limited by and required under Fed. R. Civ. P. 26(b)(1).  Specifically, Plaintiffs seek all communications discussing the impact of the "chart performance or radio success" of Gatúbela on "marketing decisions, release strategies, touring, endorsements, or public-relations campaigns," which is irrelevant to the claims and/or defenses in this Action.  Defendants will not produce documents responsive to this Request.

## REQUEST FOR PRODUCTION NO. 121

All documents identifying every location, venue, city, country, event, concert, festival, tour stop, award show, performance, or appearance in which "Gatúbela" was publicly performed, played, broadcast, or used.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 121:

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all "documents identifying every location venue, city, country, event, concert, festival, tour stop, award show, performance, or appearance in which 'Gatúbela' was publicly performed, played, broadcast, or used." Defendants further object to this Request to extent it seeks documents outside the possession, custody or control of Defendants.  Defendants further object to this Request on the grounds that it seeks documents not relevant to any claim or defense raised in this Action and proportional to the needs of this Action, as limited by and required under Fed. R. Civ. P. 26(b)(1).  Specifically, Plaintiffs seek documents identifying every location in the world in which

Gatúbela was performed, which is irrelevant to the claims and/or defenses in this Action. Defendants will not produce documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 122**

All tour setlists, performance logs, show rundowns, musical-direction notes, band notes, or setlist submissions relating to performances of "Gatúbela" during any tour or live appearance by Karol G or any Defendant.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 122:**

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all "tour setlists, performance logs, show rundowns, musical-direction notes, band notes, or setlist submissions" "during any tour or live appearance by Karol G or any Defendant." Defendants further object to this Request as vague and ambiguous including to the extent it seeks undefined and unspecified "tour setlists, performance logs, show rundowns, musical-direction notes, band notes, or setlist submissions." Defendants further object to this Request on the grounds that it seeks documents not relevant to any claim or defense raised in this Action and proportional to the needs of this Action, as limited by and required under Fed. R. Civ. P. 26(b)(1). Specifically, Plaintiffs seek "tour setlists, performance logs, show rundowns, musical-direction notes, band notes, or setlist submissions," which are irrelevant to the claims and/or defenses in this Action. Defendants will not produce documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 123**

All documents identifying each television show, award show, music program, broadcast, livestream, digital program, or televised event where "Gatúbela" was performed, lip-synced, danced to, featured, or used.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 123**:

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all "documents identifying each television show, award show, music program, broadcast, livestream, digital program, or televised event where 'Gatúbela' was performed, lip-synced, danced to, featured, or used." Defendants further object to this Request as vague and ambiguous including to the extent it seeks the identification of programs in which Gatúbela was "performed, lip-synced, danced to, featured, or used." Defendants further object to this Request on the grounds that it seeks documents not relevant to any claim or defense raised in this Action and proportional to the needs of this Action, as limited by and required under Fed. R. Civ. P. 26(b)(1). Specifically, whether Gatúbela was "performed, lip-synced, danced to, featured, or used" is irrelevant to the claims and/or defenses in this Action. Defendants will not produce documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 124**

All cue sheets submitted to any television network, broadcaster, streaming service, production company, rights organization, or performing-rights society (including ASCAP, BMI, SESAC, SoundExchange) relating to performances of "Gatúbela."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 124**:

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all "cue sheets submitted to any television network, broadcaster, streaming service, production company, rights organization, or performing-rights society." Defendants further object to this Request as vague and ambiguous including to the extent it seeks all "cue sheets submitted to any television network, broadcaster, streaming service, production company, rights organization, or performing-rights society." Defendants further object to this Request on the

grounds that it seeks documents not relevant to any claim or defense raised in this Action and proportional to the needs of this Action, as limited by and required under Fed. R. Civ. P. 26(b)(1). Specifically, any "cue sheets" submitted are irrelevant to the claims and/or defenses in this Action. Defendants will not produce documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 125**

All licensing agreements, permissions, sync licenses, broadcast licenses, live-performance licenses, or clearance documents relating to any public use of "Gatúbela."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 125:**

Defendants object to this Request on the grounds that it seeks documents not relevant to any claim or defense raised in this Action and proportional to the needs of this Action, as limited by and required under Fed. R. Civ. P. 26(b)(1). Specifically, any "clearance documents" relating to a public performance of Gatubela are irrelevant to the claims and/or defenses in this Action. Defendants will not produce documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 126**

All communications discussing or planning performances of "Gatúbela" on any tour, concert, festival, award show, TV show, livestream, or media appearance.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 126:**

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all "communications discussing or planning performances of 'Gatúbela.'" Defendants further object to this Request as vague and ambiguous including to the extent it seeks communications concerning any undefined and unspecified "tour, concert, festival, award show, TV show, livestream, or media appearance." Defendants further object to this Request on the grounds that it seeks documents not relevant to any claim or defense raised in this Action and

proportional to the needs of this Action, as limited by and required under Fed. R. Civ. P. 26(b)(1). Specifically, planned performances at any "tour, concert, festival, award show, TV show, livestream, or media appearance" are irrelevant to the claims and/or defenses in this Action. Defendants will not produce documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 127**

All promotional materials, press releases, tour announcements, TV promotions, or marketing documents referencing performances of "Gatúbela."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 127:**

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all "promotional materials, press releases, tour announcements, TV promotions, or marketing documents referencing performances of 'Gatúbela.'" Defendants further object to this Request as vague and ambiguous including to the extent it seeks all undefined and unspecified "promotional materials, press releases, tour announcements, TV promotions, or marketing documents." Defendants further object to this Request on the grounds that it seeks documents not relevant to any claim or defense raised in this Action and proportional to the needs of this Action, as limited by and required under Fed. R. Civ. P. 26(b)(1). Specifically, "promotional materials, press releases, tour announcements, TV promotions, or marketing documents referencing performances of 'Gatúbela'" are irrelevant to the claims and/or defenses in this Action. Defendants will not produce documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 128**

All documents identifying the musicians, dancers, performers, musical directors, choreographers, stage managers, or production staff involved in performing "Gatúbela" in concerts, tours, or televised events.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 128**:

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks documents identifying all individuals who were the "musicians, dancers, performers, musical directors, choreographers, stage managers, or production staff" who were involved in any "concerts, tours, or televised events" in which Gatúbela was performed. Defendants further object to this Request to the extent it seeks documents outside the possession, custody or control of Defendants. Defendants further object to this Request on the grounds that it seeks documents not relevant to any claim or defense raised in this Action and proportional to the needs of this Action, as limited by and required under Fed. R. Civ. P. 26(b)(1). Specifically, the identity of the "musicians, dancers, performers, musical directors, choreographers, stage managers, or production staff" who were involved in any "concerts, tours, or televised events" in which Gatúbela was performed are irrelevant to the claims and/or defenses in this Action. Defendants will not produce documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 129**

All video recordings, audio recordings, rehearsal footage, behind-the-scenes content, or production videos documenting performances of "Gatúbela" on tour or on television.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 129**:

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all "video recordings, audio recordings, rehearsal footage, behind-the-scenes content, or production videos documenting performances of 'Gatúbela' on tour or on television." Defendants further object to this Request as vague and ambiguous including to the extent it seeks undefined and unspecified "video recordings, audio recordings, rehearsal footage, behind-the-scenes content, or production videos" on unspecified "tour[s]" and "television." Defendants

further object to this Request on the grounds that it seeks documents not relevant to any claim or defense raised in this Action and proportional to the needs of this Action, as limited by and required under Fed. R. Civ. P. 26(b)(1). Specifically, "video recordings, audio recordings, rehearsal footage, behind-the-scenes content, or production videos documenting performances of 'Gatúbela' on tour or on television" are irrelevant to the claims and/or defenses in this Action. Defendants will not produce documents responsive to this Request.

## REQUEST FOR PRODUCTION NO. 130

All documents showing revenue generated from live performances of "Gatúbela," including touring revenue, performance royalties, broadcast payments, sponsorships, endorsements, and promotional value.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 130:

. Defendants object to this Request on the grounds that it seeks documents not relevant to any claim or defense raised in this Action and proportional to the needs of this Action, as limited by and required under Fed. R. Civ. P. 26(b)(1). Specifically, revenue generated by live performances is irrelevant to the claims and/or defenses in this Action. Defendants will not produce documents responsive to this Request.

## REQUEST FOR PRODUCTION NO. 131

"Gatúbela" written composition.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 131:

Defendants object to this Request as vague and ambiguous to the extent it seeks "'Gatúbela' written composition," which is unclear what this Request is seeking as written. Defendants will not produce documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 132**

"Gatúbela" sound recording.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 132**:

Defendants object to this Request as vague and ambiguous to the extent it seeks "'Gatúbela' sound recording," which is unclear what this Request is seeking as written. Defendants will not produce documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 133**

All copyright registration applications, including exhibits, submitted for "Gatúbela."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 133**:

Defendants object to this Request on the grounds that their copyright registration applications are irrelevant to the parties' claims and defenses and that Plaintiffs' document requests are unduly broad, overly burdensome, and harassing.  Defendants will not produce documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 134**

All communications exchanged between Defendants and the U.S. Copyright Office concerning "Gatúbela."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 134**:

Defendants object to this Request on the grounds that "communications exchanged between Defendants and the U.S. Copyright Office" are irrelevant to the parties' claims and defenses and that Plaintiffs' document requests are unduly broad, overly burdensome, and harassing.  Defendants will not produce documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 135**

All copyright registrations for "Gatúbela."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 135:**

Defendants object to this Request on the grounds that their copyright registrations are irrelevant to the parties' claims and defenses and that Plaintiffs' document requests are unduly broad, overly burdensome, and harassing.  Defendants will not produce documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 136**

Documents that can prove the original date of creation of "Gatúbela."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 136:**

Defendants will produce responsive documents, subject to a mutually acceptable protective order regarding confidentiality.

**REQUEST FOR PRODUCTION NO. 137**

All documents and communications concerning the actual or potential use, distribution, or licensing of "Gatúbela."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 137:**

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all "documents and communications concerning the actual or potential use, distribution, or licensing of 'Gatúbela.'"   Defendants further object to this Request as vague and ambiguous to the extent it seeks documents concerning undefined and unspecified "actual or potential use, distribution, or licensing."  Defendants further object to this Request on the grounds that it seeks documents not relevant to any claim or defense raised in this Action and proportional to the needs of this Action, as limited by and required under Fed. R. Civ. P. 26(b)(1).  Specifically, all documents and communications "concerning the actual or potential use, distribution, or licensing of 'Gatúbela'" are irrelevant to the claims and/or defenses in this Action.  Defendants

will not produce documents responsive to this Request.

### REQUEST FOR PRODUCTION NO. 138

All communications concerning "Gatúbela."

### RESPONSE TO REQUEST FOR PRODUCTION NO. 138:

Defendants object to this Request on the grounds that it is vague, overly broad, unduly

burdensome, and harassing.  Defendants further object to this Request to the extent it seeks

information protected by the attorney-client privilege, work-product privilege, or any other

applicable privilege.  Subject to the foregoing objections, Defendants will produce all non-

privileged communications regarding the beat—including the allegedly infringing riff melody or

chord progression—for "Gatúbela," subject to a mutually acceptable protective order regarding

confidentiality.

### REQUEST FOR PRODUCTION NO. 139

All communications between Defendants and UMG.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 139:

Defendants object to this Request as overly broad and unduly burdensome on the grounds

that it seeks all "communications between Defendants and UMG."  Defendants further object to

this Request on the grounds that it seeks documents not relevant to any claim or defense raised in

this Action and proportional to the needs of this Action, as limited by and required under Fed. R.

Civ. P. 26(b)(1).  Specifically, Plaintiffs seek all communications between Defendants and UMG

regardless of their relevance to Gatúbela, the claims and/or defenses in this Action.

### REQUEST FOR PRODUCTION NO. 140

All communications between Defendants and Karol G.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 140**:

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all "communications between Defendants and Karol G." Defendants further object to this Request on the grounds that it seeks documents not relevant to any claim or defense raised in this Action and proportional to the needs of this Action, as limited by and required under Fed. R. Civ. P. 26(b)(1). Specifically, Plaintiffs seek all communications between Defendants and Karol G regardless of their relevance to Gatúbela, the claims and/or defenses in this Action.

**REQUEST FOR PRODUCTION NO. 141**

All communications, including direct messages or posts/comments on Instagram, between Plaintiffs and DJ Maff.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 141**:

Defendants will produce all responsive communications, if any, that can be located after reasonable search.

**REQUEST FOR PRODUCTION NO. 142**

All agreements between Karol G and third parties relating to Karol G music compositions or production services between January 1, 2018 and December 1, 2025.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 142**

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all "agreements between Karol G and third parties relating to Karol G music compositions or production services between January 1, 2018 and December 1, 2025." Defendants further object to this Request as vague and ambiguous including to the extent it seeks agreements with undefined and unspecified "third-parties" pertaining to undefined and unspecified "music compositions or production services." Defendants further object to this Request on the

grounds that it seeks documents not relevant to any claim or defense raised in this Action and proportional to the needs of this Action, as limited by and required under Fed. R. Civ. P. 26(b)(1). Specifically, Plaintiffs seek all agreements with Karol G, regardless of their relevance to Gatúbela, the claims and/or defenses in this Action. Defendants will not produce documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 143**

All agreements between DJ Maff and third parties relating to DJ Maff music compositions or production services between January 1, 2018 and December 1, 2025.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 143:**

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all "agreements between DJ Maff and third parties relating to DJ Maff music compositions or production services between January 1, 2018 and December 1, 2025." Defendants further object to this Request as vague and ambiguous including to the extent it seeks agreements with undefined and unspecified "third-parties" pertaining to undefined and unspecified "music compositions or production services." Defendants further object to this Request on the grounds that it seeks documents not relevant to any claim or defense raised in this Action and proportional to the needs of this Action, as limited by and required under Fed. R. Civ. P. 26(b)(1). Specifically, Plaintiffs seek all agreements with DJ Maff, regardless of their relevance to Gatúbela, the claims and/or defenses in this Action. Defendants will not produce documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 144**

All agreements between Maldy and third parties relating to Maldy music compositions or production services between January 1, 2018 and December 1, 2025.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 144**:

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all "agreements between Maldy and third parties relating to Maldy music compositions or production services between January 1, 2018 and December 1, 2025."   Defendants further object to this Request as vague and ambiguous including to the extent it seeks agreements with undefined and unspecified "third-parties" pertaining to undefined and unspecified "music compositions or production services."   Defendants further object to this Request on the grounds that it seeks documents not relevant to any claim or defense raised in this Action and proportional to the needs of this Action, as limited by and required under Fed. R. Civ. P. 26(b)(1).   Specifically, Plaintiffs seek all agreements regardless of their relevance to Gatúbela, the claims and/or defenses in this Action.   Defendants will not produce documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 145**

All agreements between UMG and third parties relating to the "Gatúbela" Music compositions or music production or music distribution services between January 1, 2018 and December 31, 2025.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 145**:

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all "agreements between UMG and third parties relating to the 'Gatúbela' Music compositions or music production or music distribution services between January 1, 2018 and December 31, 2025." Defendants further object to this Request as vague and ambiguous including to the extent it seeks agreements with undefined and unspecified "third-parties" pertaining to undefined and unspecified "music compositions or production services."   Defendants further object to this Request on the grounds that it seeks documents not relevant to any claim or defense

raised in this Action and proportional to the needs of this Action, as limited by and required under Fed. R. Civ. P. 26(b)(1).

**REQUEST FOR PRODUCTION NO. 146**

All licensing agreements relating to "Gatúbela."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 146:**

Defendants object to this Request on the grounds that it is vague, overly broad, unduly burdensome, and harassing. Defendants further object to this Request on the grounds that it seeks documents that are irrelevant to the parties' claims and defenses.

**REQUEST FOR PRODUCTION NO. 147**

Documents sufficient to identify the total compensation received by Karol G for her music production services between January 1, 2018 and December 1, 2025.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 147:**

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks documents identifying the "total compensation received by Karol G for her music production services between January 1, 2018 and December 1, 2025." Defendants further object to this Request as vague and ambiguous including to the extent it seeks documents concerning undefined "total compensated received" for unspecified "music production services." Defendants further object to this Request on the grounds that it seeks documents not relevant to any claim or defense raised in this Action and proportional to the needs of this Action, as limited by and required under Fed. R. Civ. P. 26(b)(1). Specifically, Plaintiffs seek documents identifying Karol G's total compensation, regardless of its relevance to Gatúbela, the claims and/or defenses in this Action. Defendants further object to this Request as prematurely seeking post-judgment asset and financial discovery without having first obtained a judgment. *See F.T.C. v. Turner*, 609 F.2d 743, 745 (5th

Cir. 1980) (a "private plaintiff may not discover an opponent's assets until after a judgment against the opponent has been rendered"). Defendants will not produce documents responsive to this Request.

### REQUEST FOR PRODUCTION NO. 148

Documents sufficient to identify the total compensation received by DJ Maff for his music production services between January 1, 2018 and December 1, 2025.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 148:

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks documents identifying the "total compensation received by DJ Maff for his music production services between January 1, 2018 and December 1, 2025." Defendants further object to this Request as vague and ambiguous including to the extent it seeks documents concerning undefined "total compensated received" for unspecified "music production services." Defendants further object to this Request on the grounds that it seeks documents not relevant to any claim or defense raised in this Action and proportional to the needs of this Action, as limited by and required under Fed. R. Civ. P. 26(b)(1). Specifically, Plaintiffs seek documents identifying DJ Maff's total compensation, regardless of its relevance to Gatúbela, the claims and/or defenses in this Action. Defendants further object to this Request as prematurely seeking post-judgment asset and financial discovery without having first obtained a judgment. *See F.T.C. v. Turner*, 609 F.2d 743, 745 (5th Cir. 1980) (a "private plaintiff may not discover an opponent's assets until after a judgment against the opponent has been rendered"). Defendants will not produce documents responsive to this Request.

### REQUEST FOR PRODUCTION NO. 149

Documents sufficient to identify the total compensation received by Maldy for his music

production services between January 1, 2018 and December 1, 2025.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 149**:

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks documents identifying the "total compensation received by Maldy for his music production services between January 1, 2018 and December 1, 2025." Defendants further object to this Request as vague and ambiguous including to the extent it seeks documents concerning undefined "total compensated received" for unspecified "music production services." Defendants further object to this Request on the grounds that it seeks documents not relevant to any claim or defense raised in this Action and proportional to the needs of this Action, as limited by and required under Fed. R. Civ. P. 26(b)(1). Specifically, Plaintiffs seek documents identifying Madly's total compensation, regardless of its relevance to Gatúbela, the claims and/or defenses in this Action. Defendants further object to this Request as prematurely seeking post-judgment asset and financial discovery without having first obtained a judgment. *See F.T.C. v. Turner*, 609 F.2d 743, 745 (5th Cir. 1980) (a "private plaintiff may not discover an opponent's assets until after a judgment against the opponent has been rendered"). Defendants will not produce documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 150**

All documents and communications reflecting the actual damages suffered by Plaintiffs as a result of the alleged copyright infringement at issue in this case.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 150**:

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks "documents and communications reflecting the actual damages suffered by Plaintiffs." Defendants further object to this Request to the extent it seeks information protected by the

attorney-client privilege, work-product privilege, or any other applicable privilege.  Defendants

further object to this Request on the grounds that Defendants deny in their Answer that Plaintiffs

suffered any actual damages.  (D.E. 18 ¶ 65).  Defendants will not produce documents responsive

to this Request.

**REQUEST FOR PRODUCTION NO. 151**

All communications with musicology experts about "Gatúbela."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 151:**

Defendants object to this Request as overly broad and unduly burdensome on the grounds

that it seeks all "communications with musicology experts about 'Gatúbela.'"  Defendants further

object to this Request to the extent it seeks information protected by the attorney-client privilege,

work-product privilege, or any other applicable privilege.  Defendants will not produce documents

responsive to this Request.

**REQUEST FOR PRODUCTION NO. 152**

All reports, summaries, or analyzes of "Punto G" prepared by any musicology expert.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 152:**

Defendants have produced or will produce documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 153**

All documents and communications supporting, proving or evidencing that DJ Maff had

"knowledge and fraudulent intent," as alleged in this Complaint.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 153:**

After reasonable investigation, Defendants state that they do not possess any documents

responsive to this Request.

**REQUEST FOR PRODUCTION NO. 154**

All documents and communications supporting, proving, or evidencing that "[s]ince August 22, 2022, Defendants have repeatedly marketed, made available, and otherwise used "Gatúbela" in whole or in part, or social media, online, and elsewhere.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 154:**

Defendants further object to this Request as vague, ambiguous, overbroad, unduly burdensome, and irrelevant.  Defendants will not produce documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 155**

All documents and communications supporting, proving or evidencing that the "Gatúbela" was not published or disseminated prior to the first publication of August 22, 2022 as published on the US Copyright registration of "Gatúbela."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 155:**

Defendants object to this Request as vague, overbroad, and nonsensical.  Defendants will not produce documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 156**

All documents and communications discussing that any of the Defendants recognized committing infringement according to the Complaint and or of not committing infringement of "Punto G."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 156:**

After reasonable investigation, Defendants state that they do not possess any documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 157**

All documents and communications that involve the allegations in Paragraph 68 of the

Complaint.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 157:**

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all "documents and communications that involve the allegations in [a paragraph] of the Complaint." Defendants further object to this Request as vague and ambiguous including to the extent it seeks documents which "involve the allegations," which is unclear as written. Defendants further object to this Request to the extent it seeks information protected by the attorney-client privilege, work-product privilege, or any other applicable privilege, including to the extent it seeks documents and communications involving allegations in the Complaint. Defendants will not produce documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 158**

All the web browsing history of DJ Maff between June 1, 2022 and December 1, 2025.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 158:**

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all "the web browsing history of DJ Maff between June 1, 2022 and December 1, 2025." Defendants further object to this Request as vague and ambiguous including to the extent it seeks undefined "web browsing history." Defendants further object to this Request on the grounds that it seeks documents not relevant to any claim or defense raised in this Action and proportional to the needs of this Action, as limited by and required under Fed. R. Civ. P. 26(b)(1). Specifically, Plaintiffs indiscriminately seek all of DJ Maff's "web browsing history." Defendants will not produce documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 159**

All the web browsing history of Karol G between June 1, 2022 and December 1, 2025.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 159**:

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all "the web browsing history of Karol G between June 1, 2022 and December 1, 2025." Defendants further object to this Request as vague and ambiguous including to the extent it seeks undefined "web browsing history." Defendants further object to this Request on the grounds that it seeks documents not relevant to any claim or defense raised in this Action and proportional to the needs of this Action, as limited by and required under Fed. R. Civ. P. 26(b)(1). Specifically, Plaintiffs indiscriminately seek all of Karol G's "web browsing history." Defendants will not produce documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 160**

All the web browsing history of Maldy between June 1, 2022 and December 1, 2025.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 160**:

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all "the web browsing history of Maldy between June 1, 2022 and December 1, 2025." Defendants further object to this Request as vague and ambiguous including to the extent it seeks undefined "web browsing history." Defendants further object to this Request on the grounds that it seeks documents not relevant to any claim or defense raised in this Action and proportional to the needs of this Action, as limited by and required under Fed. R. Civ. P. 26(b)(1). Specifically, Plaintiffs indiscriminately seek all of Maldy's "web browsing history." Defendants will not produce documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 161**

All the web browsing history of the UMG executives involved in the song composition of "Gatúbela" between June 1, 2022 and December 31, 2022 prior to "Gatúbela" first being published

on August 22, 2022.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 161**:

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all "the web browsing history of the UMG executives involved in the song composition of 'Gatúbela' between June 1, 2022 and December 31, 2022." Defendants further object to this Request as vague and ambiguous including to the extent it seeks undefined "web browsing history" from unspecified "UMG executives" who were involved in an unspecified manner in the "song composition of 'Gatúbela.'" Defendants further object to this Request on the grounds that it seeks documents not relevant to any claim or defense raised in this Action and proportional to the needs of this Action, as limited by and required under Fed. R. Civ. P. 26(b)(1). Specifically, Plaintiffs indiscriminately seek all the "web browsing history" from undefined UMG executives. Defendants will not produce documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 162**

All the business contracts between UMG Artist and Reportaire personnel involved in the song composition of "Gatúbela" entered into contractual agreement between any of the listed defendants and UMG of any exists between the dates of January 1, 2022 and December 31, 2022 prior to "Gatúbela" first being published on August 22, 2022.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 162**:

Defendants object to this Request as overly broad and unduly burdensome on the grounds that it seeks all "business contracts between UMG Artist and Reportaire personnel." Defendants further object to this Request as vague and ambiguous including to the extent it seeks undefined "business contracts" between an undefined "UMG Artist" and undefined "Reportaire personnel," who entered into an undefined "contractual agreement," "of any exists," which is unclear as

worded.  Defendants further object to this Request on the grounds that it seeks documents not

relevant to any claim or defense raised in this Action and proportional to the needs of this Action,

as limited by and required under Fed. R. Civ. P. 26(b)(1).  Specifically, Plaintiffs indiscriminately

seek all "business contracts between UMG Artist and Reportaire personnel," regardless of their

relevance to the claims and/or defenses in this Action.  Defendants will not produce documents

responsive to this Request.


Dated:  January 2, 2026                        **PRYOR CASHMAN LLP**

                                               *Attorneys for UMG, Karol G, and DJ Maff*
                                               255 Alhambra Circle, 8th Floor
                                               Miami, Florida 33134
                                               Telephone No: (786) 582-3012

                                               By: */s/ Brendan Everman*
                                               James G. Sammataro
                                               Florida Bar No. 520292
                                               Brendan S. Everman
                                               Florida Bar No. 68702
                                               jsammataro@pryorcashman.com
                                               beverman@pryorcashman.com
                                               ksuarez@pryorcashman.com

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of this document was served on January 2, 2026, via email to

Hernández at jackdariohernandez@gmail.com and Alfr3d at alfr3dmusic@hotmail.com.

<div align="center">

*s/ Brendan Everman*
Brendan Everman

</div>

**EXHIBIT - P-0024**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

No.:1:25-cv-80338-DIMITROULEAS/REINHART

JACK D. HERNANDEZ d/b/a OCEAN VIBES
MUSIC PUBLISHING, and DICK ALFREDO
CABALLERO RODRIGUEZ a/k/a ALFR3D BEATS,

     Plaintiffs,  (Pro Se)

v.

UMG RECORDINGS, INC. d/b/a UNIVERSAL
MUSIC GROUP d/b/a UNIVERSAL MUSIC LATINO,
CAROLINA GIRALDO NAVARRO a/k/a KAROL G,
EDWIN VASQUEZ VEGA a/k/a MALDY,
MARVIN HAWKINS RODRIGUEZ a/k/a DJ MAFF,
JULIO MANUEL GONZALEZ TAVAREZ a/k/a
LENNY TAVÁREZ, and JUSTIN QUILES,

     Defendants.
_____/

## PLAINTIFFS' FIRST REQUEST FOR ADMISSION TO ALL DEFENDANTS

     Pursuant to Federal Rule of Civil Procedure 36, plaintiffs Jack D. Hernandez d/b/a Ocean Vibes Music Publishing ("Hernandez") and Dick Alfredo Caballero Rodriguez a/k/a ALFR3D Beats ("Alfr3d"), appearing pro se, hereby request that defendants UMG Recordings, Inc., Carolina Giraldo Navarro a/k/a Karol G, Edwin Vazquez Vega a/k/a Maldy, Marvin Hawkins Rodriguez a/k/a DJ Maff, Julio Manuel Gonzalez Tavarez a/k/a Lenny Tavárez, and Justin Quiles produce, respond separately and fully in writing to the following **Requests for Admissions** within thirty (30) days after service to plaintiff's Pro Se Jack D. Hernandez d/b/a Ocean Vibes

Music Publishing business mailing address at 16133 E Lancashire, Loxahatchee, Florida 33470, and to Dick Alfredo Caballero Rodriguez a/k/a ALFR3D Beats mailing address at: El Salvador, La Libertad Ciudad Marsella Q5, D31. Pursuant to Fed. R. Civ. P. 5(d)(1), this discovery request is not filed with the Court and is served on Defendants.

## **DEFINITIONS**

1. "Hernandez" refers to plaintiff Jack D. Hernandez, individually and d/b/a Ocean Vibes Music Publishing, and any of his agents, representatives, employees, or persons acting on his behalf.

2. "Alfr3d" refers to plaintiff Dick Alfredo Caballero Rodriguez, a/k/a ALFR3D Beats, and any of his agents, representatives, employees, or persons acting on his behalf.

3. "Plaintiffs" refers collectively to Jack Hernandez d/b/a Ocean Vibes Music Publishing and Alfr3d Beats.

4. "UMG" refers to UMG Recordings, Inc., and any of its parents, subsidiaries, affiliates, divisions, departments, executives, A&R staff, employees, representatives, distributors, attorneys, or persons acting on its behalf.

5. "Karol G" refers to defendant Carolina Giraldo Navarro a/k/a Karol G, and any of her managers, attorneys, employees, representatives, social-media teams, production staff, or persons acting on her behalf.

6. "DJ Maff" refers to defendant Marvin Hawkins Rodriguez a/k/a DJ Maff, and any of his agents, collaborators, assistants, studios, music programmers, representatives, attorneys, or persons acting on his behalf.

7. "Complaint" refers to the Complaint filed by Plaintiffs in this action.

8. "Ovy on the Drums" refers to Daniel Echavarría Oviedo a/k/a Ovy on the Drums, a Colombian producer and songwriter, and includes any of his managers, engineers, representatives, collaborators, attorneys, assistants, or persons acting on his behalf in any capacity.

9. "Gatúbela" refers to the musical composition and sound recording released by Karol G, titled "Gatúbela," including all stems, drafts, demos, MIDI files, DAW project files, edits, revisions, masters, metadata, or any versions in development.

10. "Punto G" refers to the musical composition and sound recording released by ALFR3D Beats, titled "Punto G" including all stems, drafts, demos, MIDI files, DAW project files, edits, revisions, masters, metadata, or any versions in development.

11. "BMI" refers to Broadcast Music, Inc. (BMI) is a performance rights organization in the United States. BMI is a performance rights organization ("PRO") that collects and distributes **public performance royalties** to songwriters and publishers. BMI maintains the **Songview repertory database**, which lists writers, publishers, IPI numbers, and royalty splits.

12. "ASCAP" refers to the American Society of Composers, Authors and Publishers (ASCAP) and is a performance rights organization in the United States. A U.S. performance

rights organization that collects royalties for ASCAP-affiliated writers and publishers. ASCAP participates in the **Songview** system to unify BMI and ASCAP data.

13. "SESAC" refers to the Society of European Stage Authors and Composers (SESAC) and is a for-profit performance-rights organization ("PRO") in the United States.

14. "Kobalt" refers to Kobalt Music Group, Ltd. and it is an independent rights management and music publishing company with presence in the United States.

15. "Work" refers to Plaintiffs' musical composition and sound recording titled "Punto G," including all stems, drafts, demos, DAW project files, metadata, MIDI files, and any versions of the composition.

16. "Communication(s)" means any statement, message, conversation, transmission, or exchange of information, whether oral or written, including emails, text messages, WhatsApp messages, Instagram messages, Facebook messages, TikTok messages, Telegram, Signal, Messenger, voicemails, voice notes, letters, comments, posts, drafts, digital messages, or any communication of any kind.

17. "Document" means any written, printed, typed, recorded, graphic, electronic, or digital matter of any kind, including all drafts and non-identical copies, whether stored physically or electronically, including but not limited to emails, contracts, business contracts, letters, agreements, invoices, notes, social-media files, screenshots, audio files, DAW project files, logs, backups, external drives, metadata, any medium upon which information or intelligence can be recorded or retrieved, including without limitation, any written, graphic, or audio matter, or other means of preserving thought or expression, and all tangible things from

which information can be processed or transcribed, including the originals and all non-identical copies, whether different from the original by reason of any notation made on such copy or otherwise, including but not limited to, correspondence, memoranda, notes, messages, letters, telegrams, teletypes, telefaxes, electronic mail entries, bulletins, inter-office or intra-office telephone calls, diaries, chronological data, minutes, books, reports, studies, summaries, pamphlets, printed matter, charts, ledgers, invoices, worksheets, receipts, returns, computer printouts, prospectuses, financial statements, schedules, affidavits, contracts, canceled checks, statements, transcripts, statistics, surveys, periodical articles, releases (any and all drafts, alterations, and modifications, changes, and amendments of any of the foregoing), graphic or audio records of representations of any kind, including, without limitation, electronic audio files in .mp3, .mp4, or any other format, microfilm, microfiche, photographs, charts, videotape, recordings, voice messages, motion pictures, mini-discs, floppy discs, memory sticks, USB drives, CD-ROM discs, DVDs, cassettes, tapes, records, discs, or mechanical or electronic recordings or representations of any kind. A draft or non-identical copy is a separate "document" within the meaning of this term. Computer generated or stored documents, including computer files or data, electronic mail, and information on hard disk that has been erased but is retrievable constitutes documents within the meaning of this definition.

18. "U.S. Copyright Office Public Record" means the official federal registration record for Gatúbela accessible through the U.S. Copyright Office, including Registration Nos. PA0002383038 (musical work) and SR0000947602 (sound recording).

19. "PA Registration / SR Registration" means the Public Artwork registration of the musical work Gatúbela (PA0002383038). SR Registration refers to the Sound Recording registration (SR0000947602).

20. "Preexisting Work" means any alleged earlier beat, demo, melody, rhythm pattern, harmonic progression, sketch, file, or musical concept that Defendants claim predates the final beat of Gatúbela.

21. "Earlier Version" means any alleged prior version—audio or project file—that Defendants claim existed before the commercially released instrumental of Gatúbela.

22. "Digital Audio Workstation ("DAW") Project File" means a native project file created in software such as FL Studio, Logic Pro, Pro Tools, Ableton, or Cubase that contains timestamps, file histories, and metadata reflecting the creation of a musical work.

23. "Songview Public Database" or "Songview Repertory Database" or "BMI Songview" or "Songview" means the combined BMI + ASCAP metadata database showing official ownership, publishing splits, writer affiliations, work IDs, ISWCs, and royalty allocation for a composition. BMI maintains the Songview Repertory Database, which lists writers, publishers, IPI numbers, and royalty splits.

24. "ISWC (International Standard Musical Work Code)" means the internationally recognized identifier for a composition. For Gatúbela, the ISWC is T3128000368.

25. "Writer/Composer Share" means the royalty percentage allocated to writers or composers, separated from the publishing share.

26. "Publisher Share" means the royalty percentage allocated to publishing entities and administrators, including BMI, ASCAP, "Other," and sub-publishers.

27. "Royalty Recipient" means any writer or publisher listed in the PRO repertory entitled to payment.

28. "Work ID" or "BMI Work ID" means the BMI identification number for Gatúbela: BMI Work ID 58152195.

29. "Recording Academy (Grammy Awards)" means The National Academy of Recording Arts and Sciences (NARAS), which administers the Grammy Awards and maintains submission records, composer certifications, eligibility verification materials, and originality disclosures.

30. "Grammy Submission" means any submission to The Recording Academy for Grammy Award consideration, including entry forms, composer lists, certifications, lead sheets, affidavits, audio submissions, eligibility confirmations, and originality attestations.

31. "Grammy Lead Sheet" means the official composer list and declaration submitted as part of Grammy entry requirements, identifying each composer, writer, producer, and contributor to the musical work.

32. "Grammy Eligibility Period" means the specific commercial release window required for a musical work to qualify for Grammy Award consideration. A work must have been first released during that time period, which directly limits the allowable creation date of the work.

33. "Certified Originality Statement" means any representation, declaration, certification, or sworn statement made to The Recording Academy stating that a musical work is original, not derivative, and not based upon a preexisting musical work.

34. "Testimony to Award Organizations" means any statement, certification, disclosure, or representation made by Defendants or their agents to Grammy, Latin Grammy, Billboard, ASCAP, BMI, or any other award body relating to composers, creation dates, originality, or derivative status.

35. "Latin Recording Academy" or "Latin Grammy Awards" means the organization that administers the Latin Grammy Awards, including submission records, composer disclosures, eligibility rules, and originality requirements.

36. "Latin Grammy Submission" means any document, form, certification, composer list, or audio submitted to the Latin Recording Academy for award consideration.

37. "Billboard Charts" means music industry charts maintained by Billboard reflecting commercial performance, which rely on the officially released version of a musical composition or recording.

38. "ASCAP Awards" or "BMI Awards" means industry awards granted by ASCAP or BMI based on authenticated performance records, officially registered writers, and their recognized musical works.

39. "Award Organization Originality" means requirements Rules applicable to Grammy, Latin Grammy, ASCAP, BMI, Billboard, and other award bodies requiring accurate disclosure of:

- All composers
- Creation dates
- Derivative status

- Preexisting material

- Accurate authorship attribution

Any misrepresentation in these submissions constitutes a false certification under award body rules.

40. "Award Submission Records" means all forms, certifications, declarations, metadata sheets, composer lists, affidavits, eligibility statements, and audio files submitted by Defendants or their agents to any award body concerning Gatúbela.

41. "Award Recognition" means any nomination, award, charting, acknowledgment, or public recognition received by Gatúbela from any music award organization.

42. "Person" means any natural person, corporation, partnership, agency, entity, or organization.

43. "Concerning" means relating to, referring to, regarding, involving, analyzing, discussing, describing, evidencing, reflecting, or pertaining to the subject matter.

44. "Including" means including without limitation.

45. "Each," "Any," and "All" shall be interpreted broadly and inclusively to bring within the scope of these Requests all responsive information.

46. "And" and "Or" shall be interpreted conjunctively or disjunctively to bring within the scope of these Requests any information that might otherwise fall outside them.

47. Words used in the singular include the plural, and vice versa.

48. Words importing any gender include all genders.

## <u>INSTRUCTIONS</u>

1. Each Defendant must admit or deny each Request for Admission.

2. A denial must: (a) fairly respond to the substance of the matter; (b) state in detail the reasons for the denial; and (c) identify all facts, documents, and evidence supporting the denial.

3. A claim of insufficient knowledge is only permitted if the Defendant states that a reasonable inquiry was made and the information known or readily obtainable is insufficient to enable a response.

4. These Requests are continuing in nature under Rule 26(e).

5. Unless otherwise stated, "Defendants" refers only to: UMG Recordings, Inc., Carolina Giraldo Navarro a/k/a Karol G, Marvin Hawkins Rodriguez a/k/a DJ Maff.

6. Respond separately and fully in writing to the following **Requests for Admissions** within thirty (30) days after service to plaintiff's Pro Se Jack D. Hernandez d/b/a Ocean Vibes Music Publishing business mailing address at 16133 E Lancashire, Loxahatchee, Florida 33470, and to Dick Alfredo Caballero Rodriguez a/k/a ALFR3D Beats mailing address at: El Salvador, La Libertad Ciudad Marsella Q5, D31.

**REQUESTS FOR ADMISSION**

**SECTION A — Copyright Registration RFAs (1–6)**

RFA 1: Admit that the public copyright record for PA0002383038 does not list any preexisting work.

RFA 2: Admit that the public copyright record for SR0000947602 does not list any preexisting work.

RFA 3: Admit that the public copyright record for PA0002383038 does not classify Gatúbela as a derivative work.

RFA 4: Admit that the public copyright record for SR0000947602  does not classify Gatúbela as a derivative work.

 RFA 5: Admit that neither registration identifies any "earlier beat," "earlier version," or preexisting musical material.

RFA 6: Admit that the public copyright record presents Gatúbela as entirely new and containing no preexisting musical material.

**SECTION B — Work-for-Hire RFAs (7–10)**

RFA 7: Admit that the public copyright record PA0002383038 identifies Gatúbela as a "work made for hire."

RFA 8: Admit that the public copyright record SR0000947602 identifies Gatúbela as a "work made for hire."

RFA 9: Admit that a musical work cannot be a "work made for hire" unless a valid work-for-hire agreement existed at the time of creation.

RFA 10: Admit that DJ Maff could not have created any "earlier version" of the beat as a work-for-hire unless such agreement existed at the time.

**SECTION C — DJ Maff's Public Statements (11–14)**

RFA 11: Admit that DJ Maff publicly stated he created the beat for Gatúbela "months earlier" or "more than nine months earlier."

RFA 12: Admit that the public copyright records for PA0002383038 and SR0000947602 do not reflect the timeline publicly stated by DJ Maff.

RFA 13: Admit that Defendants have not produced any document supporting DJ Maff's claim of an earlier version created months before release.

RFA 14: Admit that DJ Maff's message to Alfr3d Beats via Instagram stating in Spanish language and translated into English language ("don't tell anyone") was sent after Plaintiffs publicly released the musical work "Punto G."

**SECTION D — Metadata / Technical Evidence (15–18)**

RFA 15: Admit that Defendants have not produced any native DAW project files showing an earlier version of the beat.

RFA 16: Admit that Defendants have not produced timestamped audio files proving earlier creation.

RFA 17: Admit that Defendants cannot identify the date, time, or studio of any alleged earlier creation.

RFA 18: Admit that no producer, engineer, or studio has confirmed the existence of an earlier version.

**SECTION E — Ownership / Chain of Title (19–22)**

RFA 19: Admit that the public copyright record lists UMG (or its affiliate) as the owner of Gatúbela.

RFA 20: Admit that DJ Maff is not listed as an owner or co-owner.

RFA 21: Admit that no earlier version of Gatúbela was ever registered.

RFA 22: Admit that Defendants have not produced any document showing ownership of any alleged earlier version.

### SECTION F — Registration Accuracy / 17 U.S.C. § 411(b) (23–25)

RFA 23: Admit that if any earlier beat existed, Defendants were required to disclose it as "preexisting material."

RFA 24: Admit that the copyright records of SR0000947602 and copyright records of PA0002383038 contain no such disclosure.

RFA 25: Admit that the public copyright records of SR0000947602 and PA0002383038 registration would contain materially inaccurate information if earlier material existed but was not disclosed.

### SECTION G — RFAs to CAROLINA GIRALDO NAVARRO a/k/a KAROL G (26–34)

RFA 26: Admit that you did not create or produce the Gatúbela instrumental.

RFA 27: Admit that you never reviewed any earlier version of the beat.

RFA 28: Admit that you do not possess any files showing an earlier version.

RFA 29: Admit that you were not involved in preparing or filing any copyright registration for Gatúbela.

RFA 30: Admit that you never instructed anyone to disclose preexisting material.

RFA 31: Admit that you have no personal knowledge that any beat was created "months earlier."

RFA 32: Admit that you relied entirely on producers or UMG personnel for information about beat creation.

RFA 33: Admit that you never observed DJ Maff create any earlier beat for the song composition "Gatúbela".

RFA 34: Admit that you cannot identify any date or studio session where an earlier version of the song composition "Gatúbela" was created.

### SECTION H — UMG-Specific RFAs (35–40)

RFA 35: Admit that UMG did not possess any earlier version of the beat when it filed the copyright registration.

RFA 36: Admit that UMG did not disclose any preexisting musical material in either registration.

RFA 37: Admit that UMG was required to disclose such material if it existed.

RFA 38: Admit that UMG has not produced timestamped files showing earlier creation.

RFA 39: Admit that UMG has not produced any written agreement showing DJ Maff created an earlier beat as a work-for-hire.

RFA 40: Admit that UMG has no document identifying the date, time, or place of creation of any alleged earlier beat.

### SECTION I — Additional RFAs to All Defendants (41–55)

RFA 41: Admit that no Defendant has produced any audio file predating Plaintiffs' work.

RFA 42: Admit that no Defendant has produced any witness who heard an earlier beat.

RFA 43: Admit that no Defendant has produced any storage logs or cloud backups showing earlier creation.

RFA 44: Admit that no Defendant has produced any phone, laptop, or device metadata showing earlier creation.

RFA 45: Admit that DJ Maff has given inconsistent public explanations regarding the creation of the beat.

RFA 46: Admit that no Defendant has produced any evidence validating DJ Maff's earlier timeline.

RFA 47: Admit that no Defendant can identify any date on which an earlier beat was completed.

RFA 48: Admit that no Defendant can identify any person who witnessed DJ Maff create an earlier version.

RFA 49: Admit that no Defendant has produced any email, message, or document referencing an earlier beat before Plaintiffs released their work.

RFA 50: Admit that Defendants relied entirely on DJ Maff's unverified statements regarding creation dates.

RFA 51: Admit that Defendants cannot identify any musical element in Gatúbela that originated before Plaintiffs' composition.

RFA 52: Admit that no earlier version of Gatúbela was delivered to UMG before Plaintiffs published Punto G.

RFA 53: Admit that no earlier version of Gatúbela was delivered to Karol G before Plaintiffs' work was publicly released.

RFA 54: Admit that no earlier version of Gatúbela has ever been produced in discovery.

RFA 55: Admit that you have not produced any evidence supporting the claim that the beat was created "months earlier" or "nine months earlier."

### SECTION J — BMI Royalty Records / Performance Rights (56–67)

RFA 56: Admit that Gatúbela is registered with Broadcast Music, Inc. (BMI) as a public performance musical work.

RFA 57: Admit that the BMI public repertory database lists UMG, or a UMG-affiliated entity, as a publisher or royalty recipient for Gatúbela.

RFA 58: Admit that the BMI public repertory database does not list DJ Maff as a songwriter, composer, or publisher for Gatúbela.

RFA 59: Admit that the BMI public repertory database does not list DJ Maff as a royalty recipient for Gatúbela.

RFA 60: Admit that the BMI repertory database does not list any "preexisting work" or earlier version associated with Gatúbela.

RFA 61: Admit that BMI payments for Gatúbela have been made to the parties identified in the BMI public repertory database.

RFA 62: Admit that neither DJ Maff nor any entity owned or controlled by him has received BMI royalties for Gatúbela.

RFA 63: Admit that BMI has never issued performance royalties for any alleged earlier version of Gatúbela.

RFA 64: Admit that no Defendant has produced any BMI record showing royalties paid for an earlier beat or earlier version.

RFA 65: Admit that the BMI public records do not support any claim that DJ Maff created a prior independent work or earlier version of the beat for Gatúbela.

RFA 66: Admit that the BMI public records do not identify Karol G as having created any prior independent work or earlier version of the beat.

RFA 67: Admit that the BMI public records do not identify UMG, or any UMG-affiliated entity, as claiming that Gatúbela was created from an earlier version of the beat.

**SECTION K — BMI / ASCAP Songview Public Record RFAs (68–87)**

RFA 68: Admit that BMI's Songview public repertory entry for Gatúbela (BMI Work ID 58152195; ISWC T3128000368) lists total control as: BMI 62.50%, ASCAP 30%, and Other 7.50%.

Page 16

RFA 69: Admit that the BMI Songview public repertory entry identifies Gatúbela as a BMI Award Winning Song.

RFA 70: Admit that the BMI Songview public record lists the following writers as affiliated with BMI: Carolina Giraldo Navarro Marvin Hawkins Rodriguez (DJ Maff) Justin Rafael Quiles Edwin F. Vázquez Vega

RFA 71: Admit that the BMI Songview public record does not list Plaintiffs as writers, composers, or affiliated parties for Gatúbela.

RFA 72: Admit that the BMI Songview public record lists Marvin Hawkins Rodriguez a/k/a DJ Maff as a BMI-affiliated writer, but not as a publisher.

RFA 73: Admit that none of the publishers listed in the BMI Songview public record— Karol G Music Production Publishing (BMI), La Promesa Publishing (BMI), Maldy Publishing (BMI), and WC Music Corp (ASCAP) —are owned or controlled by Plaintiffs.

RFA 74: Admit that the BMI Songview public record does not list DJ Maff as a publisher of Gatúbela.

RFA 75: Admit that the BMI Songview public record shows that BMI controls 31.25% of the Writers/Composers share for Gatúbela.

RFA 76: Admit that the BMI Songview public record shows that ASCAP controls 15% of the Writers/Composers share for Gatúbela.

RFA 77: Admit that the BMI Songview public record does not list any writer, publisher, or party associated with any alleged "earlier version" or "preexisting work."

RFA 78: Admit that the BMI Songview public record does not reference any earlier beat, earlier version, earlier composition, or preexisting musical material connected to Gatúbela.

RFA 79: Admit that BMI performance royalties for Gatúbela have been or will be paid to the writers and publishers listed in the BMI Songview repertory entry.

RFA 80: Admit that BMI does not issue royalties to any writer or publisher unless they are listed in the BMI Songview repertory entry or otherwise affiliated.

RFA 81: Admit that neither DJ Maff nor any entity controlled by him is listed as a publisher receiving a royalty share for Gatúbela.

RFA 82: Admit that no BMI public record identifies DJ Maff as owning any portion of the publishing rights in Gatúbela.

RFA 83: Admit that BMI's public record does not show royalties being paid for any composition titled "earlier beat," "original version," or any title other than Gatúbela.

RFA 84: Admit that BMI has not issued any royalty distributions for any musical work attributed to DJ Maff that predates the published beat of Gatúbela.

RFA 85: Admit that Defendants have not produced any BMI statement, royalty data, or publishing agreement showing that DJ Maff received royalties for an earlier or preexisting musical work related to Gatúbela.

RFA 86: Admit that BMI's public data contradicts any claim that DJ Maff independently owned or controlled a prior musical composition used in Gatúbela.

RFA 87: Admit that BMI's public Songview listing does not corroborate DJ Maff's claim that he created a separate earlier beat which would entitle him to writer, publisher, or royalty credit independent of Gatúbela.

### SECTION L — U.S. Copyright Search Results RFAs (88–97)

RFA 88: Admit that a search of the U.S. Copyright Office public database for the keyword "gatubela" returns only two registrations for Gatúbela.

RFA 89: Admit that the only two registrations that appear in the U.S. Copyright Office database under the keyword "gatubela" pertains to the song "gatubela" in question and those are: (a) PA0002383038 (musical work), and (b) SR0000947602 (sound recording).

RFA 90: Admit that the U.S. Copyright Office public database does not contain any registration for an "earlier beat," "earlier version," or "preexisting work" related to Gatúbela.

RFA 91: Admit that the U.S. Copyright Office public database does not list Marvin Hawkins Rodriguez a/k/a DJ Maff as the registrant or claimant of any composition titled "Gatúbela," "Gatubela," or any similar title.

RFA 92: Admit that the U.S. Copyright Office public database does not contain any copyright registration predating PA0002383038 that corresponds to the musical work used in Gatúbela.

RFA 93: Admit that a search of the U.S. Copyright Office public database does not reveal any registration corresponding to a musical work alleged to predate the musical work used in Gatúbela.

RFA 94: Admit that no copyright registration appears in the U.S. Copyright Office public database for a musical work alleged to predate the musical material embodied in Gatúbela.

RFA 95: Admit that the U.S. Copyright Office public record does not show any preexisting musical work related to Gatúbela.

RFA 96: Admit that if an earlier musical work existed, a corresponding registration could appear in the U.S. Copyright Office public database.

RFA 97: Admit that a search of the U.S. Copyright Office public database does not show any registration for a musical work alleged to predate Gatúbela.

**SECTION M — Music Awards, Submissions, Composer Certifications, and Eligibility Records (RFAs 98–152)**

RFA 98: Admit that Gatúbela was submitted to The Recording Academy for Grammy Award consideration.

RFA 99: Admit that the Grammy submission for Gatúbela required the listing of all composers and songwriters.

RFA 100: Admit that the Grammy submission for Gatúbela did not identify DJ Maff as the sole composer.

RFA 101: Admit that the Grammy submission did not identify any "earlier version" or "preexisting musical work."

RFA 102: Admit that Grammy rules require all credited composers to certify the truthfulness of creation information submitted.

RFA 103: Admit that the Grammy submission identified the composition as an original musical work, not a derivative work.

RFA 104: Admit that Grammy eligibility rules require the work to have been commercially released within a specific eligibility period.

RFA 105: Admit that the Grammy eligibility period applicable to Gatúbela does not reflect a creation date "nine months earlier" than release.

RFA 106: Admit that no Grammy documents submitted by Defendants identify any earlier creation date than the commercial release date.

RFA 107: Admit that the Grammy submission for Gatúbela does not indicate that any musical material was created months prior to the release date.

RFA 108: Admit that UMG or its affiliates submitted the Grammy entry for Gatúbela.

RFA 109:  Admit that no Grammy submission includes any audio file or documentation supporting the existence of an earlier beat.

RFA 110: Admit that no Grammy submission lists DJ Maff as the original creator of any composition predating Gatúbela.

RFA 111: Admit that Plaintiffs were not listed as composers in the Grammy submission for Gatúbela.

RFA 112: Admit that no Grammy-related documents identify any musical work alleged to predate Gatúbela.

RFA 113: Admit that Grammy lead sheets reflect the official, certified composer list.

RFA 114: Admit that Grammy lead sheets do not list any preexisting material.

RFA 115: Admit that Grammy lead sheets do not show DJ Maff as the exclusive creator of the composition.

RFA 116: Admit that Gatúbela was submitted for Latin Grammy consideration.

RFA 117: Admit that the Latin Grammy submission followed the same composer disclosure rules required by the Recording Academy.

RFA 118: Admit that the Latin Grammy submission did not list an earlier version of the composition.

RFA 119: Admit that Latin Grammy rules require disclosure of preexisting musical material.

RFA 120: Admit that the Latin Grammy submission did not list any preexisting musical material for Gatúbela.

RFA 121: Admit that the Latin Grammy submissions did not identify DJ Maff as having created the beat months earlier.

RFA 122: Admit that the Latin Grammy submission for Gatúbela did not identify any earlier beat or earlier musical version.

RFA 123: Admit that Gatúbela charted on Billboard upon release.

RFA 124: Admit that Billboard charting is based on the commercial release version of the musical work.

RFA 125: Admit that Billboard did not identify any earlier version of Gatúbela.

RFA 126: Admit that Billboard listings do not reference DJ Maff as the creator of a prior composition.

RFA 127: Admit that Billboard never listed or recognized a separate, earlier version of Gatúbela.

RFA 128: Admit that the Billboard recognition for Gatúbela corresponds to the publicly released version of the musical work.

RFA 129: Admit that Gatúbela was submitted for ASCAP recognition.

RFA 130: Admit that ASCAP award submissions require accurate listing of all credited composers.

RFA 131: Admit that the ASCAP databases do not list any preexisting version of Gatúbela.

RFA 132: Admit that ASCAP does not identify DJ Maff as the owner of any musical work alleged to predate Gatúbela.

RFA 133: Admit that ASCAP never honored or recognized any earlier beat created by DJ Maff.

RFA 134: Admit that ASCAP did not receive any submission identifying an earlier creation date for Gatúbela.

RFA 135: Admit that BMI has recognized or could recognize Gatúbela for performance awards.

RFA 136: Admit that BMI's awards are based on the officially registered composition.

RFA 137: Admit that BMI did not list any earlier version of Gatúbela.

RFA 138: Admit that BMI's award review process does not include any musical work alleged to predate Gatúbela.

RFA 139: Admit that BMI's award records do not identify DJ Maff as the sole creator of Gatúbela.

RFA 140: Admit that BMI has no award category or recognition for an earlier unregistered version of the musical work.

RFA 141: Admit that the BMI_award-related database includes only the officially recognized version of Gatúbela.

RFA 142: Admit that all major award bodies require truthful disclosure of composer and creation information.

RFA 143: Admit that Defendants submitted information representing Gatúbela as original.

RFA 144: Admit that Defendants did not disclose any earlier beat in any award submission.

RFA 145: Admit that Defendants never provided award bodies with a copy of any "earlier version."

RFA 146: Admit that no award body ever recognized an earlier version of Gatúbela.

RFA 147: Admit that no award body ever listed DJ Maff as the sole composer of Gatúbela.

RFA 148: Admit that no award body ever listed an alternate creation date supporting DJ Maff's "months earlier" claim.

RFA 149: Admit that Defendants have not produced any document from any award organization showing an earlier creation date.

RFA 150: Admit that award submissions for Gatúbela did not identify any earlier beat or earlier musical version.

RFA 151: Admit that no award submission listed the work as derivative.

RFA 152: Admit that all award organizations treated Gatúbela as a newly created composition without identifying any preexisting musical material.

### SECTION N — Award Submissions: Statements, Testimony, and Certifications of Originality (RFAs 153–172)

RFA 153: Admit that Defendants certified to The Recording Academy (Grammy Awards) that Gatúbela was not based on any preexisting musical work.

RFA 154: Admit that Defendants represented to the Grammy Awards that Gatúbela was an original composition.

RFA 155: Admit that Defendants testified, certified, or declared in the Grammy submission that the composition was original and not derivative.

RFA 156: Admit that Defendants did not disclose to the Grammy Awards that any earlier beat or earlier version existed.

RFA 157: Admit that Defendants did not testify to The Recording Academy that DJ Maff created an earlier version of the beat.

RFA 158: Admit that Defendants did not provide the Grammy Awards with any documentation identifying a preexisting work used in Gatúbela.

RFA 159: Admit that Defendants certified under Grammy rules that all information concerning the composition was accurate and complete.

RFA 160: Admit that, in order to qualify for Grammy consideration, Defendants testified that the composition met the Academy's originality requirements.

RFA 161: Admit that Grammy submissions require disclosing whether any part of the work was derived from a prior composition.

RFA 162: Admit that Defendants did not disclose to the Grammy Awards that Gatúbela was derived from any earlier material.

RFA 163: Admit that Defendants certified to the Latin Grammy Awards that Gatúbela was not based on a preexisting work.

RFA 164: Admit that Defendants did not disclose any earlier beat or earlier version in the Latin Grammy submission.

RFA 165: Admit that Defendants declared the work as original in Latin Grammy filings.

RFA 166: Admit that Defendants represented to the Latin Recording Academy that the composition did not contain preexisting material.

RFA 167: Admit that Defendants certified that their Latin Grammy submission was truthful and accurate.

RFA 168: Admit that Defendants represented to ASCAP that Gatúbela was an original work and not based on a preexisting composition.

RFA 169: Admit that Defendants represented to BMI that Gatúbela was an original work.

RFA 170: Admit that Billboard was not informed of any earlier beat or earlier musical version of Gatúbela.

RFA 171: Admit that no award or charting organization was informed by Defendants that Gatúbela incorporated a preexisting musical work.

RFA 172: Admit that Defendants' public recognition and industry award submissions do not identify any prior version of the beat alleged to have been created by DJ Maff.

Dated: December 10, 2025                     Respectfully submitted,

                                             **JACK D. HERNANDEZ**
                                             d/b/a Ocean Vibes Music Publishing
                                             *Plaintiff, Pro Se*

                                             By: */s/ Jack D. Hernandez*
                                             **Jack D. Hernandez**
                                             16133 E Lancashire
                                             Loxahatchee, Florida 33470
                                             Email: jackdariohernandez@gmail.com

                                             **DICK ALFREDO CABALLERO
                                             RODRIGUEZ**
                                             a/k/a ALFR3D Beats
                                             *Plaintiff, Pro Se*

                                             By: */s/ Dick Alfredo Caballero*
                                             **Dick Alfredo Caballero**
                                             El Salvador, La Libertad
                                             Ciudad Marsella Q5, D31
                                             Email: alfr3dmusic@hotmail.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 10th day of December 2025, a true and correct copy of the foregoing PLAINTIFFS' FIRST REQUEST FOR ADMISSION TO ALL DEFENDANTS was served by e-mail to all counsel of record and to any unrepresented parties pursuant to Federal Rule of Civil Procedure 5. The undersigned Pro Se Plaintiffs certify that their digital signatures included in this document are intended to serve as valid signatures for all legal purposes under Federal Rule of Civil Procedure 11 and the Local Rules of the Southern District of Florida. Plaintiffs further certify that this PLAINTIFFS' FIRST REQUEST FOR ADMISSION TO ALL DEFENDANTS is made in good faith and that all signatures made electronically are adopted as if personally signed. The undersigned Pro Se Plaintiffs HEREBY CERTIFY that on this 10th day of December, 2025, a true and correct copy of the foregoing PLAINTIFFS' FIRST REQUEST FOR ADMISSION TO ALL DEFENDANTS was mailed to all counsel of record for Defendants by U.S. Mail to their respective business addresses and via electronic mail from email address jackdariohernandez@gmail.com and sent to the following addresses:

**Brendan Stuart Everman, Esq.**
beverman@pryorcashman.com
ksuarez@pryorcashman.com

**James George Sammataro, Esq.**
jsammataro@pryorcashman.com
docketing@pryorcashman.com
ksuarez@pryorcashman.com

                                        **JACK D. HERNANDEZ**
                                        d/b/a Ocean Vibes Music Publishing
                                        *Plaintiff, Pro Se*

                                        By: */s/ Jack D. Hernandez*
                                        **Jack D. Hernandez**
                                        16133 E Lancashire
                                        Loxahatchee, Florida 33470
                                        Email: jackdariohernandez@gmail.com

**DICK ALFREDO CABALLERO
RODRIGUEZ**
a/k/a ALFR3D Beats
*Plaintiff, Pro Se*

By: */s/ Dick Alfredo Caballero*
**Dick Alfredo Caballero**
El Salvador, La Libertad
Ciudad Marsella Q5, D31
Email: alfr3dmusic@hotmail.com

**EXHIBIT - P-0025**

2/6/26, 4:14 AM                 Gmail - Service of Notices of Deposition – Karol G and DJ Maff - Hernandez et al. v. UMG Recordings, Inc. et al., Case No. 1:25-c-8...

 Gmail                                                    **Jack Hernandez <jackdariohernandez@gmail.com>**

## Service of Notices of Deposition – Karol G and DJ Maff - Hernandez et al. v. UMG Recordings, Inc. et al., Case No. 1:25-cv-80338

**Everman, Brendan** <BEverman@pryorcashman.com>                          Tue, Jan 6, 2026 at 1:40 PM
To: Jack Hernandez <jackdariohernandez@gmail.com>
Cc: "alfr3dmusic@hotmail.com" <alfr3dmusic@hotmail.com>, "Sammataro, James" <JSammataro@pryorcashman.com>,
"Savarese, Kevin" <KSavarese@pryorcashman.com>

Hi Jack:

Thank you for speaking with me today.  As discussed, UMG, Karol G, and DJ Maff ("Defendants") object to plaintiffs' subpoenas, deposition notices, and requests for admission on the grounds that they are untimely.  The discovery cutoff is January 8, 2026.  *See* ECF No. 58.  However, Plaintiffs' subpoenas call for documents to be produced after that date.  Karol G also objects to the Meta subpoena on the grounds that it is overbroad, harassing, seeks irrelevant and confidential information, and is an invasion of privacy.

Plaintiffs' requests for admission (served on December 10, 2025) are also improper because Defendants' responses would be due after the discovery cutoff.  *See* S.D. Fla. L.R.  26.1(d) ("[W]ritten discovery requests ... must be served in sufficient time that the response is due on or before the discovery cutoff date. Failure by the party seeking discovery to comply with this paragraph obviates the need to respond or object to the discovery ... or move for a protective order.").

Finally, on December 29, 2025, plaintiffs unilaterally noticed the depositions of Karol G and DJ Maff, two Colombian residents, to occur on January 6, 2026.  The deposition notices are untimely because they provide only eight days' notice before these depositions.  *See* S.D. Fla. L.R. 26.1(h) (a "party desiring to take the deposition in another State of any person upon oral examination shall give at least fourteen (14) days' notice"); *Goins v. Royal Caribbean Cruises, Ltd.*, No. 16-cv-21368, 2017 WL 681162, at *4 n.4 (S.D. Fla. Feb. 21, 2017) ("Local Rule 26.1(h) requires at least 14 days written notice to the parties and deponents for out of state depositions," including where the witness is "not only out of state but out of the country"); *Garcia v. Navarro*, No. 24-cv-23066, D.E. 106 at 4-5 (S.D. Fla. April 25, 2025) ("Karol G resides in Colombia. She is therefore due fourteen days' notice prior to the taking of any deposition."); *O'Boyle v. Sweetapple*, No. 14-cv-81250, 2016 WL 3661930, at *2-3 (S.D. Fla. June 28, 2016) (granting the protective order where the *pro se* plaintiff failed to provide the requisite notice period under Local Rule 26.1(h)).

With respect to the draft protective order regarding confidentiality, you will let us know by tomorrow whether you intend to retain counsel, which could moot our dispute regarding the treatment of "attorneys' eyes only" documents and information.

[Quoted text hidden]
[Quoted text hidden]

**EXHIBIT - P-0026**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**No.: 1:25-cv-80338-Dimitrouleas/Reinhart**

JACK D. HERNANDEZ d/b/a OCEAN VIBES
MUSIC PUBLISHING, and DICK ALFREDO
CABALLERO   RODRIGUEZ   a/k/a   ALFR3D
BEATS,

               Plaintiffs,

v.

UMG RECORDINGS, INC. d/b/a UNIVERSAL
MUSIC   GROUP   d/b/a   UNIVERSAL   MUSIC
LATINO,   CAROLINA   GIRALDO   NAVARRO
a/k/a KAROL G, EDWIN VASQUEZ VEGA a/k/a
MALDY,   MARVIN   HAWKINS   RODRIGUEZ
a/k/a DJ MAFF, JULIO MANUEL GONZALEZ
TAVAREZ a/k/a LENNY TAVEREZ, and JUSTIN
QUILES,

               Defendants.

_____/

## DEFENDANTS' FIRST SET OF INTERROGATORIES

Pursuant to Federal Rule of Civil Procedure 33, defendants UMG Recordings, Inc.,

Carolina Giraldo Navarro *p/k/a* Karol G, and Marvin Hawkins Rodriguez *p/k/a* DJ Maff request

that plaintiffs Jack D. Hernandez *d/b/a* Ocean Vibes Music Publishing and Dick Alfredo Caballero

Rodriguez *a/k/a* Alfr3d Beats answer, in writing under oath, these interrogatories within 30 days.

## DEFINITIONS

1. "Hernandez" shall refer to plaintiff Jack D. Hernandez *d/b/a* Ocean Vibes Music

Publishing and any of his agents, attorneys, or any other persons purporting to act on his behalf.

2. "Alfr3d" shall refer to plaintiff Dick Alfredo Caballero Rodriguez and any of his

agents, attorneys, or any other persons purporting to act on his behalf.

3. "Plaintiffs" shall refer to Hernandez and Alfr3d.

4.      "UMG" shall refer to defendant UMG Recordings, Inc. and any agents, attorneys, employees, or any other persons purporting to act on its behalf.

5.      "DJ Maff" shall refer to Marvin Hawkins Rodriguez *p/k/a* DJ Maff and any of his agents, attorneys, or any other persons purporting to act on his behalf.

6.      "Karol G" shall refer to Carolina Giraldo Navarro p/k/a Karol G and any of her agents, attorneys, or any other persons purporting to act on her behalf.

7.      "Complaint" shall refer to the Complaint filed in this case on November 20, 2024.

8.      "Gatúbela" shall refer to the composition and sound recording for Karol G's song entitled "Gatúbela," which is referenced in Paragraph 1 of the Complaint, among many other places.

9.      "Work" shall refer to the composition and sound recording for Alfr3d's song entitled "Punto G," which is referenced in Paragraph 3 of the Complaint, among many other places.

10.     "Communication(s)" means any statement, presentation, disclosure, or transmittal of information, in the form of facts, ideas, inquiries, or otherwise, and in any format available, including but not limited to, correspondence and e-mail correspondence, text messages, messages transmitted through any electronic messaging platform and/or mobile phone applications, and/or hand-written letters or notes.

11.     "Document" means any medium upon which information or intelligence can be recorded or retrieved, including without limitation, any written, graphic, or audio matter, or other means of preserving thought or expression, and all tangible things from which information can be processed or transcribed, including the originals and all non-identical copies, whether different from the original by reason of any notation made on such copy or otherwise, including but not limited to, correspondence, memoranda, notes, messages, letters, telegrams, teletypes, telefaxes,

electronic mail entries, bulletins, inter-office or intra-office telephone calls, diaries, chronological data, minutes, books, reports, studies, summaries, pamphlets, printed matter, charts, ledgers, invoices, worksheets, receipts, returns, computer printouts, prospectuses, financial statements, schedules, affidavits, contracts, canceled checks, statements, transcripts, statistics, surveys, periodical articles, releases (any and all drafts, alterations, and modifications, changes, and amendments of any of the foregoing), graphic or audio records of representations of any kind, including, without limitation, electronic audio files in .mp3, .mp4, or any other format, microfilm, microfiche, photographs, charts, videotape, recordings, voice messages, motion pictures, mini-discs, floppy discs, memory sticks, USB drives, CD-ROM discs, DVDs, cassettes, tapes, records, discs, or mechanical or electronic recordings or representations of any kind.  A draft or non-identical copy is a separate "document" within the meaning of this term.  Computer generated or stored documents, including computer files or data, electronic mail, and information on hard disk that has been erased but is retrievable constitutes documents within the meaning of this definition.

12.     The term "Person" means any natural person or any business, professional, social, legal or governmental entity.

13.     "Concerning" means relating, referring, or pertaining to, describing, evidencing, embodying, constituting, supporting, corroborating, providing, showing, refuting, disputing, rebutting, and/or contradicting.

14.     "Including" means "including without limitation."

15.     Each of the terms "each" and "any" and "all" shall be construed inclusively to mean "each and any and all."

16.     The connectives "and" and "or" shall be construed either conjunctively or disjunctively as necessary to bring within the scope of the discovery Request all responses that might otherwise be construed to be outside of its scope.

17.     The use of the singular form of any word includes the plural and vice versa.

18.     The use of a pronoun of any gender shall be construed as including, as applicable, any gender.

## **INTERROGATORIES**

### **INTERROGATORY NO. 1:**

Identify the original date of creation of the Work.

**Response:**

### **INTERROGATORY NO. 2:**

Identify the date, method of communication (*i.e.*, text message, direct message, phone call, in-person discussion, email, etc.) and general substance of each of Plaintiffs' communications with DJ Maff, Karol G, or UMG.

**Response:**

### **INTERROGATORY NO. 3:**

Identify all revenues generated by the license or sale of the Work.

**Response:**

**INTERROGATORY NO. 4:**

Identify all agreements, dated between January 1, 2018 and December 31, 2022, between Alfr3d and third parties relating to Alfr3d's music compositions or production services.

**Response:**

**INTERROGATORY NO. 6:**

Identify the total compensation received by Alfr3d for his music composition or production services between January 1, 2018 and December 31, 2022.

**Response:**

**INTERROGATORY NO. 7:**

Identify all actual or prospective expert musicologists that Plaintiffs have consulted about Gatúbela as well as any reports, summaries, or analyzes prepared by each expert.

**Response:**

**INTERROGATORY NO. 8:**

Identify all reports or summaries explaining or describing the allegations in Paragraph 37 of the Complaint.

**Response:**

**INTERROGATORY NO. 9:**

Identify all facts supporting or evidencing Plaintiffs' allegation that "the Work was widely disseminated prior to the creation and/or final completion and publication of Gatúbela," as alleged in Paragraph 22 of the Complaint.

**Response:**

**INTERROGATORY NO. 10:**

Identify all facts supporting or evidencing Plaintiffs' allegation that Defendants committed "willful" infringement, as alleged in Paragraph 49 of the Complaint.

**Response:**

**INTERROGATORY NO. 11:**

Identify all documents and communications supporting, proving or evidencing the allegations in Paragraph 68 of the Complaint.

**Response:**

**INTERROGATORY NO. 12:**

Identify all categories of damages Plaintiffs are seeking to recover from the Defendants in this case, including those identified in Paragraph 65 of the Complaint. For each category of damage, please assign a dollar value and provide an itemized calculation showing how Plaintiffs ascertained that dollar value. To the extent Plaintiffs seek to recover attorneys' fees, please identify the legal or factual basis for Plaintiffs' alleged entitlement to attorneys' fees.

**Response:**

Dated:  November 21, 2025

**PRYOR CASHMAN LLP**

*Attorneys for UMG, Karol G, and DJ Maff*
255 Alhambra Circle, 8th Floor
Miami, Florida 33134
Telephone No: (786) 582-3012

By: */s/ James G. Sammataro*
James G. Sammataro
Florida Bar No. 520292
Brendan S. Everman
Florida Bar No. 68702
jsammataro@pryorcashman.com
beverman@pryorcashman.com
ksuarez@pryorcashman.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this document was served on Plaintiffs as follows:

<u>Via Email on November 21, 2025</u>
Chester R. Ostrowski, Esq.
costrowski@mclaughlinstern.com

<u>Via Email on November 21, 2025 and U.S. Mail on November 22, 2025</u>
Jack Hernández
Ocean Vibes Music Publishing
16133 E Lancashire E
Loxahatchee, Florida 33470
jackdariohernandez@gmail.com

<u>Via Email on November 21, 2025 and FedEx on November 24, 2025</u>
Dick Alfredo Caballero Rodriguez a/k/a Alfr3d Beats
El Salvador, La Libertad  Ciudad Marsella Q5, D31
alfr3dmusic@hotmail.com

*s/ James G. Sammataro*
James G. Sammataro

**EXHIBIT - P-0027**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### No.:1:25-cv-80338-DIMITROULEAS/REINHART

JACK D. HERNANDEZ d/b/a OCEAN VIBES
MUSIC PUBLISHING, and DICK ALFREDO
CABALLERO RODRIGUEZ a/k/a ALFR3D BEATS,

      Plaintiffs,  (Pro Se)

v.

UMG RECORDINGS, INC. d/b/a UNIVERSAL
MUSIC GROUP d/b/a UNIVERSAL MUSIC LATINO,
CAROLINA GIRALDO NAVARRO a/k/a KAROL G,
EDWIN VASQUEZ VEGA a/k/a MALDY,
MARVIN HAWKINS RODRIGUEZ a/k/a DJ MAFF,
JULIO MANUEL GONZALEZ TAVAREZ a/k/a
LENNY TAVÁREZ, and JUSTIN QUILES,

      Defendants.

_____/

### <u>PLAINTIFFS' VERIFIED RESPONSES TO DEFENDANTS' FIRST SET OF</u>

### <u>INTERROGATORIES</u>

Plaintiffs Jack D. Hernandez d/b/a Ocean Vibes Music Publishing and Dick Alfredo Caballero

Rodriguez a/k/a Alfr3d Beats ("Plaintiffs"), proceeding Pro Se, respond to Defendants' First Set

of Interrogatories which were served on November 21, 2025 by Karol G, Dj Maff and UMG

Recordings, Inc. counsel of record as follows:

**GENERAL OBJECTIONS**

Plaintiffs submit the following General Objections to Defendants' First Set of Interrogatories. These objections apply to each interrogatory to the extent applicable and are asserted without waiver of Plaintiffs' specific responses.

1. Plaintiffs object to each interrogatory to the extent it is overbroad, unduly burdensome, or not proportional to the needs of the case under Fed. R. Civ. P. 26(b)(1).

2. Plaintiffs object to each interrogatory to the extent it is vague or ambiguous.

3. Plaintiffs object to each interrogatory to the extent it seeks information protected by the attorney–client privilege, work-product doctrine, or other applicable privilege. No waiver is intended.

4. Plaintiffs object to each interrogatory to the extent it seeks premature expert disclosures or expert opinions prior to the time permitted by Fed. R. Civ. P. 26(a)(2) and any Court order.

5. Plaintiffs object to each interrogatory to the extent it seeks a complete or itemized calculation of damages prior to the completion of discovery, including discovery of Defendants' financial information.

6. Plaintiffs object to each interrogatory to the extent it seeks information not within Plaintiffs' possession, custody, or control.

7. Plaintiffs object to each interrogatory to the extent it calls for legal conclusions or application of law to facts.

8. Plaintiffs object to each interrogatory to the extent it seeks information equally available to Defendants from public sources or Defendants' own records.

9. Plaintiffs reserve the right to supplement or amend these responses pursuant to the Federal Rules of Civil Procedure.

## RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 1**

Identify the original date of creation of the Work.

**Response:**

Subject to the General Objections, Plaintiffs state that Plaintiff Dick Alfredo Caballero Rodriguez a/k/a Alfr3d Beats created and produced the musical work titled "Punto G" prior to its first publication in or about July 2022. Plaintiffs reserve the right to supplement this response pursuant to Federal Rule of Civil Procedure 26(e).

**INTERROGATORY NO. 2**

Identify the date, method, and general substance of each of Plaintiffs' communications with DJ Maff, Karol G, or UMG.

**Response:**

Subject to the General Objections, Plaintiffs state that, as alleged in the Complaint, Plaintiff Alfr3d Beats communicated with Defendant DJ Maff via Instagram on or about September 2, 2022 and September 5, 2022, including public comments and direct messages raising concerns regarding the similarity between *Gatúbela* and the Work. Defendant DJ Maff responded to those communications, and certain comments were subsequently deleted. Plaintiffs are not aware of

any direct communications with Defendants Karol G, UMG, Maldy, Justin Quiles, or Lenny Tavárez prior to the release of *Gatúbela*.

**INTERROGATORY NO. 3**

Identify all revenues generated by the license or sale of the Work.

**Response:**

Plaintiffs object to this Interrogatory to the extent it seeks information that is irrelevant, overbroad, and not proportional to the needs of the case, insofar as Plaintiffs' claims are based on Defendants' unauthorized use of the Work rather than revenues generated by Plaintiffs' licensing or sale of the Work. See Fed. R. Civ. P. 26(b)(1).

Subject to and without waiving the foregoing objections, Plaintiffs state that the Work has generated limited and de minimis revenue from certain independent licenses granted by Plaintiffs in the ordinary course, as well as minimal incidental revenue from Plaintiffs' own exploitation of the Work (including online advertising revenue and potential performance royalties collected by a performing rights organization). Plaintiffs further state that Plaintiffs have not received any licensing fees, royalties, or other revenues from Defendants for the use of the Work, and that no license was granted to Defendants. Plaintiffs reserve the right to supplement this response in accordance with the Federal Rules of Civil Procedure.

**INTERROGATORY NO. 4**

Identify all agreements between Alfr3d and third parties relating to compositions or production services (2018–2022).

**Response:**

Subject to the General Objections, Plaintiffs state that agreements with third parties exist relating to the Work, including publishing, performing rights organization, and platform monetization agreements. Any agreements unrelated to the Work are not relevant. Responsive agreements relating to the Work will be produced subject to an appropriate confidentiality or protective order.

**INTERROGATORY NO. 6**

Identify the total compensation received by Alfr3d for his music composition or production services between January 1, 2018 and December 31, 2022.

**Response:**

Plaintiffs object to this Interrogatory to the extent it seeks information that is overbroad, irrelevant, and not proportional to the needs of the case, as it requests compensation for unrelated music composition or production services that have no bearing on Defendants' alleged unauthorized use of the Work. See Fed. R. Civ. P. 26(b)(1).

Subject to and without waiving these objections, Plaintiffs state that, as alleged in the Complaint, Plaintiffs have not received compensation from Defendants for the creation, use, licensing, or exploitation of the Work.

**INTERROGATORY NO. 7**

Identify all actual or prospective expert musicologists consulted and any reports or analyses prepared.

**Response:**

Plaintiffs object to this Request as premature expert discovery under Federal Rule of Civil Procedure 26(a)(2). Subject to and without waiving this objection, Plaintiffs identify Dr. Ethan Lustig as a consulted musicology expert. Plaintiffs further state that they rely on the analysis of a consulted musicologist as support for certain allegations; however, any written report, draft report, or expert materials are governed by Federal Rule of Civil Procedure 26(a)(2) and 26(b)(4) and are not yet subject to disclosure or production. Plaintiffs will produce expert reports, if any, in accordance with the Court's scheduling order.

**INTERROGATORY NO. 8**

Identify all reports or summaries explaining or describing the allegations in Paragraph 37 of the Complaint.

**Response:**

Subject to the General Objections, Plaintiffs state that the allegations set forth in Paragraph 37 of the Complaint are supported by expert musicological analysis comparing the compositional elements of *Gatúbela* and the Work. Any such analyses or reports will be disclosed, if required, in accordance with Federal Rule of Civil Procedure 26(a)(2) and the Court's scheduling order.

**INTERROGATORY NO. 9**

Identify all facts supporting the allegation that the Work was widely disseminated prior to the creation and/or publication of *Gatúbela*.

**Response:**

Subject to the General Objections, Plaintiffs state that the Work was first published in or about

July 2022 and thereafter made publicly available and accessible online through web-based

platforms, including YouTube and social media platforms. Following publication, the Work

remained continuously accessible to the public and was promoted and shared through online

channels, resulting in public availability prior to the creation and/or publication of Gatúbela.

Plaintiffs further state that the Work was accessible to users located in Colombia during this

period. Platform-generated analytics records further reflect that the Work received viewership

from users located in Colombia during the relevant period. Plaintiffs do not have personal

knowledge of the identity of individual viewers reflected in such analytics data, nor do Plaintiffs

have personal knowledge of whether or how Defendant DJ Maff accessed the Work. These

allegations are set forth in the Complaint. (See Complaint ¶¶ 24–30, 32). Plaintiffs reserve the

right to supplement this response pursuant to Federal Rule of Civil Procedure 26(e).

**INTERROGATORY NO. 10**

Identify all facts supporting the allegation of willful infringement.

**Response:**

Plaintiffs object to this Interrogatory to the extent it seeks legal conclusions, characterizations of

Defendants' intent, or the application of law to facts, which are matters for the Court and jury.

Subject to and without waiving these objections, Plaintiffs state that, as alleged in the Complaint,

the allegation of willful infringement is based on the following facts and circumstances: the

Work was publicly available prior to the creation and/or publication of Gatúbela; Defendant DJ

Maff engaged in communications with Plaintiff Alfr3d Beats concerning similarities between the

works; certain related communications appear to have been deleted; Defendants did not obtain

any license or authorization for use of the Work; and Defendants continued the exploitation of

Gatúbela after receiving pre-suit notice of the alleged infringement. Plaintiffs do not have personal knowledge of Defendants' subjective intent, and the foregoing facts are alleged as circumstantial evidence supporting willfulness. (See Complaint ¶¶ 4–5, 26–32, 44–51, 63–64). Plaintiffs reserve the right to supplement this response pursuant to Federal Rule of Civil Procedure 26(e).

**INTERROGATORY NO. 11**

Identify all documents and communications supporting Paragraph 68 of the Complaint.

**Response:**

Subject to the General Objections, Plaintiffs state that the allegations set forth in Paragraph 68 of the Complaint are supported by documents, communications, and electronically stored information ("ESI") that reflect Defendants' knowledge of, participation in, supervision over, material contribution to, and financial benefit from the creation, distribution, and commercial exploitation of *Gatúbela*.

Such materials include, by way of example and not limitation, the following categories of documents, communications, and data, many of which are in the possession, custody, or control of Defendants, digital platforms, or other third parties and may be obtained through discovery:

> • Communications (including emails, text messages, direct messages, comments, and internal correspondence) among Defendants, their agents, producers, writers, publishers, distributors, or representatives concerning the creation, development, production, promotion, release, or exploitation of *Gatúbela*;

• Agreements, contracts, and deal documents relating to songwriting, production, recording, publishing, distribution, licensing, royalty splits, revenue participation, and ownership interests in *Gatúbela*;

• Accounting records, royalty statements, revenue reports, and financial summaries reflecting income, payments, advances, or other financial benefits derived from the exploitation of *Gatúbela*;

• Distribution, licensing, and platform records authorizing or reflecting third-party use, streaming, public performance, synchronization, or other commercial exploitation of *Gatúbela*;

• Copyright registration records, deposit materials, and related administrative records or reports maintained by the United States Copyright Office concerning the Work and *Gatúbela*;

• Expert musicological analyses comparing *Gatúbela* and the Work, including analyses addressing access, substantial similarity, and copying;

• Communications from fans, listeners, or members of the public, including messages, comments, posts, or other feedback identifying, questioning, or remarking on similarities between *Gatúbela* and the Work;

• Media publications, press articles, interviews, reviews, online commentary, and industry reporting referencing *Gatúbela*, its creation, authorship, or alleged similarities to prior works; Plaintiffs do not currently produce press articles in support of this response unless specifically requested.

• Metadata, logs, analytics, and platform-generated records (including timestamps, upload and publication data, edit histories, access logs, engagement metrics, geographic data, device or account identifiers, and deletion or modification logs) maintained by Defendants or third-party digital platforms relating to the creation, dissemination, promotion, access to, or exploitation of *Gatúbela* and/or the Work; and

• Pre-suit notice correspondence and related communications, including notices of infringement and Defendants' responses or lack thereof.

Plaintiffs further state that additional responsive documents, communications, and ESI may be identified or obtained through discovery, including from Defendants and third-party platforms or service providers, and Plaintiffs will supplement this response in accordance with the Federal Rules of Civil Procedure.

Plaintiffs expressly reserve the right to supplement, amend, or modify this response as discovery continues, as additional documents, communications, metadata, electronically stored information, or third-party records are obtained, and as Plaintiffs' investigation and expert analyses progress. Plaintiffs further reserve the right to present additional fact witnesses and expert testimony, including expert opinions formed or refined based on discovery obtained after the date of these responses, and to call expert witnesses at trial in accordance with the Federal Rules of Civil Procedure, the Court's scheduling orders, and applicable evidentiary rules.

**INTERROGATORY NO. 12**

Identify all categories of damages sought, assign dollar values, and provide itemized calculations.

**Response:**

Plaintiffs object to this Interrogatory to the extent it seeks a complete or itemized calculation of damages prior to the completion of discovery, including discovery of Defendants' financial records, royalty statements, licensing agreements, accounting data, and revenue information that are uniquely within Defendants' possession, custody, or control. Plaintiffs further object to the extent this Interrogatory is premature, overbroad, and not proportional at this stage of the litigation. See Fed. R. Civ. P. 26(b)(1).

Subject to and without waiving these objections, and as alleged in the Complaint, Plaintiffs seek the following categories of damages and relief:

1. Actual damages, including lost licensing fees, lost royalties, lost publishing income, and diminution in the value of the Work, in an amount to be determined through discovery and expert analysis;

2. Disgorgement of Defendants' profits attributable to the infringement, pursuant to 17 U.S.C. § 504(b), in an amount to be determined following discovery of Defendants' revenues, costs, and profit allocations relating to *Gatúbela*;

3. Statutory damages, pursuant to 17 U.S.C. § 504(c), in an amount to be determined at trial;

4. Injunctive and equitable relief, including relief to prevent further infringement and unauthorized exploitation of the Work;

5. Declaratory relief, including a declaration of Plaintiffs' ownership interests and entitlement to revenues derived from *Gatúbela*; and

6. Costs and attorneys' fees, pursuant to 17 U.S.C. § 505, based on Defendants' willful infringement and the circumstances of this case.

Plaintiffs allege that their total damages are in an amount to be determined at trial, but not less than $6,000,000, as set forth in the Complaint. Plaintiffs will supplement this response in accordance with Federal Rule of Civil Procedure 26(e) as discovery progresses and expert analyses are completed.

**VERIFICATION UNDER OATH**

We, Jack D. Hernandez d/b/a Ocean Vibes Music Publishing and Dick Alfredo Caballero Rodriguez a/k/a Alfr3d Beats, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that we have read the foregoing Plaintiffs' Verified Responses to Defendants' First Set of Interrogatories and that the responses are true and correct to the best of our knowledge, information, and belief.

Executed on this 21st day of December, 2025.

JACK D. HERNANDEZ
d/b/a Ocean Vibes Music Publishing
*Plaintiff, Pro Se*

By: */s/ Jack D. Hernandez*
Jack D. Hernandez
16133 E Lancashire
Loxahatchee, Florida 33470
Email: jackdariohernandez@gmail.com

DICK ALFREDO CABALLERO
RODRIGUEZ
a/k/a ALFR3D Beats
*Plaintiff, Pro Se*

By: */s/ Dick Alfredo Caballero*
Dick Alfredo Caballero
El Salvador, La Libertad
Ciudad Marsella Q5, D31
Email: alfr3dmusic@hotmail.com

The undersigned Pro Se Plaintiffs certify that their digital signatures included in this document are intended to serve as valid signatures for all legal purposes under Federal Rule of Civil Procedure 11 and the Local Rules of the Southern District of Florida.

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 21st day of December 2025, a true and correct copy of the foregoing PLAINTIFFS' VERIFIED RESPONSES TO DEFENDANTS' FIRST SET OF INTERROGATORIES was served via electronic mail pursuant to Fed. R. Civ. P. 5(b)(2)(E) on counsel for Defendants at: jsammataro@pryorcashman.com; beverman@pryorcashman.com; docketing@pryorcashman.com; ksuarez@pryorcashman.com, and it was delivered via electronic mail from email address jackdariohernandez@gmail.com and sent to the following addresses:

<div style="margin-left: 40%;">

JACK D. HERNANDEZ
d/b/a Ocean Vibes Music Publishing
*Plaintiff, Pro Se*

By: */s/ Jack D. Hernandez*
Jack D. Hernandez
16133 E Lancashire
Loxahatchee, Florida 33470
Email: jackdariohernandez@gmail.com


DICK ALFREDO CABALLERO
RODRIGUEZ
a/k/a ALFR3D Beats
*Plaintiff, Pro Se*

By: */s/ Dick Alfredo Caballero*
Dick Alfredo Caballero
El Salvador, La Libertad

</div>

Ciudad Marsella Q5, D31
Email: <u>alfr3dmusic@hotmail.com</u>

**EXHIBIT - P-0028**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**No.: 1:25-cv-80338-Dimitrouleas/Reinhart**

JACK D. HERNANDEZ d/b/a OCEAN VIBES
MUSIC PUBLISHING, and DICK ALFREDO
CABALLERO RODRIGUEZ a/k/a ALFR3D
BEATS,

          Plaintiffs,

v.

UMG RECORDINGS, INC. d/b/a UNIVERSAL
MUSIC GROUP d/b/a UNIVERSAL MUSIC
LATINO, CAROLINA GIRALDO NAVARRO
a/k/a KAROL G, EDWIN VASQUEZ VEGA a/k/a
MALDY, MARVIN HAWKINS RODRIGUEZ
a/k/a DJ MAFF, JULIO MANUEL GONZALEZ
TAVAREZ a/k/a LENNY TAVEREZ, and JUSTIN
QUILES,

          Defendants.

_____/

### DEFENDANTS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Pursuant to Federal Rule of Civil Procedure 34, defendants UMG Recordings, Inc.,

Carolina Giraldo Navarro *p/k/a* Karol G, and Marvin Hawkins Rodriguez *p/k/a* DJ Maff request

that plaintiffs Jack D. Hernandez *d/b/a* Ocean Vibes Music Publishing and Dick Alfredo Caballero

Rodriguez *a/k/a* Alfr3d Beats produce, within 30 days, the following documents, electronically

stored information, and accompanying metadata to undersigned counsel at 255 Alhambra Circle,

8th Floor, Miami, FL 33146.

### DEFINITIONS

1.      "Hernandez" shall refer to plaintiff Jack D. Hernandez *d/b/a* Ocean Vibes Music

Publishing and any of his agents, attorneys, or any other persons purporting to act on his behalf.

2.      "Alfr3d" shall refer to plaintiff Dick Alfredo Caballero Rodriguez and any of his

agents, attorneys, or any other persons purporting to act on his behalf.

3.      "Plaintiffs" shall refer to Hernandez and Alfr3d.

4.      "UMG" shall refer to defendant UMG Recordings, Inc. and any agents, attorneys, employees, or any other persons purporting to act on its behalf.

5.      "DJ Maff" shall refer to Marvin Hawkins Rodriguez *p/k/a* DJ Maff and any of his agents, attorneys, or any other persons purporting to act on his behalf.

6.      "Karol G" shall refer to Carolina Giraldo Navarro p/k/a Karol G and any of her agents, attorneys, or any other persons purporting to act on her behalf.

7.      "Complaint" shall refer to the Complaint filed in this case on November 20, 2024.

8.      "Gatúbela" shall refer to the composition and sound recording for Karol G's song entitled "Gatúbela," which is referenced in Paragraph 1 of the Complaint, among many other places.

9.      "Work" shall refer to the composition and sound recording for Alfr3d's song entitled "Punto G," which is referenced in Paragraph 3 of the Complaint, among many other places.

10.     "Communication(s)" means any statement, presentation, disclosure, or transmittal of information, in the form of facts, ideas, inquiries, or otherwise, and in any format available, including but not limited to, correspondence and e-mail correspondence, text messages, messages transmitted through any electronic messaging platform and/or mobile phone applications, and/or hand-written letters or notes.

11.     "Document" means any medium upon which information or intelligence can be recorded or retrieved, including without limitation, any written, graphic, or audio matter, or other means of preserving thought or expression, and all tangible things from which information can be processed or transcribed, including the originals and all non-identical copies, whether different

from the original by reason of any notation made on such copy or otherwise, including but not limited to, correspondence, memoranda, notes, messages, letters, telegrams, teletypes, telefaxes, electronic mail entries, bulletins, inter-office or intra-office telephone calls, diaries, chronological data, minutes, books, reports, studies, summaries, pamphlets, printed matter, charts, ledgers, invoices, worksheets, receipts, returns, computer printouts, prospectuses, financial statements, schedules, affidavits, contracts, canceled checks, statements, transcripts, statistics, surveys, periodical articles, releases (any and all drafts, alterations, and modifications, changes, and amendments of any of the foregoing), graphic or audio records of representations of any kind, including, without limitation, electronic audio files in .mp3, .mp4, or any other format, microfilm, microfiche, photographs, charts, videotape, recordings, voice messages, motion pictures, mini-discs, floppy discs, memory sticks, USB drives, CD-ROM discs, DVDs, cassettes, tapes, records, discs, or mechanical or electronic recordings or representations of any kind.  A draft or non-identical copy is a separate "document" within the meaning of this term.  Computer generated or stored documents, including computer files or data, electronic mail, and information on hard disk that has been erased but is retrievable constitutes documents within the meaning of this definition.

12.     The term "Person" means any natural person or any business, professional, social, legal or governmental entity.

13.     "Concerning" means relating, referring, or pertaining to, describing, evidencing, embodying, constituting, supporting, corroborating, providing, showing, refuting, disputing, rebutting, and/or contradicting.

14.     "Including" means "including without limitation."

15.     Each of the terms "each" and "any" and "all" shall be construed inclusively to mean "each and any and all."

16.     The connectives "and" and "or" shall be construed either conjunctively or disjunctively as necessary to bring within the scope of the discovery Request all responses that might otherwise be construed to be outside of its scope.

17.     The use of the singular form of any word includes the plural and vice versa.

18.     The use of a pronoun of any gender shall be construed as including, as applicable, any gender.

## **INSTRUCTIONS**

1.     You are requested to use the following production format for electronically stored information ("ESI"): (i) metadata in a comma delimited file format; (ii) single-page Group IV TIFF or PDF images branded with sequential document control numbers; (iii) text rendering of native files (comparable to OCR); (iv) link to native file; and (v) exception reports/image placeholders must be provided for all data files that cannot be rendered to TIFF or PDF because the file is an unsupported file type, is password encrypted or is corrupt. For non-ESI documents, you are requested to produce documents in the following format: (i) single-page Group IV TIFF or PDF images branded with sequential document control numbers; (ii) page level OCR for each TIFF or PDF image which is delivered; and (iii) identify custodian name and location, along with correlating document control number in a comma delimited file format.

## **DOCUMENTS TO BE PRODUCED**

1.     The Work's written composition.

2.     The Work's sound recording.

3.     All copyright registration applications, including exhibits, submitted for the Work.

4.     All communications exchanged between Plaintiffs and the U.S. Copyright Office concerning the Work.

5.     All copyright registrations for the Work.

6.      Documents sufficient to identify the original date of creation of the Work.

7.      All documents and communications concerning the actual or potential use, distribution, or licensing of the Work.

8.      All communications concerning Gatúbela.

9.      All communications between Plaintiffs and UMG.

10.     All communications between Plaintiffs and Karol G.

11.     All communications, including direct messages or posts/comments on Instagram, between Plaintiffs and DJ Maff.

12.     All agreements between Alfr3d and third parties relating to Alfr3d's music compositions or production services between January 1, 2018 and December 31, 2022.

13.     All licensing agreements relating to Alfr3d's musical compositions and sound recordings between January 1, 2018 and December 31, 2022.

14.     All licensing agreements relating to the Work.

15.     Documents sufficient to identify the total compensation received by Alfr3d for his music production services between January 1, 2018 and December 31, 2022.

16.     All documents and communications reflecting or evidencing the actual damages suffered by Plaintiffs as a result of the alleged copyright infringement at issue in this case.

17.     All communications with any musicology experts about Gatúbela, including the expert identified in Paragraph 7 of the Complaint.

18.     All reports, summaries, or analyzes of Gatúbela prepared by any musicology expert, including the expert identified in Paragraph 7 of the Complaint.

19.     All documents and communications supporting, proving or evidencing that Alfr3d had "actual knowledge and fraudulent intent," as alleged in Paragraph 10 of the Complaint.

20.     All documents and communications supporting, proving or evidencing that "[s]ince July 12, 2022, Plaintiffs have repeatedly marketed, made available, and otherwise used the Work, in whole or in part, on social media, online, and elsewhere," as alleged in Paragraph 25 of the Complaint.

21.     All documents and communications supporting, proving or evidencing that "On numerous occasions, Alfr3d has shared the link to the YouTube publication of the Work via Instagram and Facebook," as alleged in Paragraph 27 of the Complaint.

22.     All documents and communications supporting, proving or evidencing that "the Work was widely disseminated prior to the creation and/or final completion and publication of Gatúbela," as alleged in Paragraph 29 of the Complaint.

23.     All reports or summaries explaining or describing the allegations in Paragraph 37 of the Complaint.

24.     All documents and communications supporting, proving or evidencing that Defendants have committed "willful" infringement, as alleged in Paragraph 49 of the Complaint.

25.     All documents and communications supporting, proving or evidencing the allegations in Paragraph 68 of the Complaint.

Dated:  November 21, 2025

**PRYOR CASHMAN LLP**

*Attorneys for UMG, Karol G, and DJ Maff*
255 Alhambra Circle, 8th Floor
Miami, Florida 33134
Telephone No: (786) 582-3012

By: /s/ *James G. Sammataro*
James G. Sammataro
Florida Bar No. 520292
Brendan S. Everman
Florida Bar No. 68702
jsammataro@pryorcashman.com
beverman@pryorcashman.com
ksuarez@pryorcashman.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this document was served on Plaintiffs as follows:

Via Email on November 21, 2025
Chester R. Ostrowski, Esq.
costrowski@mclaughlinstern.com

Via Email on November 21, 2025 and U.S. Mail on November 22, 2025
Jack Hernández
Ocean Vibes Music Publishing
16133 E Lancashire E
Loxahatchee, Florida 33470
jackdariohernandez@gmail.com

Via Email on November 21, 2025 and FedEx on November 24, 2025
Dick Alfredo Caballero Rodriguez a/k/a Alfr3d Beats
El Salvador, La Libertad  Ciudad Marsella Q5, D31
alfr3dmusic@hotmail.com

**EXHIBIT – P-0029**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### No.:1:25-cv-80338-DIMITROULEAS/REINHART

JACK D. HERNANDEZ d/b/a OCEAN VIBES
MUSIC PUBLISHING, and DICK ALFREDO
CABALLERO RODRIGUEZ a/k/a ALFR3D BEATS,

      Plaintiffs,  (Pro Se)

v.

UMG RECORDINGS, INC. d/b/a UNIVERSAL
MUSIC GROUP d/b/a UNIVERSAL MUSIC LATINO,
CAROLINA GIRALDO NAVARRO a/k/a KAROL G,
EDWIN VASQUEZ VEGA a/k/a MALDY,
MARVIN HAWKINS RODRIGUEZ a/k/a DJ MAFF,
JULIO MANUEL GONZALEZ TAVAREZ a/k/a
LENNY TAVÁREZ, and JUSTIN QUILES,

      Defendants.

_____/

## **PLAINTIFFS' RESPONSES TO DEFENDANTS' FIRST REQUEST FOR**

## **PRODUCTION OF DOCUMENTS**

Plaintiffs Jack D. Hernandez d/b/a Ocean Vibes Music Publishing and Dick Alfredo Caballero

Rodriguez a/k/a Alfr3d Beats ("Plaintiffs"), proceeding pro se, respond to Defendants' First

Request for Production of Documents which were served on November 21, 2025 by Karol G, Dj

Maff and UMG Recordings, Inc. counsel of record as follows:

## GENERAL OBJECTIONS

1. Plaintiffs object to each Request to the extent it is overbroad, unduly burdensome, vague, ambiguous, or not proportional to the needs of the case under Fed. R. Civ. P. 26(b)(1).

2. Plaintiffs object to each Request to the extent it seeks documents not within Plaintiffs' possession, custody, or control, including documents exclusively held by Defendants, digital platforms, distributors, or third parties.

3. Plaintiffs object to each Request to the extent it seeks privileged or protected materials, including attorney–client communications, work product, or expert materials not yet subject to disclosure under Fed. R. Civ. P. 26(a)(2).

4. Plaintiffs object to Requests seeking premature expert discovery, expert opinions, or draft analyses prior to the deadlines established by the Court.

5. Plaintiffs object to Requests seeking damages calculations, accounting records, or profit information prior to Defendants' production of financial discovery.

6. Plaintiffs object to Requests seeking legal conclusions or characterizations of intent.

7. Plaintiffs object to any request seeking reproduction of official deposit materials maintained exclusively by the United States Copyright Office, which are equally available to Defendants through subpoena or request to the Copyright Office.

8. Plaintiffs reserve the right to supplement, amend, or correct these responses pursuant to Fed. R. Civ. P. 26(e).

**RESPONSES TO REQUESTS FOR PRODUCTION**

**REQUEST NO. 1**

The Work's written composition.

**Response:**

Subject to the General Objections, Plaintiffs produce the following documents evidencing the written musical composition of the Work *Punto G*:

1. United States Copyright Registration (Musical Composition)
   Registration No. PA0002487058, effective August 3, 2024, identifying the musical composition titled *Punto G*, with a date of first publication of July 12, 2022, and listing Dick Alfredo Caballero as author and Ocean Vibes Music Publishing as copyright claimant.

2. United States Copyright Registration (Sound Recording – Identifying Underlying Composition)
   Registration No. SR0000982470, effective November 29, 2023, which identifies the same underlying musical work titled *Punto G* and confirms authorship and publication details.

3. El Salvador Intellectual Property Deposit Record
   Copyright deposit records issued by the Registro de la Propiedad Intelectual – Departamento de Derechos de Autor (El Salvador) confirming deposit of the work titled *Punto G* by Dick Alfredo Caballero Rodriguez, with a date of deposit in 2023.

Plaintiffs state that the official copyright deposit copies (musical notation or audio files) submitted to the U.S. Copyright Office and the El Salvador Intellectual Property Office are

maintained by those agencies and are not presently in Plaintiffs' possession, custody, or control.

Plaintiffs will supplement this response if and when such materials are obtained through

appropriate legal process.

**REQUEST NO. 2**

The Work's sound recording.

**Response:**

Subject to the General Objections, Plaintiffs state as follows:

Plaintiffs produce the issued United States Copyright Registration for the sound recording of the

Work Punto G, Registration No. SR0000982470, which reflects submission of the sound

recording, identifies the author and claimant, states the date of first publication (July 12, 2022),

and confirms registration of the sound recording with the U.S. Copyright Office.

 Plaintiffs further state that the official sound recording deposit copy (MP3, WAV, or other audio

file) submitted to the U.S. Copyright Office is maintained by the Copyright Office and is not

presently in Plaintiffs' possession, custody, or control.

Accordingly, Plaintiffs cannot produce the official deposit copy at this time. Plaintiffs have

served a notice of intent to subpoena the United States Copyright Office for the official deposit

copy and will supplement this response pursuant to Federal Rule of Civil Procedure 26(e) upon

receipt.

**REQUEST NO. 3**

All copyright registration applications, including exhibits, submitted for the Work.

**Response:**

Subject to the General Objections, Plaintiffs produce the following non-privileged documents currently in their possession evidencing copyright registration applications submitted for the Work *Punto G*:

1. United States Copyright Registration Application and Issued Registration (Sound Recording) Registration No. SR0000982470, effective November 29, 2023, including public record registration materials reflecting submission of the sound recording to the U.S. Copyright Office.

2. United States Copyright Registration Application and Issued Registration (Musical Composition) Registration No. PA0002487058, effective August 3, 2024, including public record registration materials reflecting submission of the musical composition to the U.S. Copyright Office.

3. El Salvador Intellectual Property Deposit Records Copyright deposit records issued by the Registro de la Propiedad Intelectual – Departamento de Derechos de Autor (El Salvador) for the Work *Punto G*.

Plaintiffs further state that any official deposit copies, exhibits, or electronic files (including audio files or notation files) submitted as part of these registration applications are maintained by the respective copyright authorities and are not presently in Plaintiffs' possession, custody, or control.

Plaintiffs will supplement this response if and when additional responsive materials are obtained through appropriate legal process, pursuant to Fed. R. Civ. P. 26(e).

**REQUEST NO. 4**

All communications exchanged between Plaintiffs and the U.S. Copyright Office concerning the Work.

**Response:**

Subject to the General Objections, Plaintiffs state that they possess a limited number of routine, non-substantive administrative communications from the United States Copyright Office, including an automated eCO confirmation email acknowledging "U.S. Copyright Office Application - Confirmation of Receipt" for the Work. Plaintiffs will produce such non-privileged administrative communications in their possession. Plaintiffs further state that they do not possess any substantive correspondence, examination communications, or deliberative records from the United States Copyright Office concerning the Work. To the extent any such substantive communications exist, they are maintained by the United States Copyright Office. Plaintiffs reserve the right to supplement this response pursuant to Federal Rule of Civil Procedure 26(e).

**REQUEST NO. 5**

All copyright registrations for the Work.

**Response:**

Subject to the General Objections, Plaintiffs will produce copies of the issued copyright registrations.

**REQUEST NO. 6**

Documents sufficient to identify the original date of creation of the Work.

**Response:**

Subject to the General Objections, Plaintiffs will produce documents reflecting the initial public

release and publication of the Work in or about July 2022, including public platform postings.

**REQUEST NO. 7**

All documents and communications concerning the actual or potential use, distribution, or

licensing of the Work.

**Response:**

Plaintiffs object to this Request as overbroad and not proportional.

Subject to and without waiving these objections, Plaintiffs will produce non-privileged licensing

materials presently in their possession relating to the Work, subject to an appropriate protective

order. Additional responsive documents are expected to be obtained through discovery from

Defendants and third-party platforms and will be produced if and when received.

**REQUEST NO. 8**

All communications concerning Gatúbela.

**Response:**

Subject to the General Objections, Plaintiffs will produce non-privileged communications

between Plaintiffs and Defendants relating to the Work, including pre-suit correspondence and

settlement-related communications, which are produced subject to Federal Rule of Evidence 408.

Plaintiffs are presently proceeding pro se and have produced communications currently within their possession, custody, or control. To the extent any communications or materials exist that were previously maintained by prior counsel and are within Plaintiffs' possession, custody, or control but have not yet been identified, reviewed, or located, Plaintiffs will produce such non-privileged materials upon identification and will supplement this response pursuant to Federal Rule of Civil Procedure 26(e).

**REQUEST NO. 9**

All communications between Plaintiffs and UMG.

**Response:**

Subject to the General Objections, Plaintiffs state that they are not aware of any substantive communications between Plaintiffs and UMG relating to the claims asserted in this action, other than pre-suit correspondence, including a settlement proposal and related transmittal email sent to counsel for UMG. Plaintiffs are presently proceeding pro se. To the extent any communications or materials exist that were previously maintained by prior counsel and are within Plaintiffs' possession, custody, or control but have not yet been identified, reviewed, or located, Plaintiffs will produce such non-privileged materials upon identification and will supplement this response pursuant to Federal Rule of Civil Procedure 26(e).

**REQUEST NO. 10**

All communications between Plaintiffs and Karol G.

**Response:**

Subject to the General Objections, Plaintiffs will produce non-privileged communications

between Plaintiffs and Defendants relating to the Work, including pre-suit correspondence and settlement-related communications, which are produced subject to Federal Rule of Evidence 408. Plaintiffs are presently proceeding pro se. To the extent any communications or materials exist that were previously maintained by prior counsel and are within Plaintiffs' possession, custody, or control but have not yet been identified, reviewed, or located, Plaintiffs will produce such non-privileged materials upon identification and will supplement this response pursuant to Federal Rule of Civil Procedure 26(e).

**REQUEST NO. 11**

All communications, including Instagram messages, between Plaintiffs and DJ Maff.

**Response:**

Subject to the General Objections, Plaintiffs will produce responsive Instagram communications currently available to them. Plaintiffs are aware of communications and public statements made on social media platforms, including Instagram, during or about the period of 2022, that relate to the musical works at issue, including statements concerning similarities in melodies, musical structure, or originality. Subject to and without waiving Plaintiffs' General Objections, Plaintiffs respond as follows. By way of example, and without limitation, Plaintiffs identify the following communications:

1. **Instagram Comment Exchange (Public Post)**

   On or about 2022, under a publicly available Instagram post associated with Defendant Marvin Hawkins Rodríguez a/k/a "DJ Maff," Plaintiff Dick Alfredo Caballero Rodriguez a/k/a Alfr3d Beats, using the Instagram handle @alfr3dmusic, posted a comment in

Spanish stating: "*Rompiendo con melodías ajenas*" (translated: "*Breaking with others' melodies*").

Defendant DJ Maff responded to that comment stating: "*no le digas a nadie* 😂" (translated: "*don't tell anyone* 😂").

Plaintiffs identify this exchange as potentially relevant to issues of access, awareness, and similarity. Plaintiffs do not concede any interpretation of intent or meaning and reserve all rights with respect to the characterization and use of this communication.

Plaintiffs further state that, while they possess screenshots of certain communications, Plaintiffs do not possess complete records of all related communications, including associated metadata, deletion logs, platform-maintained records, or additional messages, which are believed to be in the possession, custody, or control of Defendants and/or third parties. Plaintiffs reserve the right to supplement this response pursuant to Federal Rules of Civil Procedure 26(e) and 33.

2. **Direct Instagram Message (Private Communication)**

On or about September 2, 2022, Plaintiff Dick Alfredo Caballero Rodriguez, using the Instagram user handle @alfr3dmusic, sent a direct Instagram message to Defendant DJ Maff (@djmaff) stating: "Saludos 🫡." (English translation: "Greetings 🫡.")

On or about September 5, 2022, Defendant DJ Maff replied via Instagram direct message with the following message in Spanish: "G mis respetos, ten en cuenta que la música es la misma por siempre, los mismos círculos que se combinan en diferentes variaciones etc, coincidencias pueden suceder, te dejo claro la mía la hice hace más de 9 meses." (English

translation: "G, my respects. Keep in mind that music is the same forever, the same circles that combine in different variations, etc. Coincidences can happen. I make it clear that I made mine more than 9 months ago.")

Plaintiffs possess a screenshot of this exchange. Plaintiffs do not possess any associated metadata, platform records, or additional messages, which are believed to be in the possession, custody, or control of Defendants and/or third parties. Plaintiffs reserve the right to supplement this response pursuant to Federal Rules of Civil Procedure 26(e) and 33. Plaintiffs do not concede any interpretation of intent, meaning, or legal significance of this communication and reserve all rights regarding its use and characterization.

3. **Additional Social Media Reactions and Engagement**

Plaintiffs further identify public reactions, comments, and engagement (including emojis and affirming responses) by individuals associated with Defendants, including producers and collaborators, which Plaintiffs identify as responsive communications relating to the works at issue. Plaintiffs make no representations regarding the interpretation, intent, or legal significance of this communication and reserve all rights regarding its use.

Plaintiffs do not possess complete records of all related communications, including deleted comments, deleted messages, metadata, internal platform records, or communications in the possession of Defendants or third-party platforms such as Meta Platforms, Inc. Plaintiffs expect discovery from Defendants and third parties to further identify and authenticate such communications. Plaintiffs further state that deleted messages, metadata, and platform records are within the possession and control of Meta and Defendants.

Plaintiffs reserve the right to supplement this response pursuant to Federal Rule of Civil

Procedure 26(e). Plaintiffs are presently proceeding pro se. To the extent any communications or

materials exist that were previously maintained by prior counsel and are within Plaintiffs'

possession, custody, or control but have not yet been identified, reviewed, or located, Plaintiffs

will produce such non-privileged materials upon identification and will supplement this response

pursuant to Federal Rule of Civil Procedure 26(e).

**REQUEST NO. 12**

All agreements between Alfr3d and third parties (2018–2022).

**Response:**

Plaintiffs object to this Request as overbroad and not proportional to the needs of the case to the

extent it seeks agreements unrelated to the Work. Subject to and without waiving these

objections, Plaintiffs state that agreements relating to the Work exist, including a publishing or

administration agreement, performing rights organization affiliation or licensing agreements

(including BMI), and online platform monetization or advertising agreements (including

YouTube). Plaintiffs will produce any responsive, non-privileged agreements relating to the

Work subject to an appropriate confidentiality or protective order. Plaintiffs reserve the right to

supplement this response pursuant to Federal Rule of Civil Procedure 26(e).

**REQUEST NO. 13**

All licensing agreements relating to Alfr3d's compositions (2018–2022).

**Response:**

Plaintiffs object to this Request as overbroad and not proportional to the needs of the case to the

extent it seeks agreements unrelated to the Work. Subject to and without waiving these objections, Plaintiffs state that agreements relating to the Work exist, including a publishing or administration agreement, performing rights organization affiliation or licensing agreements (including BMI), and online platform monetization or advertising agreements (including YouTube). Plaintiffs will produce any responsive, non-privileged agreements relating to the Work subject to an appropriate confidentiality or protective order. Plaintiffs reserve the right to supplement this response pursuant to Federal Rule of Civil Procedure 26(e).

**REQUEST NO. 14**

All licensing agreements relating to the Work.

**Response:**

Plaintiffs object to this Request as overbroad and not proportional to the needs of the case to the extent it seeks agreements unrelated to the Work. Subject to and without waiving these objections, Plaintiffs state that agreements relating to the Work exist, including a publishing or administration agreement, performing rights organization affiliation or licensing agreements (including BMI), and online platform monetization or advertising agreements (including YouTube). Plaintiffs will produce any responsive, non-privileged agreements relating to the Work subject to an appropriate confidentiality or protective order. Plaintiffs reserve the right to supplement this response pursuant to Federal Rule of Civil Procedure 26(e).

**REQUEST NO. 15**

Documents sufficient to identify total compensation received by Alfr3d (2018–2022).

**Response:**

Plaintiffs object as overbroad and irrelevant. Subject to the objection, Plaintiffs state that no compensation was received from Defendants for the Work.

**REQUEST NO. 16**

Documents evidencing actual damages.

**Response:**

Plaintiffs object as premature.

Subject to the objection, Plaintiffs state that damages discovery depends substantially on Defendants' financial records, royalty statements, and accounting materials, which have not yet been produced.

**REQUEST NO. 17**

All communications with musicology experts about Gatúbela.

**Response:**

Plaintiffs object as premature expert discovery under Rule 26(a)(2). Subject to the objection, Plaintiffs identify Dr. Ethan Lustig as a consulted expert. Formal expert disclosures will be made pursuant to the Court's schedule. Plaintiffs identify the analysis of a consulted musicologist as factual support for certain allegations; however, any written report or expert materials are governed by Federal Rule of Civil Procedure 26(a)(2) and are not yet subject to production. Plaintiffs will produce expert reports, if any, in accordance with the Court's scheduling order.

**REQUEST NO. 18**

All expert reports analyzing Gatúbela.

**Response:**

Objection. Premature expert disclosure. Plaintiffs will comply in accordance with Rule 26(a)(2).

**REQUEST NO. 19–25**

Documents supporting allegations in specific Complaint paragraphs.

**Response (collective):**

Plaintiffs object to these Requests to the extent they seek legal conclusions or documents not within Plaintiffs' possession, custody, or control. Subject to and without waiving these objections, Plaintiffs state that they have produced non-privileged documents currently in their possession that support the allegations in the referenced Complaint paragraphs, including copyright registration records, public-facing online publication evidence, archival records, social media communications in Plaintiffs' possession, and platform-generated analytics reflecting geographic viewership data. Plaintiffs further state that additional responsive materials consist of Defendants' internal communications, platform metadata and deletion logs, licensing and royalty records, financial and accounting data, and expert analyses dependent on Defendants' or third-party production. Such materials are not within Plaintiffs' possession, custody, or control and are believed to be maintained by Defendants and/or third parties. Plaintiffs reserve the right to supplement this response pursuant to Federal Rule of Civil Procedure 26(e).

**CONCLUSION & PRESERVATION**

Plaintiffs have produced or will produce all non-privileged responsive documents currently in

their possession, custody, or control. Plaintiffs expressly reserve the right to supplement these

responses as discovery proceeds and as Defendants and third parties produce responsive

materials. Plaintiffs' production is limited to non-privileged documents currently in Plaintiffs'

possession, custody, or control. Plaintiffs expressly reserve the right to supplement this

production pursuant to Fed. R. Civ. P. 26(e).

Executed on this 21st day of December, 2025.

                                        JACK D. HERNANDEZ
                                        d/b/a Ocean Vibes Music Publishing
                                        *Plaintiff, Pro Se*

                                        By: */s/ Jack D. Hernandez*
                                        Jack D. Hernandez
                                        16133 E Lancashire
                                        Loxahatchee, Florida 33470
                                        Email: jackdariohernandez@gmail.com

                                        DICK ALFREDO CABALLERO
                                        RODRIGUEZ
                                        a/k/a ALFR3D Beats
                                        *Plaintiff, Pro Se*

                                        By: */s/ Dick Alfredo Caballero*
                                        Dick Alfredo Caballero
                                        El Salvador, La Libertad
                                        Ciudad Marsella Q5, D31
                                        Email: alfr3dmusic@hotmail.com

The undersigned Pro Se Plaintiffs certify that their digital signatures included in this document

are intended to serve as valid signatures for all legal purposes under Federal Rule of Civil

Procedure 11 and the Local Rules of the Southern District of Florida.

Page 16

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 21st day of December 2025, a true and correct copy of the

foregoing PLAINTIFFS' RESPONSES TO DEFENDANTS' FIRST REQUEST FOR

PRODUCTION OF DOCUMENTS was served via electronic mail pursuant to Fed. R. Civ. P.

5(b)(2)(E) on counsel for Defendants at: jsammataro@pryorcashman.com;

beverman@pryorcashman.com; docketing@pryorcashman.com; ksuarez@pryorcashman.com,

and it was delivered via electronic mail from email address jackdariohernandez@gmail.com and

sent to the following addresses:

JACK D. HERNANDEZ
d/b/a Ocean Vibes Music Publishing
*Plaintiff, Pro Se*

By: */s/ Jack D. Hernandez*
Jack D. Hernandez
16133 E Lancashire
Loxahatchee, Florida 33470
Email: jackdariohernandez@gmail.com


DICK ALFREDO CABALLERO
RODRIGUEZ
a/k/a ALFR3D Beats
*Plaintiff, Pro Se*

By: */s/ Dick Alfredo Caballero*
Dick Alfredo Caballero
El Salvador, La Libertad
Ciudad Marsella Q5, D31
Email: alfr3dmusic@hotmail.com

**EXHIBIT - P-0XX -** Lodged with the Clerk due to file size

**EXHIBIT – P-0XA**

**Original Spanish-language transcript of some of the interview segments of the September 14, 2022 Canal Teleislas Facebook interview of Defendant DJ Maff (offered solely for impeachment and accuracy)**

Transcribed in Spanish language.

"Submitted solely for accuracy and impeachment; the video itself is the primary evidence."

VERBATIM TRANSCRIPT OF PUBLIC VIDEO INTERVIEW
Interview of Marvin Hawkins Rodríguez a/k/a DJ Maff
Published by Canal Teleislas on Facebook
Date of Publication: September 14, 2022
Source URL: https://www.facebook.com/watch/?v=901505670732696

Language: Spanish

Some parts:

_____

"Con Karol G obviamente tengo una relación de amistad desde hace aproximadamente 10 años. Nosotros cuando ella se lanza como artista fuimos como sus primeros productores hace ya bastante tiempo. Entonces teníamos una relación de amistad, siempre habíamos hablado como de trabajar otra vez, siempre como que nos saludábamos.

Pero obviamente ella es una artista que ella es un fenómeno ahora mismo, entonces hace tiempo no tenía esa conversación con ella y hace como dos meses o tres meses se nos dio. Ella se comunicó conmigo y quería que yo participara en su álbum. El álbum creo que sale pronto.

Y pues empezamos como a trabajar cosas y salió la canción, o sea, realmente todo fue muy rápido. O sea, yo mando unas ideas, ella se montó y ya la semana o a los dos, tres días que se montó ya me habían dicho que era el single. Y ya como que yo no me esperaba nada de eso, la verdad.

Y ya luego me fui a Barcelona, ella estaba allá, donde hicieron el video. Terminamos la canción y ya. Y es lo que hoy, gracias a Dios, la canción está super trende en el mundo y esperamos que siga creciendo.

OK, háblanos un poco de la inspiración personal que tiene esa producción para ti. De pronto te enfocaste dentro de algunos ritmos, algunas influencias o esencias. De pronto, ¿cuál fue la fijación que te llevó al beat y demostrarle ese beat a Karol G? Yo cuando hago música,

realmente dejó que como que la inspiración o todo vaya fluyendo. Como que no me programo a hacer algo así, quiero hacer algo, no, nada. Yo voy fluyendo, voy guardando ideas y luego las escucho como que esta tiene algo especial. Como que siempre hago música de esa manera, no tengo como una fórmula."

---

I declare that this transcript is a true and accurate verbatim transcription of some of the parts of of the audio contained in the referenced video.

Executed on 2/6/2026.
/s/ Jack D. Hernandez,
Plaintiff Pro Se

**EXHIBIT - P-0XB**

**Certified English translation of the September 14, 2022 Canal Teleislas Facebook interview of Defendant DJ Maff, corresponding to Exhibit P-0XA (offered solely for impeachment and accuracy)**

"Submitted solely for accuracy and impeachment; the video itself is the primary evidence."

VERBATIM TRANSCRIPT OF PUBLIC VIDEO INTERVIEW
Interview of Marvin Hawkins Rodríguez a/k/a DJ Maff
Published by Canal Teleislas on Facebook
Date of Publication: September 14, 2022
Source URL: https://www.facebook.com/watch/?v=901505670732696

Language: Spanish

Some parts:

———————————————————————————————————————

"With Karol G, obviously I've had a friendship for about 10 years. When she launched as an artist, we were among her first producers quite some time ago. So we had a friendship; we always talked about working together again, we'd always greet each other.

But obviously she's an artist who is a phenomenon right now, so for a while we didn't have that conversation. Then about two or three months ago, it happened. She reached out to me and wanted me to participate in her album. I think the album is coming out soon.

So we started working on some things, and the song came out — honestly, everything happened very fast. I sent over some ideas, she recorded on it, and within a week, or two or three days after she recorded, they told me it was going to be the single. And I really wasn't expecting any of that, to be honest.

Then I went to Barcelona; she was there, where they made the video. We finished the song and that was it. And today, thank God, the song is very trending worldwide, and we hope it continues to grow.

OK, tell us a bit about the personal inspiration behind this production for you. Maybe you focused on certain rhythms, influences, or essences. What was the fixation that led you to the beat and to showing that beat to Karol G?

When I make music, I really just let inspiration flow. I don't plan it out like, 'I want to make this kind of thing' — no, not at all. I just go with the flow, I save ideas, and then I listen back and think, 'this one has something special.' That's how I've always made music; I don't really have a formula."

I declare that this transcript is a true and accurate English translation from an Spanish verbatim transcription of some of the parts of the audio contained in the referenced video.

I certify that I am fluent in Spanish and English and that the foregoing translation is a true and accurate translation of the original Spanish transcript.

Executed on 2/6/2026.
/s/ Jack D. Hernandez,
Plaintiff Pro Se

**EXHIBIT - P-0XY**

**<u>P-OXY Verbatim Spanish-language transcript of Instagram comments and direct messages exchanged</u>**

Transcribed in Spanish language.
"Submitted solely for accuracy and impeachment"

**<u>Instagram comments and direct messages :</u>**
alfr3dmusic: Rompiendo con melodías ajenas
djmaff: @alfr3dmusic no le digas a nadie

**<u>In another direct message:</u>**

Djmaff: "G mis respetos, ten en cuenta que la música es la misma por siempre, los mismos círculos que se combinan en diferentes variaciones etc, coincidencias pueden suceder, te dejo claro la mía la hice hace más de 9 meses"

I declare that these transcripts are true and accurate Verbatim Spanish-language transcript of Instagram comments and direct messages exchanged between @alfr3dmusic and @djmaff on Instagram.

Executed on 2/6/2026.
/s/ Jack D. Hernandez,
Plaintiff Pro Se

**EXHIBIT - P-0XZ**

P-0XZ Certified English translation and translator's declaration for the Instagram comments and direct messages corresponding to Exhibit P-0XY

Transcribed in Spanish language.
"Submitted solely for accuracy and impeachment"

**Instagram comments and direct messages :**
alfr3dmusic: Rompiendo con melodías ajenas
djmaff: @alfr3dmusic no le digas a nadie

alfr3dmusic: Breaking away from other people's melodies
djmaff: @alfr3dmusic Don't tell anyone

**In another direct message:**
Djmaff: "G mis respetos, ten en cuenta que la música es la misma por siempre, los mismos círculos que se combinan en diferentes variaciones etc, coincidencias pueden suceder, te dejo claro la mía la hice hace más de 9 meses"

English Translation: "G, with all due respect, keep in mind that music is the same forever, the same circles that combine in different variations, etc., coincidences can happen. I want to make it clear that I made mine more than 9 months ago."

I certify that I am fluent in Spanish and English and that the foregoing translation is a true and accurate translation of the original Spanish transcript **of Instagram comments and direct messages exchanged** between @alfr3dmusic and @djmaff on Instagram.

Executed on 2/6/2026.
/s/ Jack D. Hernandez,
Plaintiff Pro Se